THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 1:18-cv-5492 |
| v. | ) ) ) |
| JONES LANG LASALLE AMERICAS (ILLINOIS), LP, | ) ) ) |
| Defendant. | ) ) |

CLASS ACTION COMPLAINT

Plaintiff Wacker Drive Executive Suites, LLC ("WDES" or "Plaintiff"), a former tenant of a building managed by Defendant Jones Lang LaSalle Americas (Illinois), L.P. ("JLL" or "Defendant"), individually and on behalf of the Class described below, brings this class action against Defendant for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of a class of tenants of JLL's office buildings in Chicago's Loop.

Summary of the Case

1. This is a RICO class action brought by the tenants in the Chicago Loop office buildings managed by JLL for conspiring with the labor unions representing its employees to force its tenants to hire union only contractors (particularly movers and the building trades such as electricians, painters and carpet installers).

2. The result is that JLL's tenants must pay for above-market price unionized labor. These tenants have suffered damages from this ongoing conspiracy.

3. The conspiracy is an illegal "hot cargo" agreement carried out by JLL at all of its Chicago loop locations in response to union demands. And by requiring tenants of the buildings it

manages to use unionized labor, JLL is compounding the hot cargo agreement with violations of the Hobbs Act, a type of racketeering activity.

Parties, Jurisdiction and Venue

4. Plaintiff Wacker Drive Executive Suites, LLC is an Illinois limited liability corporation.

5. Defendant JLL is an Illinois limited partnership.

6. The Court has federal question jurisdiction pursuant to 18 U.S.C. §1964(c), the civil RICO cause of action, and 28 U.S.C. §1332, as a federal question.

7. Venue is proper here as JLL conducts business in this district and the relevant transactions occurred here.

The Chicago Loop Commercial Office Rental Market

8. The Chicago Loop is the second largest urban downtown in the country with approximately 107 million square feet of competitive office space and home to 294,000 private sector jobs, 45% of the Chicago area total. It is one of the City's 77 designated community areas.[1]

9. Geographically, it is bounded on the east by Michigan Avenue, on the north and west by the Chicago River and on the south by Congress Parkway. Its commercial real estate market is strong with a 94% occupancy rate.

10. JLL manages numerous large commercial office buildings in the Chicago Loop. Its management responsibility includes setting rules for building access by contractors.

JLL's Violation Of Labor Law:

11. Since at least 2014 JLL has allowed three labor unions to restrict access to its buildings by any non-union contractors: the International Union of Operating Engineers Local 399, AFL-CIO, Service Employees International Union, Local 1, and Teamsters Local 705 ("the three unions" collectively).

---

[1] http://loopchicago.com/_files/docs/economicprofile_2013.pdf

12. The first two of these unions have collective bargaining agreements (CBAs) with JLL governing the terms of employment of its engineers and janitors. But those CBA's do not, and cannot legally, prohibit JLL from denying its tenants the right to have non-union laborers access their office spaces. (Local 705 represents movers, which every tenant needs to move in and out of their suites, an expensive undertaking. It does not have a CBA with JLL but successfully pressures JLL to forbid non-union movers from accessing its buildings).

13. The conspiracy between the three unions and JLL is unwritten, like all illegal agreements. It violates the National Labor Relations Act (NLRA), 29 U.S.C. §158(e) as a type of "unfair labor practice" commonly referred to as a "hot cargo agreement," a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized.

14. JLL has imposed this restriction on its Loop tenants at the behest of the three unions. The purpose of the hot cargo agreement is to punish non-union contractors and reward union contractors.

15. These three unions have exerted their power over JLL for years. Their business agents, who operate outside the buildings, and union stewards, who are employees inside, closely monitor all contracting in JLL buildings. If they see a truck near the loading docks without the familiar union decals they spring into action and immediately notify the property manager and demand the non-union contractor/firm be removed. If this is not done, the agents and/or stewards notify their union officials at its local office. They will then call the property manager, demand expulsion and, if necessary, threaten a work stoppage (strike), picketing outside the building which may include the display of a large inflatable rat (sometimes called a "union rat") on or immediately adjacent to JLL's managed property for public viewing and shaming.

