IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>JONES LANG LASALLE AMERICAS (ILLINOIS), LP,<br><br>    Defendant. | Case No. 1:18-cv-5492<br><br>Judge Andrea R. Wood<br><br>Magistrate Judge Sheila M. Finnegan |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

In this lawsuit, Plaintiff Wacker Drive Executive Suites, LLC ("WDES") makes the remarkable claim that Defendant Jones Lang LaSalle Americas (Illinois), LP ("JLL"), the building manager of a downtown Chicago office building where WDES once leased space, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by enforcing a term of a lease agreed to between WDES and its former landlord (a non-party). What's more, WDES recasts the single landlord's lease term requiring *its* tenants to use unionized contractors for building construction work as *JLL's* city-wide union rule, purportedly imposed on a class of "thousands" of tenants in different buildings owned by different landlords and governed by different rules. Plaintiff's claims should be dismissed as a matter of law for several separate and independent reasons and therefore should be dismissed under Rules 12(b)(6) and/or 12(b)(1).

*First*, while the centerpiece of Plaintiff's lawsuit is an allegation that JLL "conspired" with three labor unions to require Plaintiff to use union contractors for building construction, Plaintiff fails to allege an agreement that could support a RICO claim. The predicate theory underlying the two RICO claims raised here is that JLL's enforcement of the union requirement violates Section

8(e) of the National Labor Relations Act ("NLRA") because it constitutes an illegal "hot cargo" agreement to cease doing business with non-union contractors. But, as a threshold matter, Plaintiff does not (and cannot) plead sufficient facts to allege the requisite "agreement, express or implied" between JLL and the alleged unions. 29 U.S.C. § 158(e) (2018). Indeed, Plaintiff acknowledges that no such express agreement exists, and National Labor Relations Board ("NLRB") precedent forecloses Plaintiff's argument that JLL's alleged acquiescence to union pressure creates an implied agreement.

*Second*, Section 8(e) of the NLRA's so-called construction industry proviso expressly permits the landlord's union-only restriction as it relates to the building construction and alteration work alleged in the Complaint. *See id.* Absent a viable NLRA violation, Plaintiff's dependent RICO claims fail as a matter of law.

*Third*, neither of Plaintiff's attempts to allege a "pattern of racketeering activity" stemming from the purported agreement meet threshold pleading requirements. Plaintiff alleges that the purported agreement "effectively [creates] a kickback by JLL to the unionized contractors who would otherwise not get hired by the tenants," in ongoing violation of Section 302(a) of the Labor Management Relations Act ("LMRA" or, Taft-Hartley Act, 29 U.S.C. § 186(a)). Compl. ¶39. Although Section 302(a) prohibits employers from giving unions any "thing of value," Plaintiff overlooks that Section 302(c) sets forth exceptions that expressly permit every type of benefit unions could receive because of the landlord's union rule. 29 U.S.C. § 186(c) (2018). Plaintiff also alleges that the purported agreement effectively "extort[s]" money from tenants through the "wrongful" use of "economic fear," in ongoing violation of the Hobbs Act, 18 U.S.C. § 1951(a) (2018). Compl. ¶¶32-36. Here again, Plaintiff overlooks that the NLRA and LMRA contradict Plaintiff's "wrongful" allegation by expressly permitting the landlord's union only rule.

*Fourth*, Plaintiff's Complaint must be dismissed because Plaintiff's lack of standing deprives this Court of subject-matter jurisdiction. The Complaint and the documents cited to and relied upon by Plaintiff establish that if Plaintiff has any concrete injury due to the landlord's union rule, that injury is not traceable to JLL, nor redressable by a decision in Plaintiff's favor. Moreover, to the extent Plaintiff seeks injunctive relief, it is unavailable to Plaintiff because its tenancy at the JLL-managed building has ended.

