THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>JONES LANG LASALLE AMERICAS (ILLINOIS), LP,<br><br>          Defendant. | Case No. 1:18-cv-5492<br><br>Judge Andrea R. Wood |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**STEPHAN ZOURAS, LLP**
James B. Zouras
Ryan F. Stephan
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
jzouras@stephanzouras.com
rstephan@stephanzouras.com

**FOSTER, PC**
Howard W. Foster
Matthew A. Galin
150 N. Wacker Drive, Suite 2150
Chicago, IL 60606
hfoster@fosterpc.com
mgalin@fosterpc.com

**THE WALNER LAW FIRM, LLC**
Aaron R. Walner
555 Skokie Boulevard, Suite 250
Northbrook, IL 60062
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

**INTRODUCTION**

Defendant Jones Lang Salle Americas (Illinois), LP ("JLL") makes several flawed arguments in support of its Rule 12(b)(6) Motion to Dismiss. The Motion is primarily devoted to whether Plaintiff adequately alleges that the restriction imposed on Wacker Drive Executive Suites LLC ("WDES") is an actionable "hot cargo" agreement in violation of 28 U.S.C. §158(e)("§8(e)"). If such an agreement exists, then JLL's requirement that WDES use only unionized labor, as demanded by the unions, establishes the "wrongfulness" needed for this to be a Hobbs Act violation (18 U.S.C. §1951(a)). The Hobbs Act violation is a RICO predicate offense, the core of the RICO claim (18 U.S.C. §1962). While this three-tiered statutory offense (hot cargo, Hobbs Act, RICO) is complicated, the Motion does not argue that it is factually deficient. It makes purely legal arguments. As discussed below, JLL's legal arguments omit Supreme Court authority that precludes its interpretation.

Even if the Court is somehow persuaded that the Complaint does not allege a hot cargo violation, the alternative RICO claim, predicated on violations of 29 U.S.C. §186(a), would survive. It is a free-standing RICO predicate offense. As the Motion makes only a cursory challenge to how this count is pled, there is no basis for dismissal.

Additionally, it should be noted the Motion takes issue with only one element of the RICO claim, the form of "racketeering activity" (*i.e.,* whether §§1951 and 186 are properly pled). Thus, if the Court determines that either or both labor law violations apply, then this case should proceed under RICO.[1]

---

[1] The elements of a civil RICO claim require: 1) conduct; 2) of an enterprise; 3) through a pattern 4) of racketeering. *See, e.g., Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). References to the Complaint will be to "¶_." References to JLL's Memo (Doc. 32) will be to "Motion at _."

1

**ARGUMENT**

    I.    <u>WDES Pleads Facts Which Are More Than Sufficient To Establish JLL's Violation §8(e) Of The National Labor Relations Act</u>

        a.    <u>Section 8(e)'s Construction Industry Provision Exception Does Not Apply</u>

WDES leased office space at a completed high-rise building in downtown Chicago. ¶18. According to the Motion, the lease is shielded by the "construction industry proviso" within 29 U.S.C. §158(e), the section of the NLRA banning "hot cargo" agreements aimed at neutral, secondary employers not having unionized workers. Motion at 7. While urging the Court to conclude it is in the construction business, JLL conspicuously omits mention of two Supreme Court decisions which limit the exception to agreements in the context of collective bargaining. For the exception to apply, it is well-established that a general contractor must have a Collective Bargaining Agreement (CBA) with a union. *See Connell Constr. Co. Inc. v. Plumbers and Steamfitters Local Union 100,* 421 U.S. 616, 633 (1975)("Instead, we think its [§8(e)'s construction exception] authorization extends only to agreements in the context of collective bargaining relationships"); *see also Woelke & Romero Framing, Inc. v. N.L.R.B.,* 456 U.S. 645, 653 & n.8 (1982)("The [*Connell*] Court concluded, however, that the protection of the proviso 'extends only to agreements in the context of collective-bargaining relationships'"); *Id.* at 662 ("The proviso…confirms that construction industry *unions* may enter into agreements that would prohibit the *subcontracting* of jobsite work to nonunion firms")(emphasis added).

