IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:18-cv-5492 |
| v. | Magistrate Judge Sheila M. Finnegan |
| JONES LANG LASALLE AMERICAS (ILLINOIS), LP, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

In its Motion to Dismiss, Defendant Jones Lang LaSalle Americas (Illinois), LP ("JLL") demonstrated there is no legal merit to the claim it violated RICO by enforcing a lease provision – a term agreed to by tenant Plaintiff Wacker Drive Executive Suites, LLC ("Plaintiff") and its landlord (a non-party) – restricting building repair and related work to union-represented employees. None of the arguments Plaintiff raises in its Response to JLL's Motion to Dismiss (the "Opposition") support a different conclusion. Indeed, Plaintiff routinely both mischaracterizes relevant legal precedent and disregards its own factual allegations in an attempt to stave off dismissal, but to no avail. Accordingly, JLL's Motion to Dismiss should be granted, and Plaintiff's Complaint should be dismissed, with prejudice.

**ARGUMENT**

**I.   Plaintiff's RICO Claims Fail as a Matter of Law Because Plaintiff Cannot Plausibly Plead the Requisite Elements of a RICO Violation.**

Contrary to Plaintiff's contentions in its Opposition, Plaintiff has failed to adequately plead the requisite elements of a RICO violation: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering.

### A. Plaintiff Cannot Establish a Pattern of Racketeering Activity Based on Predicate Acts.

#### 1. Plaintiff Does Not Sufficiently Plead that JLL Violated Section 8(e) of the NLRA.

In its Opposition, Plaintiff claims that JLL violated Section 8(e) of the National Labor Relations Act ("NLRA") for two reasons: (1) the construction industry proviso exception does not apply to JLL; and (2) JLL's purported agreement with the unions violates the NLRA because despite the unions' coercive tactics, JLL allegedly voluntarily renewed the agreement. (*See* Opp. at 4-7.) Neither of these arguments saves Plaintiff's claim.

##### a. The Construction Industry Proviso Applies to JLL.

As demonstrated in JLL's Motion to Dismiss, while Plaintiff alleges that JLL entered into an "agreement" that violated NLRA Section 8(e) by restricting subcontracting to union-only contractors, Section 8(e)'s construction industry proviso affirmatively protects the type of agreement described in the Complaint (even if Plaintiff could prove that such an "agreement" existed). (*See* Mot. at 6-9.) Now, after failing to acknowledge the construction industry proviso in the first instance, Plaintiff disputes the construction industry proviso's relevance here[1] by citing *Connell Constr. Co. Inc. v. Plumbers and Steamfitters Local Union 100*, 421 U.S. 616 (1975) and *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645 (1982) to claim this exception is limited to the context of collective bargaining. (Opp. at 2.)

---

[1] The Complaint's allegations – which for present purposes must be accepted as true – establish that JLL is an employer engaged in the construction industry. (Mot. at 7-9.) The restriction at issue here includes construction industry jobsite work, including "the construction, alteration, painting, or repair of a building, structure, or other work," (29 U.S.C. § 158(e); Compl. ¶¶21-28), and the restriction allegedly arises from purported agreements between JLL and the unions, (Compl. ¶¶12-13). Thus, Plaintiff cannot seriously dispute the applicability of Section 8(e)'s construction industry proviso, which renders meritless the Complaint's allegation that JLL entered into an agreement that violated Section 8(e).

However, contrary to Plaintiff's argument, these Supreme Court cases underscore that the proviso applies here for two reasons.

*First*, the Supreme Court decisions in *Connell* and *Woelke* establish that the proviso applies because the union-only requirement enforced by JLL arises in the context of a collective-bargaining relationship. The Complaint alleges that JLL has collective bargaining relationships[2] with the International Union of Operating Engineers Local 399 and Service Employees International Union Local 1.[3] (Compl. ¶12.)