16. All of these actions are in violation of the CBA's, which forbid strikes, and as stated, the NLRA. Rather than oppose the union's demands, which can be accomplished by obtaining an injunction through the National Labor Relations Board, JLL accedes to their demands, at the considerable expense of its tenants.

17. JLL zealously enforces this union-only policy through its tenant handbook/rules and the directions to its building managers to keep non-union contractors out. Before any JLL building employee will permit a contractor into their respective building, they require proof of union membership. If the contractor is unable to provide such proof, the contractor is denied entry into the building.

Plaintiff's Experience With JLL's Restrictions

18. JLL has managed 125 S. Wacker Drive since 2012. WDES was a tenant at the building from August 2005 through December 2017. It leased the entire rentable area of the third floor. In its leased office suite, WDES conducted its primary source of business, leasing shared-full-service-executive office space to people and businesses.

19. WDES had a lease with the landlord, which ran through 2028. The lease provided WDES with a construction allowance, a sum of money paid by the landlord to improve its space. Construction allowances are common features in Loop commercial leases. The money is an advance on the rent the tenant will pay in rent. Thus, the allowance is simply the return of some of the money the tenant will be paying. The larger the allowance, the higher the rent.

20. The construction allowance was to be disbursed in two phases 2014 and 2017.

WDES' 2014 Renovations at 125 S. Wacker

4

21. In 2014 WDES was provided a construction allowance of $355,520 to be used to improve the space. It spent $325,000 for construction costs, including improving the ceilings of the common area, new lighting, carpeting, tiling, reconfiguring the kitchen area, and installing cabling.

22. JLL did not permit WDES to use the contractors it wanted to use, which were less expensive and non-union. JLL told WDES that if non-union contractors showed up at the building, they would not be allowed on the freight elevator.

23. Accordingly, WDES accepted a union- afflicted general contractor, which hired unionized sub-contractors.

24. The work was completed in late 2014, and WDES paid in November 2014 from the construction allowances, i.e. WDES actually paid for the union labor..

WDES' 2017 Renovations

25. In 2017 WDES received the second construction allowance from the landlord, $266,000, and of that, over $45,000 for construction costs. It used that money for modifying the office configurations, upgrading the electrical system, and re-carpeting.

26. Again, JLL forbade WDES from using the cheaper, non-union contractors it wanted to use.

27. The jobs were completed in September 2017. The invoices for these jobs were paid in September 2017 from WDES' construction allowance, i.e., WDES actually paid for the union labor.

WDES' Experience Using Movers at 125 S. Wacker

28. In January 2015, WDES purchased office furnishings and JLL forced it to use union movers to transport them to its space. The cost was $975.

The Cost of Union Contractors in the Loop

29. The difference in cost between union and non-union labor is significant, at least 20% higher for union workers and movers.

30. For example, a comparison of hourly wage rates from the U.S. Department of Labor, Bureau of Labor Statistics (BLS) for the Chicago metropolitan area (which includes both union and non-union workers) with the Illinois Department of Labor's prevailing wage rate for Cook County, which measures only union wages, indicates sizeable differences. With respect to the three most common categories of labor used in commercial renovation, the differences are as follows: for carpenters, $32.61 (BLS) versus $46.35 (Cook County prevailing) a 42.1% difference; for electricians, $38.29 versus $47.40—a 23.8% difference; and, for painters, $27.38 versus $51.24—an 87% difference.[2]

31. As a result, WDES and each putative Class member preferring to use non-union contract labor have been overcharged by a conservative estimate of at least 20%. The actual amount will have to be determined by an economist. Those tenants preferring to use union labor have also been overcharged because the labor market for contracting services has been closed to effective competition, meaning union labor is supracompetetively priced, i.e., above the price it would be if the union-only rule were not in place.