## BACKGROUND

**A.     Plaintiff's Tenancy at 125 S. Wacker Drive.**

Plaintiff was a tenant of 125 S. Wacker Drive ("the Landlord" or "Building") from August 2005 through December 2017, occupying the entire third floor of the Building. Compl. ¶18. Plaintiff entered into a lease with the Landlord that ran through 2028. *Id.* ¶19; *see also* Plaintiff's Lease for 125 S. Wacker Drive ("Lease") attached as Exhibit A and First Amendment to Lease attached as Exhibit B.[1] Article 23 of the Lease, entitled "Rules and Regulations," sets forth the requirement that Plaintiff "observe and comply" with the Landlord's "Rules and Regulations" and further provides that Landlord has the right to "amend" or "adopt additional Rules and Regulations" through written notice. Ex. A at 45-46.

One such set of Rules and Regulations is the "125 South Wacker Drive Rules and Regulations for Contractors & Vendors and Service Providers." *See* Compl. ¶17; *see also* 125 South Wacker Drive Rules and Regulations for Contractors & Vendors and Service Providers

---

[1] Plaintiff references the Lease in the Complaint, and specifically relies on the construction allowance provision, which is included in the Lease and First Amendment to the Lease, to plead damages. Compl. ¶¶19-28. Because the Lease and First Amendment to the Lease are referenced in the Complaint and central to Plaintiff's claim, these documents are considered part of the pleadings, and this Court may consider these documents in its ruling on a motion to dismiss. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

("Contractor Rules and Regulations"), attached as Exhibit C.[2] The Contractor Rules and Regulations set forth "Trade Persons Rules." *See* Ex. C. The very first rule states:

> **Unions** – All trade persons are to have the proper trade union or other affiliations as required by the local jurisdictional entities. Copies of signed labor agreements are to be on file in the field office. This applies for both tenant and general contractor hired subcontractors. Any building disruption caused by jurisdictional disputes between different labor unions is the responsibility of the tenant to resolve. Action taken by building to minimize impact to the building may include shutting projects down until disputes are resolved.

*Id.* (emphasis in original).[3]

JLL has managed the Building since 2012. Compl. ¶18. In that capacity, JLL enforces the Landlord's Rules and Regulations, including the Contractor Rules and Regulations. *See id.* ¶17. For example, JLL's "Guidebook for 125 South Wacker Tenants" reiterates the Landlord's union requirement in the section detailing "Tenant Interiors & Alterations":

> Should your office needs change and require alteration of your space, please observe the following rules:
>
> Request a current copy of the building's Contractor Rules and Regulations, which can be found on the website. All contractors working in 125 South Wacker must be Union members.

*See id.* ¶17; *see also* Guidebook for 125 South Wacker Tenants, eff. June 2015 ("Tenant Guidebook"), attached as Exhibit D at 16 (emphasis in original); Tenant Guidebook, eff. April 2017, attached as Exhibit E at 16 (emphasis in original).[4]

---

[2] In addition to the fact that the "Rules and Regulations" are effectively a part of the Lease (*see supra* at 3), Plaintiff references JLL's "rules" in the Complaint and relies upon on the union-only contractor rule, which is listed in the Building's Contractor Rules and Regulations, to plead its "hot cargo" allegation and the related LMRA and Hobbs Act violations. Compl. ¶17. Accordingly, the Contractor Rules and Regulations may be considered by the Court in this motion. *See 188 LLC*, 300 F.3d at 735; *Wright*, 29 F.3d at 1248.

[3] The Contractor Rules and Regulations also remind contractors working for tenants that they are subject to the Rules and Regulations "per your contract with . . . the tenant by and thru [sic] their lease agreement." *Id.*

[4] Plaintiff cites to JLL's "tenant handbook" in the Complaint and relies upon the "union-only policy" listed in the Tenant Guidebook to make its "hot cargo" allegation. Compl. ¶17. Thus, the Tenant Guidebook is

**B.      Plaintiff's Allegations Against JLL.**

With no direct reference to the Landlord, and inexplicably without advising this Court of the terms of the Lease and the Building Rules and Regulations, Plaintiff focuses the Complaint on JLL, alleging that JLL "enforces this union-only policy" across the buildings it manages pursuant to a "hot cargo" agreement with International Union of Operating Engineers Local 399 (representing engineers), Service Employees, Service International Union Local 1 (representing janitors), and Teamsters Local 705 (representing movers) (together, the "Unions") to preclude tenants from using non-union labor. Compl. ¶¶11-13. Yet, Plaintiff concedes that no such written agreement exists. *Id.* ¶13. Plaintiff further acknowledges that the only written agreements relevant here – the Local 399 and Local 1 CBAs – provide no evidence of a hot cargo agreement (because that would, in fact, violate the CBAs). *Id.* ¶¶12-13, 16.