But here, WDES had no CBA, nor did it even employ the contractors. So there is no basis for the proviso to apply. And this makes perfect sense because there could not have been any friction between unionized and non-unionized WDES employees, which is the concern of the exception. And while JLL has CBAs with two unions (¶12), that is not enough to bring

2

*WDES's own primary contracting* on its workspace under the construction exception.[2] Rather, for the exception to apply JLL, would have to be giving "the employees the work in question." *Spectator Management Group v. N.L.R.B.,* 320 F.3d 385, 391, 395-96 (3d Cir. 2003)(affirming the N.L.R.B.'s decision that a property manager was not entitled to the exception). That did not happen here— *WDES*, not JLL, contracted for all the work on its space. (*Spectator Management* is the only appellate decision on this point dealing with a property manager, akin to JLL's role here.)

There is simply no precedent for applying the exception to a firm without its own CBA, such as WDES. All three of the decisions the Motion cites at 7-8 involved attempts to force subcontractors at traditional construction sites, where the general contractor had a CBA, to use union labor. Thus, none of these decisions apply here. The Motion also ignores the one and only Seventh Circuit decision which actually decided a dispute over the exception, *United Rentals Highway Tech., Inc. v. Indiana Constructors, Inc.,* 518 F.3d 526 (7th Cir. 2008). There the Court held the exception applied, but made it abundantly clear that the firm (the plaintiff) was a subcontractor to a general contractor which actually had a CBA. *Id.* at 528.

There is perhaps an even more fundamental reason the exception does not apply: JLL's building on Wacker Drive was indisputably not under construction. And, JLL is not a construction company, it is a management company. It owns and operates *existing* real estate. ¶¶10,18. The exception applies only to "the construction industry." Again, the only appellate decision on this question has held that construction type work performed in a completed building is not "construction" because no work is being "built into or affixed to land." *Spectator*

---

[2] Nor is the JLL-WDES relationship one of general contractor-subcontractor. WDES was merely one of JLL's many tenants in an office building.

*Management Group,* 320 F.3d at 395-96 (*supra*).³ JLL has ignored this authority. It only cites *Donald Schriver, Inc. v. N.L.R.B.,* 635 F.2d 859, 879-80 (D.C. 1980) for the proposition that upgrading electrical systems and other remodeling trades are subject to the exception. But that case involved subcontracting agreements for the actual construction of buildings. And *Milwaukee & SE. Wisc. Dist. Council of Carpenters v. Rowley-Schlimgen, Inc.,* 2 F.3d 765, 766 (7th Cir. 1993)(Motion at 9), involved a carpet installer at "some of the largest construction projects in Madison, Wisconsin," *i.e.,* in connection with the actual construction of buildings. Accordingly, it has no application here either. Thus, there is no precedent for applying the exception to this case.

      b. JLL's Long-Standing Agreement With The Unions Is Prohibited By §8(e)

WDES alleges that JLL acceded to the hot cargo agreement at some long-ago time. ¶¶15-16 ("These three unions have exerted their power over JLL for years"). The Complaint alleges that the hot cargo agreement is an unwritten side agreement to the CBA that JLL enters into and renews regularly. ¶¶12-13. JLL, however, contends that the hot cargo agreement is not "voluntary" and therefore is not an "agreement" subject to §8(e). Motion at 6-7. This argument is wrong for at least two reasons.

First, §8(e) covers situations in which a union exerts subtle pressures on an employer to accept a hot cargo agreement as part of a CBA. *See, e.g., Sheet Metal Workers, Local Union No. 91 v. N.L.R.B.,* 905 F.2d 417, 421 (D.C. Cir. 1990)("section 8(e) was intended to close a loophole in §8(b)(4)(ii)(B) through which unions used 'hot cargo' clauses to exert subtle pressures upon employers to engage in 'voluntary' boycotts," affirming NLRB's ruling that a

---

³ *United Highway Rentals Tech., Inc.,* 518 F.3d at 528, cited this decision with approval for its analysis of the nature of construction.