*Second*, the Complaint also alleges that JLL is part of a "multi-employer" union/nonunion conflict between jobsite contracts and subcontracts, which was recognized in *Connell* as the central concern addressed by Section 8(e)'s construction industry proviso. *See Connell Constr. Co. Inc.*, 421 U.S. at 629-30 ("[Congressional] [d]iscussion of 'special problems' in the construction industry, applicable to… the [Section] 8(e) proviso… focused on the problems of picketing a single nonunion subcontractor on a multiemployer building project, and the close relationship between contractors and subcontractors at the jobsite"). JLL, which manages a common multi-employer site where construction and repair work is performed, faces one of the very problems Congress intended to remedy through the proviso: avoiding friction between union and nonunion

---

[2] Again, for the purposes of this Motion to Dismiss, this Court must assume that collective bargaining relationships exist as alleged in the Complaint. (Compl. ¶12.) Nevertheless, to the extent that JLL, as property manager, merely enforces a union-only requirement consistent with collective bargaining agreement(s) entered into by the Building, and not JLL, this would likewise defeat Plaintiff's Section 8(e) claims as a matter of law because the National Labor Relations Board ("NLRB" or "Board") and the courts hold that clients, customers, and other third parties may engage in discrimination based on union affiliation without violating the NLRA. (*See* Mot. at 7-9.)

[3] Any argument that the proviso does not apply with respect to Teamsters Local 705 because the union does not have a bargaining relationship with the Building, (Compl. ¶12), is meritless, as demonstrated by the very precedent Plaintiff cites. *See Woelke & Romero Framing, Inc.,* 456 U.S. at 657 (Supreme Court cites with approval then-Senator John F. Kennedy's statement that the construction industry proviso protected "all . . . agreements involving undertakings not to do work on a construction project site with other contractors or subcontractors regardless of the precise relation between them").

construction workers on a common worksite. *See id.* at 630. Thus, the application of the construction industry proviso here is entirely consistent with the holdings in *Connell* and *Woelke.*

Plaintiff further contends that the proviso does not apply because it only covers worksites involved in the actual construction of buildings and claims that 125 S. Wacker Drive ("Building") is "indisputably not under construction." (Opp. at 3.) To support its argument, Plaintiff claims that several circuit court cases cited by Defendant only involved the actual construction of buildings, allegedly unlike the present case. (Opp. at 4.) However, this is a distinction without a difference, as the construction industry proviso is not limited to the initial time period when actual structures are being built. On its face, the proviso indicates that it protects "work to be done at the site of the construction, *alteration, painting, or repair* of a building, structure, *or other work.*" (29 U.S.C. § 158(e)) (emphasis added). Although Plaintiff relies on *Spectacor Management Group v. NLRB*, 320 F.3d 385 (3d Cir. 2003), this case actually affirms that the Building is a construction site. (Opp. at 3-4.) In *Spectacor*, the Court afforded *Chevron* deference to the NLRB's statutory interpretation of a "construction site" in *Carpenters Local 623 (Atlantic Exposition Services, Inc.)* 335 NLRB 586, 594 (2001). *See Spectator Mgmt. Grp.*, 320 F. 3d at 395-96 (noting the NLRB in *Carpenters Local 623 (Atlantic Exposition Services, Inc.)* held that a tradeshow floor did not qualify as a construction site because assembling exhibits were not affixed to the structure of the building; rather, the work was temporary, more akin to building a table or a chair or a book case).

Here, unlike a trade show exhibit, the work performed by the subcontractors at the Building is permanent and affixed to the structure of the Building. (Mot. at 8-9.) Plaintiff concedes that in 2014, it "spent $325,000 for construction costs, including improving the ceilings of the common area, new lighting, carpeting, tiling, reconfiguring the kitchen area, and installing cabling" to renovate its leased office suite in the Building, and that in 2017, it spent an additional $45,000 "for

modifying the office configurations, upgrading the electrical system, and re-carpeting." (Compl. ¶¶21, 25.) As such, the construction industry proviso applies despite the actual building being complete.