The Restriction Violates the Hobbs Act

---

[2] *See* U.S. Dep't of Labor, Bureau of Labor Statistics, May 2016 Occupational Employment Statistics, Chicago-Naperville-Arlington Heights Metropolitan Div., *available at* https://www.bls.gov/oes/current/oes_16974.htm#47-0000. The Illinois Prevailing Wage Act, 820 ILCS 130/3 *et seq.*, requires contractors to pay workers on "public works" projects "the general prevailing rate of hourly wages in the locality." *Id.* at § 9. The Illinois Department of Labor is required to annually ascertain and publish these prevailing rates for each county in the state. *Id.* The 2017 rates for Cook County can be found here: https://www.illinois.gov/idol/Laws-Rules/CONMED/Documents/2017%20Rates/Cook.pdf.

32. The "Hot Cargo" conspiracy among the unions and JLL also violates 18 U.S.C. §1951(a), which states, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by…extortion or attempts or conspires so to do … shall be fined under this title or imprisoned not more than twenty years, or both ….

33. Pursuant to §1951(b), extortion means: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

34. The extorted property is the money that WDES was required to spend on more expensive union services. JLL's denial of access to non-union movers, tradesman, and contractors preys on the tenants' fear of lost income that will result if they cannot get their offices spaces worked on by tradesmen. Or to put it another way, unless WDES (and the other tenants) accede to JLL's demands, they will not be able to start or complete their renovations and open for business.

35. By refusing to allow tenants to conduct business unless they use union labor, JLL effectively holds hostage the tenants' ability to run their own businesses.

36. The use of economic fear here is wrongful because the agreement between JLL and the unions to impose union-only terms on the tenants is an illegal hot cargo policy.

37. These violations of the Hobbs Act have been occurring continuously at all of JLL's Loop buildings for the past four years (and more). It is JLL's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.

The Restriction Also Violates The Taft- Hartley Act

38. JLL's union only restriction also violates 29 U.S.C. § 186(a), which makes it unlawful "for any employer…to pay, lend, or deliver…any money or other thing of value…to any labor organization, or any officer or employee thereof, which represents…any of the employees of such employer."

39. As described above, JLL violates this provision by forcing tenants into signing valuable contracts with union members. This is effectively a kickback by JLL to the unionized contractors who would otherwise not get hired by the tenants.

40. These violations of the Taft-Hartley Act have been occurring continuously at all of JLL's Loop buildings for the past four years (and more). It is JLL's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.

Class Allegations

41. The preceding paragraphs are incorporated herein as though fully set forth below.

42. WDES brings this action both on behalf of itself, and as a class action, pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2) and (b)(3), on behalf of a Class defined as:

> All individuals and entities who were tenants and subtenants in JLL's Chicago Loop commercial buildings who incurred moving expenses or hired contractors to make improvements in their properties in the past four years.

43. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, parent corporations and assigns. Also

8

excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

44. The Class is so numerous that joinder of all class members is impractical. While the exact number of Class members is unknown to WDES at this time, it believes that there are, at least, thousands their identities and relevant information can be ascertained from JLL's records.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

 a) Whether JLL engaged in a conspiracy with any and/or all of the three unions to require only approved union contractors be permitted in its loop buildings;

 b) Whether tenants were obliged to use union contractors as a result of the conspiracy;

 c) Whether JLL committed a pattern of violations of 18 U.S.C. §1951 and 18 U.S.C. §186.;

 d) Whether JLL's conduct caused injury to the members of the Class and, if so, the amount of damages;

 e) Whether WDES and the other members of the Class are entitled to injunctive relief.

46. WDES' claims are typical of the absent Class members. It seeks no relief that is adverse to the absent Class members.

47. WDES will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and RICO litigation. Class counsel will fairly and adequately represent the interests of the class.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impractical. The prosecution of separate actions by many individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons or entities similarly situated without sacrificing procedural fairness.