Rather, Plaintiff alleges that JLL "imposed this [union] restriction . . . at the behest of the [Unions]." *Id.* ¶14. Specifically, Plaintiff alleges that JLL surrenders to the will of the Unions because they "have exerted their power over JLL for years," through various harassment tactics employed if the Unions discover non-union contractors in JLL-managed buildings. *Id*. ¶15 (describing demands for expulsion of non-union workers, strike threats, picketing, and displays of a large, inflatable "union rat" outside JLL-managed buildings). Plaintiff asserts that the end result of this alleged hot cargo agreement is that tenants are forced to overpay "by at least 20%" for construction or moving services because (i) they cannot hire cheaper non-union contractors and (ii) the union contractors supracompetitively price their services absent real market competition.

---

considered part of the pleadings and the Court may consider this document in this motion. *See 188 LLC*, 300 F.3d at 735; *Wright*, 29 F.3d at 1248. Tenant Guidebook's "Guidelines for Tenants & Movers" also provide that "[a]ll Moving companies and vendors must be signatory to a current Labor Agreement and only Union members of those companies may perform the work." Ex. D at 18; Ex. E at 18.

*Id*. ¶31. Plaintiff relies on these allegations to allege that JLL conducted a "pattern of racketeering," in violation of 18 U.S.C. § 1962(c) (Count I), and "conspire[d]" to do so, in violation of 18 U.S.C. § 1962(d) (Count II). *Id*. ¶¶50-71.

## ARGUMENT[5]

I. **Plaintiff's RICO Claims Fail as a Matter of Law Because Plaintiff Fails to Allege the Predicate Violations of Other Statutes Necessary to Bring its RICO Claims.**

   A. **JLL Did Not Violate Section 8(e) of the NLRA, Which Is the Foundation of Plaintiff's RICO Claims.**

   1. **JLL Does Not Have an Actionable "Agreement" with the Unions.**

Plaintiff's RICO claims fail because Plaintiff cannot demonstrate that JLL and the Unions maintained an illegal "hot cargo" agreement that restricted tenants' access to non-union labor in violation of Section 8(e) of the NLRA. There are multiple reasons why Plaintiff cannot do so; the threshold reason is that Plaintiff did not – and cannot – allege sufficient facts demonstrating that an "agreement" even exists.

Section 8(e) prohibits a "contract or agreement," either "express or implied," between an employer and a union to cease doing business with a third party, absent an applicable exception (*see infra*, Sec. I.A.2). 29 U.S.C. § 158(e). Conceding that no such express agreement exists, *see supra* at 5, Plaintiff argues that JLL and the Unions have an "unwritten" or implied agreement to cease tenants' business with non-union third parties through the union-only rule, *see* Compl. ¶13. But Plaintiff's supporting allegations actually demonstrate just the opposite. Plaintiff claims that JLL "imposed [the union] restriction . . . at the behest of the [Unions]," because the Unions

---

[5] A properly pleaded complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

successfully *pressured* JLL through threats, picketing, and public shaming, and JLL "accede[d]" to their demands. Compl. ¶¶14-15. Under NLRB precedent, this alleged acquiescence to union pressure does *not* constitute a "contract or agreement" under Section 8(e). *See Dairy Emps.' Local 754*, 210 NLRB 483, 490 (1974) (concluding that an employer did not enter into an 8(e) agreement with a union when employer "succumbed to the [union's] threats" and acquiesced in the union's demand to discontinue business with another employer); *Gen. Longshore Workers, ILA*, 235 NLRB 161, 169-170 (1978) (finding agreements under Section 8(e) must be entered into voluntarily, and threats or coercion deprive such agreements of their voluntariness).

### 2. Section 8(e)'s Construction Industry Proviso Affirmatively Permits the Landlord's Union Requirement.

Putting aside Plaintiff's failure to show that an agreement exists between JLL and the Unions, the RICO claims also fail because Section 8(e) of the NLRA specifically *validates* the union-only requirement enforced by JLL.