4

union violated §8(e) by requiring the employer to agree to a hot cargo agreement in a CBA); *NVE Constructors, Inc. v. N.L.R.B.*, 934 F.2d 1084, 1087-88 & n.6 (9th Cir. 1991)("Examination of section 8(e) demonstrates that 'voluntary' agreements may be reached through the use of economic pressure."); *McKinney, Dan, Co. (California Beer Wholesalers' Assn., Inc.),* 137 NLRB 649, 657 (1962)("As we are persuaded that such enforcement, whether or not it was sought, assented to, or acquiesced in by the other party to the contract, is within the scope of the prohibition of Section 8(e)…"). Thus, WDES's allegation that JLL "acceded"[4] to the unions' economic pressure for the hot cargo agreement in order to secure a CBA is an agreement actionable under §8(e).

Second, §8(e) applies to situations where an employer is initially coerced into a hot cargo agreement and then subsequently renews/reaffirms it without coercion, which is what is alleged here. The Complaint specifically alleges that JLL "zealously enforces" this policy with its tenants on an ongoing basis each time it enforces its tenant rules. ¶¶17, 55, 65. As such, section §8(e) applies. *See, e.g., N.L.R.B. v. Central Penn. Regional Council of Carpenters,* 352 F.3d 831, 833-34 (3d Cir. 2003)("Crucially, the Board and the courts have long interpreted §8(e) to prohibit not just the initial execution of the agreement, but subsequent reaffirmations as well. Accordingly, the words 'to enter into' must be interpreted broadly and encompass the concepts of reaffirmation, maintenance, or giving effect to any agreement which is within the scope of §8(e)"); *Local 814, Teamsters*, 208 NLRB 184, 200 (1974)("[T]he violation of 'entering into' the unlawful agreement, prohibited by Section 8(e), is established when a respondent, whether union or employer, *reaffirms the illegal agreement or insists on its enforcement*…")(emphasis added,

---

[4] "Accede" is defined as: to express approval or give consent**;** to agree to a request or demand; to become a party to something (such as an agreement). *See* https://www.merriam-webster.com/dictionary/accede (last accessed on November 11, 2018).

5

finding both union and employer violated §8(e) where the union pursued compliance with the unlawful collective-bargaining provision through economic pressure and the employer acquiesced by soliciting union membership from its contractors); *Hotel & Rest. Employees, Local 531*, 237 NLRB 1204, 1206 (1978)(same proposition, finding a violation of §8(e) when a threat compelled compliance with a prohibited agreement).

This is not the situation in *Dairy Employees' Local 754*, 210 NLRB 483, 490 (1974), cited by JLL, in which the board found that an employer did not enter into an agreement in violation of §8(e) because the employer had specifically filed an unfair labor practice charge against the union for threatening it into participating. *Id*. ("Glenora, however, by filing unfair labor charges in this case, revealed that it was not agreeing with the Respondent as to an 8(e) arrangement."). Not only has JLL never asserted any claim of an unfair labor practice, it "zealously" enforces and reaffirms the policy and practice on an ongoing basis.[5]

WDES's position is also consistent RICO decisions holding that being a reluctant participant in an illegal agreement is not a defense. *See Boyle v. United States*, 556 U.S. 938, 948 (2009)("decisions may be made …by…a show of strength, etc."); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 979 (7th Cir. 1995) ("Thus, even if A-B and FDC may have been reluctant participants in a scheme devised by 'upper management,' they still