### b. JLL's Alleged Agreement With the Unions Does Not Violate Section 8(e).

Plaintiff fails to allege that JLL entered into an agreement with the unions that violates Section 8(e). Plaintiff contends in its Opposition that although the hot cargo agreement was entered into on the basis of coercion, JLL voluntarily reaffirmed the agreement by insisting on its enforcement in violation of Section 8(e). (Opp. at 5-6.) But the reaffirmation language which Plaintiff cites from *NLRB v. Central Penn. Regional Council of Carpenters*, 352 F.3d 831, 833-34 (3d Cir. 2003) and *Local 814, Teamsters*, 208 NLRB 184, 200 (1974) (Opp. at 5) does not relate to whether an employer's continued enforcement of a hot cargo agreement, *when faced with union coercion*, violates Section 8(e). Rather, in those cases, reaffirmation was only deemed material to whether the Section 8(e) allegations were timely where the alleged hot cargo agreement was originally entered into outside the statutory period. In this Motion to Dismiss, the timeliness of Plaintiff's claims is not at issue.

Plaintiff further relies on *Hotel & Restaurant Employees, Local 531*, 237 NLRB 1204 (1978) and *Local 814, Teamsters*, 208 NLRB 184 (1974) to argue that enforcement of a hot cargo agreement in the face of union coercion violates Section 8(e). (Opp. at 5-6.) However, *Hotel & Restaurant Employees* is distinguishable because the Board found that the *union*, not the employer, violated Section 8(e) by entering into and threatening to secure enforcement of a hot cargo agreement. *See* 237 NLRB at 1204-06. *Local 814, Teamsters* is also distinguishable because there, the employer never raised the coerciveness of the union's actions as a defense to the Section 8(e) allegation, and so the Board did not rule on this issue when it found a violation against the

employer. *See* 208 NLRB at 198-200. In contrast, the cases cited by JLL (Mot. at 7) reveal that Section 8(e) cannot appropriately be enforced against an employer that has adopted certain restrictions in response to union restraint and coercion. This coercive element is key because it deprives hot cargo agreements of their voluntariness. Plaintiff even pleads the existence of these coercive tactics in the Complaint. (Compl. ¶15; Mot. at 6-7.) Plaintiff's argument that an involuntary agreement can be voluntarily reaffirmed and enforced in violation of Section 8(e) (Opp. at 4-7) is absurd because it would largely deprive the proviso of its intended effect of protecting hot cargo agreements in the construction industry, where collective-bargaining relationships typically span many years.

### 2. Plaintiff Cannot Plausibly Plead that JLL Violated the Hobbs Act.

As Plaintiff concedes in its Opposition (at 1), the alleged Hobbs Act violation depends on a finding that JLL violated Section 8(e) of the NLRA. Because JLL did not violate Section 8(e), the Hobbs Act violation must also fail. The Hobbs Act claim also fails for the independent reason that Plaintiff does not (and cannot) plead that JLL extorted property from Plaintiff by wrongfully obtaining the alleged extorted property through force, violence or fear, which are necessary elements of a Hobbs Act extortion violation.

#### a. Plaintiff fails to allege that JLL obtained the extorted property.

In its Opposition, Plaintiff ignores the plain language of the Hobbs Act defining extortion as "obtaining of property of another." *See* 18 U.S.C. § 1951(b)(2); (Opp. at 8-9.) In doing so, Plaintiff neglects to explain how JLL obtained Plaintiff's property, "the money that WDES was required to spend on more expensive union services" through JLL's enforcement of the union-only policy. (Compl. ¶¶17, 34.) As Plaintiff concedes in its Opposition, Plaintiff paid the alleged

extorted money to the union contractors, not to JLL.[4] (Opp. at 8.) The Complaint does not allege that JLL demanded, acquired, or received any benefit from the alleged extorted money. Nor does Plaintiff allege any financial or advantageous relationship between JLL and the union contractors that explains how the union contractors' receipt of the alleged extorted money results in JLL's acquisition of it. Plaintiff's inability to allege that JLL's enforcement of a union-only rule equates to obtaining the extorted property from Plaintiff is fatal to this claim.