49. Counsel anticipates no difficulty in the management of this case because the evidence proving the conspiracy is obtainable through discovery. Damages can be determined on a Class- wide basis by an economist from publicly available data and records of the class members, contractors and other third parties.

## COUNT 1:
## CLAIM AGAINST JLL FOR VIOLATING 18 U.S.C. §1962(c)

50. The preceding paragraphs are incorporated herein as though fully set forth below.

51. Defendant JLL is a RICO person pursuant to §1961(3).

52. JLL has committed a pattern of repeated violations of §§1951 and 186 for the past four years (and longer), which are "acts of racketeering" pursuant to 18 U.S.C. §§1961(1)(B) and (C), respectively.

53. Each instance in which JLL forces its Loop tenants to use union contractors/movers through the economic fear described above is a violation of §1951. Additionally, this is a violation of §186 by virtue of the business it hands to union members.

54. The RICO enterprise is an association-in-fact enterprise, pursuant to 18 U.S.C. §1961(4), consisting of the three unions and JLL.

55. This enterprise has a common purpose: to force union-only labor on commercial tenants in buildings managed by JLL in the Chicago Loop. It has been ongoing for years and depends upon the regular communications among the members to carry out its illegal purpose.

56. To accomplish this goal, as detailed above, the union agents constantly patrol all of JLL buildings and report any non-union contractors to JLL building managers. Additionally, to carry out the objectives of the enterprise, JLL building managers instruct their subordinates in each of its Loop buildings to report any instance of a violation to JLL's building managers.

57. This relationship has been ongoing for many years.

58. Therefore, JLL has violated 18 U.S.C §1962(c), which states, in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…

59. As a direct and proximate cause of JLL's pattern of racketeering, WDES has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), in the following ways:

    a. The 2014 contracting: by payment of an estimated overcharge of $38,761(20% of the total, excluding materials); and

    b. The 2017 contracting: by payment of an estimated overcharge of $7,144.12 (20% of the total excluding materials); and

    c. The 2015 move: by payment of an estimated overcharge of $162.53 (20% of the total moving cost incurred).

60. Accordingly, WDES demands judgment be entered against JLL, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. WDES also asks for preliminary and permanent injunctions prohibiting JLL from continuing to enforce the union-only policy,

61. WDES requests a jury trial.

62. WDES requests certification of the case as a class action.

## COUNT 2:
## CLAIM AGAINST JLL FOR VIOLATING 18 U.S.C. §1962(d)

63. The preceding paragraphs are incorporated herein as though fully set forth below.

64. In carrying out the RICO violations, JLL formed an agreement with the three unions to carry out the objectives described above.

65. This agreement has been ongoing between these entities for at least the last four years, and likely, longer.

66. 18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection(c) of this section." (internal punctuation omitted).

67. Therefore, this is an agreement to violate §1962(c), which violates 18 U.S.C. §1962(d).

68. As a direct and proximate cause of JLL's conspiracy to violate §1962(c), Plaintiff has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), as detailed above.

69. Accordingly, WDES demands judgment be entered against JLL, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest.

WDES also seeks preliminary and permanent injunctions against JLL from continuing to enforce the union-only policy.

70. WDES requests a jury trial.

71. WDES requests certification of the case as a class action.

Dated: August 13, 2018                    Respectfully submitted,

*/s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
Tel: (312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com

Howard Foster
Foster PC
150 N. Wacker Dr.
Suite 2150
Chicago, IL 60606
(312)726-1600
hfoster@fosterpc.com

Matthew Galin
Foster PC
150 N. Wacker Dr.
Suite 2150
Chicago, IL 60606
(312)726-1600
mgalin@fosterpc.com

Aaron Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250

13

Northbrook, Illinois  60062
Tel: (312) 371-2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

**ATTORNEYS FOR PLAINTIFF WDES**

**CERTIFICATE OF SERVICE**

    I, the attorney, hereby certify that on August 13, 2018, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

                                                                                      */s/ James B. Zouras*