Section 8(e)'s "construction industry proviso" is a prominent and express carve-out to the prohibition against employer-union agreements to cease doing business with third-parties. It *expressly permits* union-only restrictions involving "an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work." 29 U.S.C. § 158(e).

The proviso applies here. First, as a real estate management company involved in building construction, alterations, paintings and repairs, JLL qualifies as an "employer in the construction industry." An employer need not be engaged in construction as its primary business to qualify for the construction industry proviso. *See In re S. Jersey Reg'l Council of Carpenters, Local 623*, 335 NLRB 586, 591 (2001). Rather, the proviso extends to all employers who exercise control over construction-site contractors and labor relations. *See Carpenters Local 743 (Longs Drug)*, 278

NLRB 440, 442 (1986) (finding an employer is an employer in the construction industry when the employer exercises "control over the construction-site labor relations it elects to retain"); *Albany Specialties, Inc. v. Bd. of Educ. of S. Glens Falls Sch. Dist.*, No. 99-CV-1462, 1999 WL 1215291, at *8 (N.D.N.Y. Oct. 1, 1999) (finding that employer hired to manage a construction project was an employer in the construction industry because the employer participated in the selection of contractors, required contractors to comply with certain rules, and exercised control over the jobsite). JLL does just that. *See, e.g.,* Ex. D at 16-17 ("The Management Office must approve all tenant alterations or remodeling in writing before work begins. Tenant contractors will be required to comply with all building rules and regulations. A certificate of insurance listing the appropriate parties as additional insureds and providing evidence of the required coverage and limits must be submitted prior to beginning any construction."); Ex. E at 16-17 (same); Ex. C (stating the contractors "will be held responsible for any and all of the rules and regulations included herein that are applicable to your work" and "***Management reserves the right to halt or delay any work in the building if we determine that the work interferes with our tenant's ability to reasonably conduct their business.***" (emphasis in original)).

Second, the Landlord's union restriction "relate[s] to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work." 29 U.S.C. § 158(e); *see also* Ex. D at 16 (providing under "Tenant Interiors and Alterations" that "[s]hould your office needs change and require alteration of your space, please observe the following rules: Request a current copy of the building's Contractor Rules and Regulations . . . All contractors working in 125 South Wacker must be Union members"); Ex. E (same). This is exactly the type of construction and alteration work for which Plaintiff alleges it was forced to hire unionized contractors: "improving the ceilings of the common area, new

lighting, carpeting, tiling, reconfiguring the kitchen area, and installing cabling"; "modifying the office configurations, upgrading the electrical system, and re-carpeting"; and moving and transporting office furnishings. Compl. ¶¶21, 25, 28; *see also Donald Schriver, Inc. v. N. L. R. B.*, 635 F.2d 859, 879-80 (D.C. Cir. 1980) (finding that subcontracting agreements in the construction industry are not limited to particular, identified jobsites nor the duration of particular jobs.)

Thus, even assuming the truth of Plaintiff's allegations, at most Plaintiff has alleged that JLL enforced a lawful union-only contractor requirement affirmatively permitted by Section 8(e). And contrary to Plaintiff's assertion that this requirement "vicitmiz[es]" tenants, it actually furthers the important public policies codified through the proviso: "the desire to reduce construction site tensions and the development of a uniform and ready supply of skilled labor" in the construction industry. *Milwaukee & Se. Wisc. Dist. Council of Carpenters v. Rowley-Schlimgen, Inc.*, 2 F.3d 765, 769 (7th Cir. 1993); Compl. ¶37.

In short, Plaintiff cannot show that the Landlord's union requirement is prohibited by the NLRA.[6] This is fatal to Plaintiff's RICO claims.

### B. Plaintiff's RICO Claims Fail Because Plaintiff Cannot Allege a Pattern of Racketeering Activity Based on the Section 8(e) Violation Allegation.