---

[5] The Motion at 7 also cites *Gen Longshore Workers, ILA (Mercer)*, 235 NLRB 161 (1978), which predates the appellate authority cited above, for the proposition that "agreements under Section 8(e) must be entered into voluntarily, and threats or coercion deprive such agreements of their voluntariness." Although the N.L.R.B. found a violation of §8(e), it did not find that coercion "deprives" such agreements of their voluntariness. Instead, the N.L.R.B. determined that there was no evidence of an independent violation of §8(b)(4), which requires a finding of coercion. *Id*. at 169-70. There is nothing in *Mercer* supporting the notion that §8(e) prohibits involuntary agreements. If the N.L.R.B. had found evidence of coercion, it would also have found a violation of both §8(e) and §8(b)(4). *Id*. at 169-70. Moreover, §8(e) was enacted as a "loophole-closing measure," *Nat'l Woodwork Mfrs. Ass'n v. N. L. R. B.*, 386 U.S. 612, 635 (1967), and some "dual protection" is expected and permissible. *See generally J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001)("this Court has not hesitated to give effect to two statutes that overlap, so long as each reaches some distinct cases").

knowingly implemented management's decisions, thereby enabling the enterprise to achieve its goals."). In sum, even if it could somehow ultimately be found that JLL's initial entrance into the hot cargo agreement was not a violation of §8(e), its continued "zealous" enforcement of the policy combined with its failure to ever challenge it, certainly invokes §8(e)'s prohibitions.

II. The Complaint Alleges A Pattern Of Racketeering Based On Violations Of The Hobbs Act And §302 Of The LMRA[6]

WDES's RICO complaint alleges an ongoing and open-ended pattern of 18 U.S.C. §1951(a) and 29 U.S.C. §186(a) violations, which are RICO acts of racketeering pursuant to 18 U.S.C. §§1961(1)(B) and (C), carried out through an association-in-fact enterprise consisting of JLL and the three unions. JLL's argument with respect to the pattern requirement is that there are no properly pled violations of §§1951 and/or 186. As discussed below, these arguments are flawed: a pattern of racketeering is properly alleged.[7]

a. WDES Properly Alleges that JLL Violated The Hobbs Act

Aside from the arguments JLL raises with respect to whether a hot cargo violation is properly pled (addressed *supra*),[8] the Motion at 11-13 also contends that the Complaint does not allege Hobbs Act violations for three reasons. None of these arguments support dismissal.

---

[6] 18 U.S.C. §1951 and the Taft-Hartley Act, 29 U.S.C. §186(a), respectively.

[7] JLL's argument on this point is limited to whether the predicate acts are properly pled. It does not dispute that continuity/relatedness are met. *See generally H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989). Even if the Court should find that either §186 or §1951 is not properly pled, a pattern would still exist for the remaining predicate act. JLL does not take issue with any aspect of the enterprise.

[8] The Hobbs Act states, in pertinent part: "Whoever in any way or degree obstructs, delays, or affects commerce…by…extortion… shall be fined under this title or imprisoned…" §1951(a). The Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear…" §1951(b). JLL's main argument regarding whether a hot cargo violation is properly pled relates to the "wrongful" of the conduct.

7

First, JLL argues that there is no Hobbs Act violation because the "extorted money" was paid to a third party—the union contractors—and not JLL. *Id.* at 11. It is true that the extorted money was paid to third parties (*i.e.,* the union contractors), but that does not defeat a Hobbs Act violation. In *United States v. Green*, the Supreme Court held that "extortion…in no way depends upon having a direct benefit conferred on the person who obtains the property." 350 U.S. 415, 420 (1956). The Court upheld the prosecution of a union representative and a local union for extorting employers into paying "money, in the form of wages to be paid for imposed, unwanted, superfluous and fictitious services of laborers." *Id.* at 417. *Green* makes clear that the property (wages) extorted by the union and its agent was to be paid to the laborers directly. In other words, the fact that the union representative never took personal possession of the extorted wages was irrelevant.