*Sekhar* and *Scheidler*, which Plaintiff notes "stand for the proposition that the object of the extortion must be 'transferable property,'" are consistent with a finding that no Hobbs Act violation exists. (Opp. at 8-9); *Sekhar v. United States*, 570 U.S. 729, 737-38 (2013) (finding no Hobbs Act violation where defendant attempted to compel a person to recommend his employer approve an investment because this conduct does not constitute "obtaining of property of another"); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003). In *Scheidler*, although the Court found that the defendants had interfered with, disrupted, and deprived plaintiffs of their ability to exercise their property rights, it did not find that defendants' actions in achieving their goal to shut down an abortion clinic constituted extortion under the Hobbs Act because the defendants did not obtain the plaintiffs' property. *See* 537 U.S. at 404-405; *see also Re v. United States*, 736 F.3d 1121, 1123 (7th Cir. 2013) (explaining that *Scheidler* "dealt with a prosecution in which the proof showed that the victim abandoned property but the perpetrator did not get anything"). Here, similarly, the alleged goal of JLL's actions in enforcing a union-only

---

[4] Plaintiff's allegations regarding the construction allowance further corroborate that JLL has no relationship to the alleged extorted money. (Compl. ¶19.) Plaintiff alleges that it paid the union contractors for their work from the construction allowance allocated by the Landlord in its Lease. (Compl. ¶¶19, 24, 27.) The construction allowance, as Plaintiff alleges, is a sum of money given to tenants by the *Landlord* to improve the leased space, and the allowance "is an advance on the rent" the tenant will pay to the Landlord. (Compl. ¶19.) Thus, JLL has no direct role in the allocation or payment of the construction allowance and Plaintiff's use of that money to pay union contractors.

requirement was to compel Plaintiff to hire union-only workers. (Compl. ¶17.) Although enforcing this rule interfered with Plaintiff's right to hire non-union workers, (Compl. ¶¶22, 26, 28), JLL in no way obtained or acquired Plaintiff's alleged extorted property (the money it paid to the union contractors).

The cases Plaintiff relies on to argue that JLL does not need to directly or indirectly receive or benefit from the extorted property to be liable for extortion under the Hobbs Act are violence-based and in no way comparable to this case. For example, in *United States v. Green*, the defendants, a union and union representative, threatened violence to exact money from the employer for superfluous and fictitious services for union members. 350 U.S. 415, 420 (1956). Unlike the defendant in *Green*, Plaintiff does not allege that JLL threatened violence or has an advantageous relationship with the unions, such as that of a union representative. Nor is the union contractors' work here superfluous or fictitious. (*See* Compl. ¶¶21-28; Mot. at 13.) *United States v. Lewis* is even further afield. 797 F.2d 358 (7th Cir. 1986). There, the defendant threatened to place cyanide in Tylenol capsules sold by stores if he was not paid $1 million, specifically demanding the extorted property with violence. *See id.* at 364. JLL, by contrast, did not threaten violence, nor demand the extorted property.

        **b.**        **Plaintiff fails to show how JLL's enforcing the union-only requirement amounts to extortion under the Hobbs Act.**

*First*, it is well-established that when Congress enacted the Hobbs Act, it made it "perfectly clear that extortion did not include coercion." *Sekhar*, 570 U.S. at 735; *see also Scheidler,* 537 U.S. at 404-05 (holding that defendants' actions of interference and disruption, while coercive and possibly criminal, did not constitute extortion); *Rennell v. Rowe*, 635 F.3d 1008, 1012 (7th Cir. 2011) (granting defendant's motion to dismiss because defendant's conduct did not meet the definition of extortion under the Hobbs Act when it used economic fear to obtain a legitimate

business objective); *Wackenhut Corp. v. SEIU*, 593 F. Supp. 2d 1289, 1296 (S.D. Fla. 2009) (finding no extortion under the Hobbs Act when defendant used economic fear to force plaintiff to sign a CBA agreement giving unions intangible rights). In the Complaint, Plaintiff only alleges economic fear, (Compl. ¶¶34, 36, 53), and doubles down on the same in the Opposition, (Opp. at 9) ("JLL capitalized on this [economic] fear to force WDES to pay union members exclusively to do the work at a higher rate").