Plaintiff's RICO claims also fail as a matter of law because it cannot establish a pattern of racketeering activity under RICO when JLL did not violate any laws that qualify as "racketeering

---

[6] Plaintiff also appears to disregard a central free-market principle that employers and consumers may make their own decisions whether to do business with union or non-union vendors, clients, or contractors. Indeed, the Supreme Court has recognized that businesses have the "authority to make" those "managerial decision[s]." *NLRB v. Servette, Inc.*, 377 U.S. 46, 51 (1964) (unions may lawfully appeal to company managers in the hope they will decide not to do business with a particular third party). Moreover, "an employer does not [violate the NLRA] by ceasing to do business with another employer because of the union or nonunion activity of the latter's employees." *Plumbers Local 447 (Malbaff Landscape Construction)*, 172 NLRB 128, 129 (1968); *see also Computer Assocs.*, 324 NLRB 285, 286 (1997) (an employer's decision to terminate a union contractor in favor of a non-union contractor was lawful and furthered the legislative policy of "protecting the autonomy of employers in their selection of independent contractors with whom to do business").

activity" through a purported "hot cargo" agreement. The elements of a RICO violation are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bressner v. Ambroziak,* 379 F.3d 478, 481–82 (7th Cir. 2004) (citations omitted). To allege a pattern of racketeering, a plaintiff must plead at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. §1961(5). Plaintiff alleges two purportedly ongoing acts of racketeering activity under the RICO statute, a Section 302 LMRA violation and a Hobbs Act violation under 18 U.S.C. § 1951(a). But, as explained below, JLL's conduct, even as alleged in the Complaint, did not violate either the LMRA or the Hobbs Act. Without these predicate acts, Plaintiff cannot allege a pattern of racketeering activity, and Plaintiff's RICO claims must be dismissed as a matter of law. *See e.g., Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 469, 476 (7th Cir. 2007) (affirming district court's dismissal of RICO claims where the complaint alleged no pattern of racketeering activity).

### 1. JLL Did Not Violate Section 302 of the LMRA.

Plaintiff's allegation that JLL violates Section 302 of the LMRA through its "hot cargo" agreement that forces tenants to use union labor and "effectively [constitutes] a kickback" has no merit. While LMRA Section 302(a) prohibits employers from giving unions any "money or other thing of value," Plaintiff disregards that Section 302(c) of the LMRA sets forth exceptions expressly permitting *every* type of benefit that unions might receive as the result of the Landlord's union contractor requirement. *See* 29 U.S.C. § 186. For example, the LMRA exceptions render lawful: the regular compensation paid to employees; payments to satisfy contractual grievances or disputes; sale or purchase of articles or commodities at the prevailing market price in the regular course of business; union dues paid by means of a dues-checkoff provision; and fringe benefit health and welfare fund payments. *See* 29 U.S.C. § 186(c)(1-9). So even if JLL's enforcement of the Landlord's union contractor requirement creates a "thing of value," JLL did not violate LMRA

Section 302(a) because its actions are excepted under Section 302(c). Indeed, there is no claim here that the union contractors' services were sold to or purchased by Plaintiff at anything other than the prevailing market rate for union construction in the regular course of business. *See* Compl. ¶¶21-31; *see also* 29 U.S.C. § 186(c)(3). Accordingly, Plaintiff has failed to establish a pattern of racketeering through violations of Section 302 of the LMRA.

### 2. JLL Did Not Violate the Hobbs Act.

Plaintiff's allegation that JLL violates the Hobbs Act, 18 U.S.C. § 1951(a) must also be dismissed because JLL extorted no property from Plaintiff by "impos[ing] union-only terms on the tenants" through its purported "hot cargo" agreement. Compl. ¶36. Under the Hobbs Act, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear[.]" 18 U.S.C. § 1951(b)(2).