Courts of appeal likewise agree. *See, e.g., United States v. Lewis*, 797 F.2d 358, 364 (7th Cir. 1986)("[t]o secure a conviction under the Hobbs Act, the prosecution does not have to show that the defendant acted to receive, either directly or indirectly, the proceeds of his extortion or any benefit therefrom."); *United States v. Pellicano*, 135 F. App'x 44, 50 (9th Cir. 2005)(Hobbs Act requires "that the defendant or a third party receive the extorted property"); *United States v. Cerilli*, 603 F.2d 415, 420 (3d Cir. 1979)("we conclude that the appellants' conduct here constituted extortion regardless of whether the payments went into appellants' pockets or their party's coffers"); *United States v. Gotti*, 459 F.3d 296, 324 & n.9 (2d Cir. 2006).[9] JLL's citation to *Sekhar v. United States*, 570 U.S. 729 (2013) and *Scheidler v. Nat'l Org. for Women*, 537 U.S. 393 (2003) do not alter this analysis. Those cases stand for the proposition that the object of the

---

[9] *See also United States v. Vigil*, 05-2051, 2006 WL 4109683, at *3 (D.N.M. Aug. 7, 2006)("Extortion is proven if the payments are made to a third party or to an entity at the defendant's direction.").

8

extortion must be "transferable" property, such as money, which those cases did not involve, but which even JLL recognizes is at issue here. Motion at 11 (identifying money as alleged extorted property).

Second, JLL argues that WDES's "economic fear" is simply "coercion" and "does not rise to the level of extortion." Motion at 12. JLL conflates economic fear and transferrable property in order to mischaracterize WDES's allegations. WDES's economic fear is premised on its inability to open or operate its business if it did not accede to JLL's demands. ¶¶34-35. JLL does not appear to dispute that the Hobbs Act encompasses "economic fear."[10] But the Motion ignores the crucial distinction that JLL capitalized on this fear to force WDES to pay union members exclusively to do the work and at a higher rate. *Id.* To be sure, WDES's fear that its business would remain closed is not the property that is being extorted, but rather, it is the threat used to obtain the premium wages for the union members.

*Wackenhut Corp. v. Serv. Employees Int'l Union*, 593 F. Supp. 2d 1289 (S.D. Fla. 2009), relied on by JLL, though superficially similar, is distinguishable on this important point. In *Wackenhut*, the plaintiff argued that the union was using economic fear to force it to sign a collective bargaining agreement limiting various intangible rights, such as the rights to control the form and nature of the union recognition process and the right to refuse recognition from a mixed union. *Id.* at 1296. The court found that economic fear was being used, but that the object of that fear was to obtain non-transferrable intangible collective bargaining rights. *Id.*

---

[10] *See, e.g., United States v. Lisinski*, 728 F.2d 887, 890 (7th Cir. 1984)("[E]xtortion by wrongful use of economic harm is established by showing that the defendant preyed upon or exploited the victim's fear of economic harm"); *Ocasio v. United States*, 136 S. Ct. 1423, 1435-36 (2016)(Hobbs Act "applies when, for example, a store owner makes periodic protection payments to gang members out of fear that they will otherwise trash the store," or where "a health inspector demands a bribe from a restaurant owner, threatening to close down the restaurant if the owner does not pay").

A far more instructive case is *United States v. Kirsch*, 903 F.3d 213, 227–28 (2d Cir. 2018), in which a local labor union leader threatened environmental remediation companies into hiring his union workers under threat of shutting down the construction site through, *inter alia*, picketing, blocking truck access in and out, changing padlocks, and tampering with the machinery. *Id.* at 217-218. The Second Circuit addressing both *Sekhar* and *Scheilder*, found that pressuring the victim into paying union wages by fomenting the fear of being put out of business is a Hobbs Act violation:

> In contrast, Kirsch sought to extort property that Local 17 members could clearly "obtain": wages and benefits from construction contractors. Wages and benefits are "capable of passing from one person to another,"—in this case, from the employer to the employee—and are therefore "transferable." Indeed, when an employer pays wages and provides benefits to an employee, the employer "part[s] with" that property, and the employee "gain[s] possession" of it. (*Id.* at 227-28, citations omitted).