*Second*, Plaintiff's reliance on *United States v. Kirsch* is obviously misplaced. In *Kirsch*, the Court found the defendant committed extortion under *New York penal law*, and specifically distinguished that state law as far broader than the federal Hobbs Act. 903 F.3d 213, 227 (2d. Cir 2018) (stating that the defendants' conduct in *Scheidler* and *Sekhar* "did not constitute extortion because the defendants could not obtain the property for themselves; rather, they could merely 'interfere' with the victims' use of it. *Such conduct perhaps constituted the New York offense of coercion, but not extortion*.") (emphasis added); *see also* N.Y. Penal Law § 135.60 ("A person is guilty of coercion ... when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in").

        **c.**        **Plaintiff fails to plead that JLL did anything wrongful.**

Even accepting as true Plaintiff's claim that JLL used economic fear to enforce the Landlord's union-only rule does not mean JLL's conduct was "wrongful" under the Hobbs Act. The Supreme Court held in *United States v. Enmons* that the Hobbs Act "does not apply to the use of force to achieve legitimate labor ends," such as "higher wages in return for genuine services." 410 U.S. 396, 400-01 (1973); *see also Glamour Girlz, LLC v. D.M. Merch., Inc.*, No. 12 C 4307, 2012 WL 6004233, at *2 (N.D. Ill. Sept. 24, 2012) (dismissing plaintiff's RICO claims because "[t]he facts alleged in the complaint amount to nothing more than economic pressure, and, even though unpleasant, do not rise to the level of extortion"). The Landlord has a right to require

union-only workers (*See* Mot. at note 6), and JLL, as the Building's manager, enforces this rule. These are legitimate business objectives, and therefore, Plaintiff's purported use of economic fear to achieve them is not wrongful. (Compl. ¶¶34, 53.)

Plaintiff's reliance on *Kirsch* to state that use of economic fear is wrongful is again misplaced, as *Kirsch* analyzes the defendant's actions under New York Penal law, not the Hobbs Act. 903 F.3d at 221 (finding "the *Hobbs Act* is not violated unless threats or force are used to obtain an *illegitimate* objective in a labor dispute, such as personal payoffs or 'no-show' jobs") (emphasis added). Likewise, *United States v. Jacobs* does not support the premise that JLL's behavior is wrongful. 543 F.2d 18, 20-21 (7th Cir. 1976) (finding defendants violated the Hobbs Act because they did not pursue legitimate objectives during a strike when they violently and wrongfully fired rifles at three company transformers).

Because Plaintiff fails to sufficiently plead that JLL obtained Plaintiff's extorted property, JLL's conduct was wrongful, and JLL's conduct amounts to extortion, Plaintiff cannot adequately allege that JLL violated the Hobbs Act.

### 3. Plaintiff Fails to Plausibly Allege that JLL Violated Section 302 of the LMRA.

As an initial matter, Plaintiff cannot allege that JLL violated Section 302 of the Labor Management Relations Act ("LMRA") because the Section 302(c)(3) exception applies. Specifically, 29 U.S.C. § 186(c)(3) "permit[s] 'legitimate' financial transactions between management and labor, such as the sale or purchase of a commodity in the regular course of business." *Citrin v. Erikson*, 911 F. Supp. 673, 679 (S.D.N.Y. 1996). This exception applies here because Plaintiff and the union contractors entered into legitimate contracts for construction in the regular course of business at the prevailing market price for union labor. (Compl. ¶¶23, 26-27, 28-31, 39.) Moreover, Plaintiff's reliance on *United States v. Pecora* does not support Plaintiff's

contention that the 302(c) exception does not apply here, as the facts in *Pecora* are far more egregious than those Plaintiff alleges, and the defendant in *Pecora* was a union representative. 484 F.2d 1289, 1294-95 (3d Cir. 1973). In finding a violation, the Court in *Pecora* reasoned that the tickets and advertisements purchased for a dinner in honor of the union's business manager (defendant) far exceeded the fair market rate. *See id.* This is because the dinner raised $44,400.00, but the cost of the dinner was $11,871.72, and the defendant received the proceeds, including $26,755.32 in cash, a car worth $5,324.96, and a television worth $448.00. *See id.* at 1291. Here, by contrast, Plaintiff purchased union labor at the market rate from union contractors.