First, Plaintiff fails to plead sufficient facts that JLL obtained property from Plaintiff under the Hobbs Act. Plaintiff alleges that the "extorted property is the money that WDES was required to spend on more expensive union services." Compl. ¶34. However, Plaintiff did not — and cannot — allege that JLL *obtained* this "extorted property" because Plaintiff paid this money directly to the contractors. Compl. ¶¶21-28; s*ee also Sekhar v. United* States, 570 U.S. 729, 734 (2013) (finding that compelling a person to recommend that his employer approve an investment does not constitute "obtaining of property from another" because the text of the statute "requires that the victim 'part with' his property, and that the extortionist 'gain possession' of it" (citation omitted); *Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 404, 409 (2003) (finding protestors did not commit extortion when they "interfered with, disrupted, and in some instances completely deprived [RICO plaintiffs] of their ability to exercise their property rights" because the protestors "did not obtain or attempt to obtain property"); *Interstate Flagging v. Town of Derien*, 283 F. Supp. 2d 641, 647 (D. Conn. 2003) (granting defendants' motion to dismiss RICO claims because

although plaintiff alleged that defendants' harassment and threats led companies to cancel their contacts with plaintiff, defendants did not obtain property from Plaintiff under the Hobbs Act). Moreover, Plaintiff fails to allege that JLL received *any* benefit from the Unions by enforcing the Building's union contractor requirement. Thus, JLL did not extort property from Plaintiff because JLL did not obtain property from Plaintiff under 18 U.S.C. § 1951(a).

Second, while Plaintiff alleges that JLL induced Plaintiff to use union-only labor through "fear of lost income" and "economic fear[,]" this does not rise to the level of extortion under 18 U.S.C. § 1951(a). Compl. ¶¶34, 36. Plaintiff's allegation that "unless WDES (and the other tenants) accede to JLL's demands, they will not be able to start or complete their renovations and open for business[,]" at most amounts to coercion, which is not enough to constitute extortion under the Hobbs Act. Compl. ¶34; *see also Wackenhut Corp. v. Serv. Emps. Int'l Union*, 593 F. Supp. 2d 1289, 1296 (S.D. Fla. 2008) (finding plaintiff's allegations that the defendant tried to coerce plaintiff into something it was not inclined to do is not extortion or a violation of the Hobbs Act.)

Third, JLL's purported use of "economic fear" is not wrongful. The Supreme Court held in *United States v. Enmons* that the term "wrongful" in the Hobbs Act limits its coverage to instances where "the alleged extortionist has no lawful claim to that property." 410 U.S. 396, 400-01 (1973) (finding "it clear that the [Hobbs] Act does not apply to the use of force to achieve legitimate labor ends"); *see also United Bhd. Of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 838 (9th Cir. 2014) (holding that "there is nothing inherently wrongful about the use of economic fear to obtain property" because "the fear of economic loss is a driving force of our economy that plays an important role in many legitimate business transactions" (internal quotations and citations omitted)). Here, JLL did nothing unlawful: the Building is

legally permitted to require union-only contractors for work at a site of construction, and JLL, as the Building manager, enforced this rule. *See supra* Sec. I.A.2. Further, the Unions have lawful claims to the "property" or money that Plaintiff paid for the legitimate work they provided. Compl. ¶¶21, 24-25, 27-28, 34; *see also Rennell v. Rowe*, No. 09 C 2193, 2010 WL 99409, at *2 (N.D. Ill. Jan. 7, 2010), *aff'd*, 635 F.3d 1008 (7th Cir. 2011) (explaining that using fear is "wrongful" under the Hobbs Act "where a union uses proscribed means to get 'wage' payments for *fictitious* services," but not where a union receives wage payments for "real" services (emphasis added)). Thus, Plaintiff's allegation that JLL violates the Hobbs Act fails because JLL did not obtain the alleged extorted property from Plaintiff, and JLL's purported use of "economic fear" is not wrongful, nor does it rise to the level of extortion.

Because Plaintiff cannot plausibly allege that JLL violated the LMRA or the Hobbs Act as a result of enforcing the union-only rule, Plaintiff cannot as a matter of law establish that JLL engaged in "racketeering activity." Accordingly, without the requisite "pattern of racketeering," Plaintiff's RICO claims fail, and the Complaint must be dismissed in its entirety.

## II. Plaintiff's Complaint Should Be Dismissed Because Plaintiff Does Not Have Standing to Assert Claims Against JLL.

Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Plaintiff does not have Article III standing to assert a claim against *JLL* where Plaintiff voluntarily entered into the Lease with the *Landlord*, which required Plaintiff to comply with the *Landlord's* Rules, including the Building's union contractor requirement.