This decision is therefore doubly fatal to JLL's argument, finding that both the increased wages paid to the union workers was transferrable property while also finding that the victim's fear of a closed job site was encompassed by the Hobbs Act.

Third, JLL argues WDES does not allege a plausible Hobbs Act violation because there is no wrongful conduct on the part of the JLL and/or the unions, *i.e.*, there is no hot cargo violation alleged. Motion at 12-13. Because WDES alleged sufficient facts supporting JLL's participation in an illegal hot cargo conspiracy with the unions, JLL's argument is moot. Moreover, any argument under *United States v. Enmons*, 410 U.S. 396 (1973) is misplaced, because neither JLL nor the union has a lawful claim to work for WDES. Rather, JLL is using economic fear to force WDES to hire union labor in the first place, which is wrongful. Indeed, *Kirsch* makes that clear. *See also United States v. Jacobs*, 543 F.2d 18, 21 (7th Cir. 1976)("Presumably a demand for recognition, on behalf of a union authorized to represent the

majority of employees albeit at gunpoint, cannot, under *Enmons* violate the Hobbs Act. We think the same demand on behalf of a union which does not have authority to represent any of them could violate it."); *United States v. Stofsky*, 409 F. Supp. 609, 616 (S.D.N.Y. 1973)("*Enmons* deals specifically with employer-employee disputes…"); *C & W Construction Co. v. Brotherhood of Carpenters & Joiners of America, Local 745, AFL-CIO*, 687 F. Supp. 1453, 1469 (D. Haw. 1988)(*Enmons* does not apply where "[t]he boycott was secondary, not primary").

    b. <u>WDES Also Properly Alleges JLL Violated Section 302 Of The LMRA</u>

  The Complaint also alleges the restriction on non-union labor violates 29 U.S.C. §186(a), which make it illegal for an employer "to pay, lend, or deliver… any money or other thing of value…to any labor organization…" ¶¶38-40. It is important to note that the violation of this statute does not depend on a finding that the agreement between JLL and the unions violates §8(e). Instead, the violation of §186(a) is that forcing WDES to use union labor is a kickback to the unionized contractors that it had to hire.

  JLL contends that patronage of unionized firms through an illegal hot cargo agreement is exempted by §186(c) because the "union contractors' services were sold to or purchased by Plaintiff at… the prevailing market rate…" Motion at 11. Thus, it reasons, it falls somewhere in the list of exceptions to liability enumerated in §302(c). Notably absent from the list is what WDES alleges is actually taking place: coerced patronage of union firms either explicitly or implicitly. Indeed, the purpose of the statute is to combat "[w]idespread public concern with racketeering, crime and corruption" by unions. *United States v. Lanni,* 466 F.2d 1102, 1004 (3d Cir. 1972)(quotations omitted). So it would be counterintuitive for an otherwise unfair labor practice to be immunized because the end result is the payment to unionized contractors for legitimate services which are overpriced. Courts see through schemes designed to achieve illicit labor objectives. *See, e.g., United States v. Pecora,* 484 F.2d 1289, 1294 (3d Cir. 1973)("To

11

allow a device such as this [a scheme by employers to bribe a union official disguised as the sale of tickets to a dinner in his honor]" because tickets were a "commodity [as an exception]" would "strain credulity"); *Toth v. USX Corp.,* 693 F. Supp. 693, 699-700 (N.D. Ill. 1988)("federal courts do not sit to enforce promises or agreement deemed illegal under the federal labor laws," rejecting argument for a scheme "designed to promote corruption in the collective bargaining process").

JLL cites no authority for the argument that its actions should be shielded by §302(c)'s exceptions. Its attempt to find shelter in an exception to §302, which does not apply and fares no better than its twisted interpretation of the construction exception, should be rejected.