And as explained in JLL's Motion to Dismiss, Section 302(c) of the LMRA sets forth exceptions that cover any conceivable benefit that unions might receive from the Landlord's union-only requirement, including transactions at the prevailing market price in the regular course of business. *See* 29 U.S.C. § 186(c)(1-9); (Mot. at 10-11.) Even if the enforcement of the Landlord's union-only requirement creates a "thing of value," JLL's actions, absent more, are excepted under Section 302(c).

Plaintiff's failure to plausibly allege that JLL violated Section 8(e) of the NLRA, the Hobbs Act, and Section 302 of the LMRA precludes it from establishing a pattern of racketeering.

    **B.**    **Plaintiff Did Not Plead Sufficient Facts to Establish that JLL Was Conducting the Affairs of the Alleged Association-In-Fact Enterprise.**

Plaintiff also cannot state a claim for relief under RICO because Plaintiff fails to plead that JLL conducted the affairs of the alleged enterprise. Conduct in the context of the RICO statute requires an element of direction. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (finding that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs") (internal citations omitted). Even if an association-in-fact enterprise can be established, if a plaintiff fails to establish that the defendant was

conducting the affairs of the enterprise, rather than its own affairs, the RICO claim should be dismissed. *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013) (hereinafter *Walgreen Co.*); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) (finding plaintiff failed to allege that the defendant conducted the affairs of an enterprise by only pleading "facts suggesting the existence of a marketing relationship" between the parties of the alleged enterprise).

In *Walgreen Co.*, the Seventh Circuit affirmed the dismissal of RICO claims because the plaintiff did not plead sufficient facts to establish that the defendant was conducting the affairs of the alleged enterprise, despite allegations that the parties to the enterprise had a commercial relationship and communicated and cooperated with each other. *See* 719 F.3d at 854-55. The Seventh Circuit reasoned that the plaintiff "does not allege, for instance, that officials from either company involved themselves in the affairs of the other…. [n]or does the complaint anywhere suggest that profits from the illegal drug-switching scheme were siphoned off to the [] enterprise or to individual enterprise members." *Id.* (finding the activity plaintiff alleges each party to the enterprise engaged in "was entirely consistent with [each party] going about its own business"). The Seventh Circuit ultimately concluded that the "allegations in the complaint do not indicate how the cooperation in this case exceeded [cooperation] inherent in every commercial transaction between a drug manufacturer and pharmacy," and without this, there is no basis to infer the defendants were conducting the enterprise's affairs. *Id.* at 856.

Similarly, although Plaintiff alleges here that an association-in-fact enterprise exists "consisting of the three unions and JLL," (Compl. ¶54), Plaintiff fails to allege that JLL conducted or directed the affairs of this purported enterprise. JLL's actions as the Building's manager in enforcing the Landlord's union-only rule do not establish that JLL directed the alleged enterprise's

affairs. (Compl. ¶¶17, 56; Mot. at 3-4.) Likewise, the unions' actions in advocating for its members by threatening to strike and picket the Building if non-union workers are permitted shows nothing more than the unions acting on behalf of their own interests. (Compl. ¶15.) Plaintiff's allegation that "JLL has imposed this [union-only] restriction at the behest of the three unions" is contradicted by the Lease and Contractor Rules and Regulations. (Compl. ¶14; Mot. at 3-4, Exs. A, B, C.) Thus, Plaintiff has not adequately alleged that JLL conducts the affairs of the purported enterprise.

Since Plaintiff cannot establish a pattern of racketeering activity based on the alleged predicate acts, and Plaintiff fails to sufficiently plead that JLL conducts the affairs of the alleged enterprise, Plaintiff's RICO claims should be dismissed.