On a 12(b)(1) motion for lack of subject-matter jurisdiction, a plaintiff must establish that jurisdictional requirements have been met, including whether a plaintiff has standing within the meaning of Article III of the U.S. Constitution. *See* Fed. R. Civ. P. 12(b)(1); *see also Nat'l Council*

*On Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*, No. 07 C 2898, 2009 WL 2588902, at *2 (N.D. Ill. Aug. 20, 2009). To establish constitutional standing, a plaintiff must show: (1) it has suffered a concrete injury; (2) that injury is fairly traceable to actions of the defendant and not the result of a third party's independent action; and (3) it must be likely that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). When reviewing a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "a district court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction in fact exists." *Marie O. v. Edgar*, 157 F.R.D. 433, 435 (N.D. Ill. 1994).

Here, Plaintiff's purported injury is not fairly traceable to the actions of JLL; rather it is the direct result of Plaintiff's own actions when Plaintiff entered into a lease with the *Landlord*, thereby agreeing to abide by the Building's Rules. Ex. A at 45-46; Ex. B; Ex. C; Ex. D at 16-17; Ex. E at 16-17; *see also Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (explaining that standing requires "a causal relationship… such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not before the court"); *Silha v. ACT, Inc.*, No. 14 C 0505, 2014 WL 11370440, at *2 (N.D. Ill. Sept. 2, 2014), *aff'd,* 807 F.3d 169 (7th Cir. 2015) (granting 12(b)(1) motion and finding that plaintiffs failed to allege a causal connection, "especially because the selling or sharing of Plaintiffs' [personal information] was *optional*." (emphasis added)).

Furthermore, Plaintiff does not have standing to assert its claims because a decision in Plaintiff's favor would not redress Plaintiff's injury. The monetary damages Plaintiff seeks (the difference between using union and non-union labor) stems from Plaintiff's construction allowance in its Lease with the *Landlord*. *See* Compl. ¶¶19-31; Ex. B at 3-4. Therefore, even if

this Court were to find in Plaintiff's favor, the monetary damages Plaintiff seeks are only recoverable from the *Landlord* (not JLL), who is not a party to this action. *See Lujan*, 504 U.S. at 561, 568-71 ("it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'").

Moreover, Plaintiff seeks "preliminary and permanent injunctions prohibiting JLL from continuing to enforce the union-only policy." But Plaintiff does not have standing to seek injunctive relief because it is no longer a tenant of the Building. Compl. ¶¶18, 60; *see also Parvati Corp. v. City of Oak Forest, Ill.,* 630 F.3d 512, 514 (7th Cir. 2010) (finding that plaintiff's request for injunctive relief "is a remedy that can benefit only the property owner. Because [plaintiff] no longer owns the property, it lacks standing" for this relief). Thus, even if Plaintiff asserted any cognizable claim, to the extent Plaintiff is seeking injunctive relief, such relief is inappropriate because Plaintiff is no longer a tenant of the Building.

## CONCLUSION

For the foregoing reasons, JLL respectfully requests that this Court grant JLL's motion to dismiss the Complaint with prejudice for failure to state a claim and/or for lack of subject-matter jurisdiction.

Respectfully submitted,

JONES LANG LASALLE AMERICAS (ILLINOIS), LP

*/s/ Scott T. Schutte*
          One of Its Attorneys

Philip A. Miscimarra
Scott T. Schutte
Stephanie L. Sweitzer
Kevin F. Gaffney
Heather J. Nelson
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor

        Chicago, IL 60601
        Tel: 312.324.1000
        Fax: 312.324.1001
        philip.miscimarra@moganlewis.com
        scott.schutte@morganlewis.com
        stephanie.sweitzer@morganlewis.com
        kevin.gaffney@morganlewis.com
        heather.nelson@morganlewis.com

        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on the 22nd day of October 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Plaintiff:

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
205 N. Michigan Ave., Suite 2560
Chicago, Illinois 60601
Tel: +1.312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Howard W. Foster
Matthew A. Galin
FOSTER PC
150 N. Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.726.1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: +1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

/s/ Scott T. Schutte
Scott T. Schutte