### III. WDES Has Standing

#### a. WDES Did Not Waive Its Claims By Signing A Lease

Lastly, JLL argues that by signing its leases, which included a promise to comply with the building rules, it consented to the challenged union-only rule, foreclosing JLL's liability. Motion at 14.[11] But acceptance of this argument would mean no employer could ever challenge a hot cargo provision because they are, by their nature, agreements with a union. The Supreme Court has rejected this argument on the theory that courts cannot enforce private agreements which "would be violative of [public] policy." *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 84 (1982)(allowing an employer to defend its admitted breach of an obligation under a CBA on the ground that the provision was an illegal hot cargo agreement). Because courts cannot enforce "illegal promises" (*Id*. at 77), purported consent is of no consequence. Therefore, the Motion's

---

[11] JLL puts this in a section referenced "lack of standing" and asks that it be decided under Rule 12(b)(1), which applies to challenges to subject matter jurisdiction. Motion at 13. But this is incorrect. The Supreme Court has held a challenge to standing does not implicate jurisdiction. *Lexmark Inten. Inc. v. Static Control Components Inc.,* 572 U.S. 118, 128 n.4 (2014). This is another Rule 12(b)(6) argument.

unsupported assertion that WDES is precluded from challenging the illegal hot cargo agreement by having accepted the building rules, is wrong. Indeed, the Court has permitted a firm which signed a CBA to then challenge it as violating §8(e). *Connell Constr. Co, Inc.,* 421 U.S. at 626.

Additionally, the Supreme Court has rejected arguments that a plaintiff cannot sue for an antitrust violation because it was a party to the illegal agreement, typically as a consumer. *See, e.g., Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 340 U.S. 211, 214 (1951)(upholding jury instruction providing plaintiff's agreement to the antitrust violation, rather than going elsewhere to do business, was not a defense), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984); *Simpson v. Union Oil Co. of Calif.,* 377 U.S. 13, 16-17 (1964)(same proposition). Hence, the general inapplicability of consent as a defense to a statutory tort is well-established. *See Restatement (Second) of Torts,* §892C, comment on subsection (2)("There is also an analogy in cases under the federal antitrust acts that hold that the statutory triple-damage action is still available to a party to a prohibited contract despite the defenses of consent and in pari delicto, in order to maintain the 'usefulness of the private action as a bulwark of antitrust enforcement'"). The Supreme Court likewise rejected the "common-law in pari delicto doctrine as a defense to treble damage actions…" *Perma Life Mufflers, Inc. v. Int'l Parts Corp.,* 392 U.S. 134, 138 (1968), *overruled on other grounds by Copperweld Corp.*, 467 U.S. 752; *cf. Blackburn v. Sweeney,* 53 F.3d 825, 829 (7th Cir. 1970)(upholding an "equal fault" antitrust defense against a plaintiff which was a "potential oligopolist" because there was no clear "asymmetry in bargaining power" between the parties). There is tremendous *asymmetry* here between JLL and WDES, a small tenant in a big office building with no bargaining power, similar to the franchisee and franchisor example in *Blackburn*. Thus, there is no authority for subjecting it to this type of defense.

13

Given the similarity of RICO's treble damages provision (§1964(c)), which was modeled on the civil provision of federal antitrust laws, *Holmes v. SIPC,* 503 U.S. 258, 267 (1992), and RICO's purpose of turning victims into "prosecutors, private attorneys general," *Rotella v. Wood,* 528 U.S. 549, 557 (2000), the same rationales against enforcing illegal agreements should apply. JLL's Motion cites no authority in support of its argument that WDES is precluded from suing to redress its damages because it was obliged to accept JLL's building rules.

  b. <u>WDES Has Standing To Seek Damages For Increased Build-out Costs</u>

The Complaint alleges WDES has suffered damages in two ways: by paying inflated costs for a union mover, ¶28, and by paying for a bloated "construction allowance" in its lease. ¶¶19, 59. The construction allowance (also known as a "tenant improvement allowance" in the leasing industry) is a sum loaned to the tenant by the landlord to pay for improvements to the space. Moreover, as the Complaint states, the allowance was amortized by the landlord and charged back to WDES during the lease term.