## II.     Plaintiff Does Not Have Standing to Assert Claims Against JLL.

The arguments and caselaw Plaintiff cites do not establish that Plaintiff has standing to assert the alleged claims against JLL. Plaintiff cannot establish standing unless it shows that: (1) its alleged injury, the increased payment for union labor, (Compl. ¶59), is fairly traceable to the actions of JLL (and not the result of a third party's independent action); and (2) its injury will likely be redressed by a decision in Plaintiff's favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiff focuses its attention in its Opposition on redressability and fails to acknowledge the critical point in JLL's Motion to Dismiss that Plaintiff's injury is not fairly traceable to the actions of *JLL*; rather it is traceable to Plaintiff's own actions in voluntarily entering into a lease with the *Landlord* that requires Plaintiff to abide by the *Landlord*'s union-only rule. (Mot. at 13-14, Ex. A at 45-46; Ex. B; Ex. C.)[5] Plaintiff's reliance on antitrust case law in the context of price-

---

[5] Plaintiff's assertion that JLL "makes no challenge to this separate category of damages [inflated moving costs]" is false and misleading. (Opp. at 15.) JLL argues in its Motion to Dismiss that Plaintiff's purported

fixing is mislaid and in no way supports Plaintiff's statement that "WDES has been injured by JLL's direct actions—the imposition of an illegal union-only policy over its tenants—that caused the increased price for the union labor tenant allowance, which WDES had to repay as rent." (Opp. at 14-15.) Because Plaintiff cannot directly link its alleged injury (i.e., the increased money it paid for union labor) to JLL, it does not have standing to bring these claims.

Plaintiff likewise does not have standing to assert claims against JLL because a decision in Plaintiff's favor will not redress its purported injury. The monetary damages Plaintiff seeks (i.e., the cost difference between union and non-union labor) are only recoverable from either the Landlord or the unions, as JLL received no money from Plaintiff. Indeed, the Complaint fails even to allege Plaintiff paid any amount to JLL at any time. Plaintiff's reliance on antitrust case law to contend that "even if JLL is not a party to the lease, it can be sued for fixing the price of a component of the cost of the lease" has no merit because the Complaint contains no allegations of antitrust violations and/or price fixing allegations, and the cases do nothing to support the basis of Plaintiff's standing to bring *RICO* claims against JLL. (Opp. at 14.) Further, Plaintiff's statement that it had to repay as rent "the increased price for the union labor tenant allowance" (Opp. at 15) clearly demonstrates that the money Plaintiff seeks is only recoverable from the Landlord, who received additional money for rent from Plaintiff because of the Landlord's union-only rule, or from the union contractors, who charged Plaintiff a higher price for their labor compared to their non-union counterparts. Because a decision in Plaintiff's favor will not redress Plaintiff's alleged monetary injuries, Plaintiff does not have standing to bring its RICO claims against JLL.

Finally, Plaintiff does not refute JLL's argument that Plaintiff, as a former tenant of the

---

injury, the inflated costs of union labor (which includes the inflated cost for union movers), is a result of Plaintiff's own actions in entering into a lease with the Landlord that requires Plaintiff to abide by the Landlord's union-only rule. (Mot. at 14.)

Building, lacks standing to seek injunctive relief. (Mot. at 15.) Plaintiff thereby concedes that it does not have standing to seek injunctive relief against JLL.

## CONCLUSION

For the foregoing reasons, JLL respectfully requests that this Court grant JLL's Motion to Dismiss the Complaint with prejudice for failure to state a claim and/or for lack of subject-matter jurisdiction.

Respectfully submitted,

JONES LANG LASALLE AMERICAS (ILLINOIS), LP

*/s/ Scott T. Schutte*
        One of Its Attorneys

Philip A. Miscimarra
Scott T. Schutte
Stephanie L. Sweitzer
Kevin F. Gaffney
Heather J. Nelson
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
philip.miscimarra@moganlewis.com
scott.schutte@morganlewis.com
stephanie.sweitzer@morganlewis.com
kevin.gaffney@morganlewis.com
heather.nelson@morganlewis.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on the 10th day of December 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Plaintiff:

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Howard W. Foster
Matthew A. Galin
FOSTER PC
150 N. Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.726.1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: +1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

/s/ Scott T. Schutte
Scott T. Schutte