The Motion asserts WDES does not have standing to sue JLL for these damages because this increased cost "stems" from the lease agreement with the landlord, not JLL. Motion at 13-14. Although the argument is not well-developed, it seems to rest on the notion that the landlord, not JLL, is solely responsible for this increased cost. But even if JLL is not a party to the lease, it can be sued for fixing the price of a component of the cost of the lease. *See, e.g., Catalano, Inc. v. Target Stores,* 446 U.S. 643, 648 (1980)("Thus credit terms must be characterized as an inseparable part of the price," holding an agreement to eliminate interest-free credit was a form of price fixing violating antitrust law); *Gelboim v. Bank of Am. Corp.,* 823 F.3d 759, 771 (2d Cir. 2016)("the fixing of a component of price [of a financial product] violates the antitrust laws"). Thus, WDES has been injured by JLL's direct actions—the imposition of an illegal union-only

policy over its tenants—that caused the increased price for the union labor tenant allowance, which WDES had to repay as rent. If not for JLL's illegal agreement with the unions, WDES would have repaid a lower monetary amount to the landlord each month. *See, e.g.,* ¶¶19, 59(a)-(b). The Motion's attempt to shift blame to a "third party not before the court" is an attempt to obfuscate the facts: JLL is directly responsible for implementing this cost-increasing policy.[12] No contrary authority is cited in support of the standing argument.

      c. <u>JLL Makes No Argument With Respect To Damages Suffered By WDES By Virtue Of Paying Inflated Moving Costs</u>

WDES also alleges that it was damaged by having to pay inflated costs for union movers. *See, e.g.,* ¶¶28, 59(c). While the Motion takes issue with the construction buildout damages, it makes no challenge to this separate category of damages alleged by WDES. Thus, regardless of how the Court rules on the standing issue with respect to construction costs, there is no basis for dismissal with respect to the damages WDES alleges in connection with its moving costs.

## **CONCLUSION**

For the reasons stated herein, JLL's Motion should be denied in its entirety.

Dated: November 19, 2018

                    *s/ James B. Zouras*
                    James B. Zouras
                    Ryan F. Stephan
                    **Stephan Zouras, LLP**
                    100 N. Riverside Plaza, Suite 2150
                    Chicago, IL 60606

---

[12] JLL's citation to *Silha v. ACT, Inc.,* 14-0505, 2014 WL 11370440, at *2 (N.D. Ill. Sept. 2, 2014), illustrates this obfuscation through selective quoting. The full quote states: "Defendants' selling of Plaintiffs' PII did not cause Plaintiffs to pay the examinations fees, especially because the selling or sharing of Plaintiffs' PII was optional. Instead, Plaintiffs paid the fees to take the examinations and eventually gain admission to college." *Id.* In *Silha*, the "optional sharing policy" was the one being challenged, not the entrance fee plaintiffs sought to recover in their suit. For WDES, the policy being challenged—the union policy—was not optional. Nor is WDES suing to recover the amount paid for the square footage of the office, the equivalent of *Silha's* exam entrance fees. As discussed, WDES is suing to recover the increased labor and moving costs JLL imposed on it.

jzouras@stephanzouras.com
rstephan@stephanzouras.com

Howard W. Foster
Matthew A. Galin
**Foster PC**
150 N. Wacker Drive, Suite 2150
Chicago, IL 60606
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
**The Walner Law Firm LLC**
555 Skokie Boulevard, Suite 250
Northbrook, IL 60062
awalner@walnerlawfirm.com
walner@walnerlawfirm.com