THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

WACKER DRIVE EXECUTIVE SUITES,
LLC, on behalf of itself, individually, and on
behalf of all others similarly situated,

                    Plaintiff,

        v.

JONES LANG LASALLE AMERICAS
(ILLINOIS), LP,

                  Defendant.

Case No. 1:18-cv-5492

Magistrate Judge Sunil R. Harjani

**JOINT INITIAL STATUS REPORT AND COMPETING DISCOVERY PROPOSALS**

1.     **Description of Claims and Relief Sought.**

    A.     **Describe the claims and defenses raised by the pleadings, including the basis for federal jurisdiction.**

Plaintiff, individually and on behalf of all other tenants and subtenants in Defendant's Chicago Loop commercial buildings who incurred moving expenses or hired contractors to make improvements in their properties in the past four years, brings claims as a Class Action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff claims in its individual capacity and on behalf of the putative class that Defendant violated 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) by allowing three labor unions to restrict access to its building by any non-union contractors. Plaintiff believes such an agreement between the unions and Defendant violates the National Labor Relations Act, 29 U.S.C. §158(e) as a type of "unfair labor practice," a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized ("hot cargo agreement"). Plaintiff further believes these actions violate 18 U.S.C. §1951 (The Hobbs Act), as Defendant denied access into its buildings and loading docks for non-union movers, tradesmen and contractors, effectively barring Plaintiff from using their services. Plaintiff

also alleges violations of 29 U.S.C. §186(a). These are alleged acts of racketeering pursuant to 18 U.S.C. §§1961(1)(B) and (C).

Defendant moved to dismiss Plaintiff's complaint on two grounds. *See* Dkt. 31. First, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant asserted Plaintiff's complaint fails to state a claim upon which relief can be granted under RICO, based on its belief that Plaintiff has not and cannot adequately allege (1) the predicate violations of other statutes necessary to sustain its RICO claims and (2) that Defendant conducted the affairs of the alleged RICO enterprise. Second, pursuant to Rule 12(b)(1), Defendant asserted Plaintiff's complaint lacks subject-matter jurisdiction, because Plaintiff does not have Article III standing to assert its claims. Defendant contended Plaintiff's purported injury is not fairly traceable to the alleged actions of Defendant nor redressable by a decision in Plaintiff's favor. These grounds are detailed in Defendant's briefing in support of the Motion to Dismiss. *See* Dkt. 32, 41, 45, 53. Defendant also answered Plaintiff's complaint and asserted affirmative defenses on June 11, 2019. *See* Dkt. 56.

On May 28, 2019, the Court denied the Motion to Dismiss on the grounds that "a number of JLL's arguments in its motion to dismiss involve fact-based inquiries that cannot be resolved in a Rule 12(b)(6) proceeding." (Dkt. 55 at 5). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) on the basis of federal question jurisdiction, as both Counts of the complaint assert violations of RICO, 18 U.S.C. § 1961, *et seq*.

### B. State the relief sought, including an itemization of damages.

Plaintiff alleges it was damaged by being required to pay significantly above comparable market rates for construction and moving services because of Defendant's requirement and agreement with the three labor unions that Plaintiff and class members only use more expensive union services for moving and construction. Pursuant to 18 U.S.C. §1964(c), Plaintiff seeks treble damages, attorney's fees, costs, and pre-judgment interest. Plaintiff also seeks a preliminary and

2

permanent injunction prohibiting Defendant from continuing to enforce its union-only policy. Additionally, Plaintiff seeks class certification pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2) and (b)(3).

The individual Plaintiff seeks damages under 18 U.S.C. §1964(c) for estimated overcharges exceeding $46,000.00, along with treble damages, reasonable attorneys' fees and costs, and pre-judgment interest. Plaintiff is unable to provide a precise itemization of class wide damages until the completion of discovery. However, Plaintiff seeks similar damages on behalf of all tenants in JLL Chicago Loop buildings who either contracted for work in their space and/or moved at any time in the past four years (from the date of the filing of the complaint).

**2.      Referral Cases.**

On October 18, 2018, in accordance with the provisions of 28 U.S.C. § 636(c), the parties voluntarily consented to have Magistrate Judge Sheila M. Finnegan conduct any and all further proceedings in this case, including trial, and order the entry of a final judgment. *See* Dkt. 28. On January 10, 2019, an Executive Committee Order reassigned this matter to Magistrate Judge Sunil R. Harjani for all further proceedings. *See* Dkt. 47.

**3.      Discovery Schedule.**

No discovery cut-off dates have been set yet.

**A.      Mandatory Initial Discovery Pilot Project.**

i.      The parties' mandatory initial discovery responses were due July 11, 2019. *See* Dkt. 54. Plaintiff served its responses on July 10, 2019, and Defendant served its responses on July 11, 2019. *See* Dkt. 58, 59.

ii.      Plaintiff must produce electronically stored information ("ESI") by August 19, 2019. Defendant must produce ESI by August 20, 2019.

iii.    The parties propose to issue additional written discovery, as set forth in Section 3.C. below.

**B.    The Parties' Bifurcated Discovery Proposals.**

While the parties agree that bifurcating the discovery and determination of merits and Rule 23 class certification issues into two separate phases is a prudent approach, they disagree as to (i) whether merits or class certification issues should be addressed first in Phase I; and (ii) whether they should make a preliminary attempt to delineate the topics that constitute the merits or class certification issues.  Set forth below are the parties' competing proposals.

*WDES's Proposal*:

WDES proposes that class certification issues be addressed in Phase I and merits issues be addressed in Phase II.  There is no Seventh Circuit decision condoning a premature, "merits first" approach proposed by JLL, and the majority of courts in this District have rejected it.  *See, e.g., Quinn v. Specialized Loan Servicing, LLC*, 321 F.R.D. 324, 326–27 (N.D. Ill. 2017) (no right to engage in precertification discovery on the merits before the court addresses issues of class certification).  And such an approach is inconsistent both with the rule that merits-inquiries are not the focus of the class certification inquiry and that attempting to secure a dispositive ruling on the merits before a ruling on certification is improper.  *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 464-466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir.2008) ("[T]he plaintiff, as well as the district judge, put the cart before the horse, by moving for class certification after moving for summary judgment.").

4

Further, for many reasons, including the complexity, unique nature of this action and need for flexibility, WDES does not believe the parties should, at this early stage, attempt to rigidly delineate the specific topics and sub-topics which purport to go solely to class certification issues and those which go solely to the merits, as JLL suggests. As the parties cannot agree on the characterization or these topics, whether they are comprehensive, or whether they can easily be placed into "certification-only" and "merits-only" buckets, WDES believes any such effort is inefficient, counterproductive and will only create unnecessary discovery disputes for the court to resolve. To the extent any discreet discovery disagreements arise in the future, WDES anticipates resolving them in the usual course under Rule 37.

*JLL's Proposal*:

JLL proposes that merits discovery as to WDES-specific claims be addressed in Phase I and class certification be addressed in Phase II. Specifically, the first phase of discovery will be limited to all WDES-specific claims and any defenses JLL may have against WDES-specific claims. Complaint, Dkt. 1 at ¶¶1-40, 50-71. The second phase of discovery, if needed, will be limited to Plaintiff's class allegations as they relate to all tenants in the Chicago Loop office buildings managed by JLL. *Id*. at 41-49.

Contrary to WDES's suggestion, this Court has broad discretion to order that the parties address merits issues before class certification issues—particularly where, as here, that would prevent "undue burden" and "secure the just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P 1, 26(c) and (d); *see also Mitchell v. JCG Indus.,* 929 F. Supp. 2d 827, 829 (N.D. Ill. 2013) *aff'd sub nom. Mitchell v. JCG Indus., Inc.,* 745 F.3d 837 (7th Cir. 2014) ("Because a judgment in Defendants' favor likely would preclude class action, the Court has stayed [class certification] proceedings pending the Court's ruling on the motion for partial summary judgment."); *Leon v. El-Milagro, Inc.,* No. 11 CV 4255, 2012 WL 1032890, at *1 (N.D. Ill. March

5

23, 2012) (staying briefing on plaintiff's class certification motion pending motions for summary judgment).

Considering both the allegations in the Complaint and this Court's thorough analysis of the dispositive issues presented by JLL's Motion to Dismiss (Dkt. 55), JLL proposes at this time that the following topics constitute the merits or class certification issues in this matter. If, as this matter progresses, either party has good cause to believe that any topic should be added to, deleted from, or clarified under either of the Phases delineated below, the parties should meet and confer in good faith to amend this discovery plan accordingly. This is the very sort of "flexibility" WDES claims to want; its characterization of JLL's approach as "rigidly delineat[ing]" topics is simply wrong.

Indeed, both parties share with the Court the obligation "to secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. JLL's proposal attempts to do just that—specifically because of the "complexity [and] unique nature of this action." Notably absent from WDES's justification for its free-ranging proposal is any explanation for how it could be "counterproductive" to use its allegations and the Court's 33-page analysis of those allegations to chart a path forward. Nor does WDES provide any reason why it "cannot agree on the characterization of these topics." Rather, it is simply refusing to attempt to identify "the subjects on which discovery may be needed," which is not an option under the Federal Rules. Fed. R. Civ. P. 26(f)(3)(B).

        i.      **Phase I: Merits Discovery as to WDES**

- WDES' Constitutional Standing:
  - Whether WDES' injury is fairly traceable to JLL's alleged conduct:
    - The genesis of 125 S. Wacker's Building Rules, and specifically, the genesis of the "union-only" rule.

- ▪ The Landlord of 125 S. Wacker's contractual relationship with JLL.

- ▪ The Landlord of 125 S. Wacker's tenancy relationship with WDES.

- ▪ JLL's role as manager of 125 S. Wacker.

- ▪ Whether JLL played a role in increasing labor and moving costs by enforcing the Landlord's union-only rule.

- o Whether WDES' injury can be redressed by a favorable decision:

- ▪ The source of monetary damages WDES is seeking.

- ▪ The terms of WDES's tenant improvement allowance.

- ▪ The recoverability of monetary damages WDES is seeking from the Landlord of 125 S. Wacker.

- ▪ Whether WDES can recover monetary damages from JLL related to the tenant improvement allowance and terms of the lease.

- • Hobbs Act as to WDES:

- o Hot Cargo Agreement:

- ▪ Whether an alleged unwritten or implied agreement to cease tenants' business with non-union third parties exists between JLL and the Unions[1]:

- • Whether JLL has communicated to the Unions have that it prohibits tenants from doing business with non-union-third parties at 125 S. Wacker.

---

[1] The "Unions" are defined in the Complaint as International Union of Operating Engineers Local 399 (representing engineers), Service Employees, Service International Union Local 1 (representing janitors), and Teamsters Local 705 (representing movers) (together, the "Unions"). Compl. ¶¶11-13.

- Whether the Unions have communicated to JLL that they prohibit tenants from doing business with non-union-third parties at 125 S. Wacker.

- Whether JLL has communicated to tenants, either through statements or actions, that they must cease doing business with non-union third parties at 125 S. Wacker.

- Whether JLL has communicated to contractors or subcontractors, either through statements or actions, that they are not allowed at 125 S. Wacker because their employees are not represented by a union.

- Whether a written agreement exists between JLL and the Unions to cease tenants' business with non-union third parties.

■ Whether an alleged agreement between JLL and the Unions to cease doing business with non-union third parties was voluntarily entered into by JLL:

- Whether Unions threatened, coerced, harassed, or picketed JLL at 125 S. Wacker if non-union contractors entered building.

- Any communications between JLL and Unions where Unions threatened or harassed JLL.

- The history of JLL and the Unions' relationship.

■ Whether an alleged agreement between JLL and the Unions to cease doing business with non-union third parties arose in the context of a collective-bargaining relationship:

- The terms, conditions, and effects of BOMA agreements with Unions where 125 S. Wacker is a signatory.

- Whether the construction proviso exception to Section 8(e) applies to JLL in the context of work performed at WDES' request at 125 S. Wacker:
  - All construction and work performed at WDES during Plaintiff's tenancy at 125 S. Wacker.
  - Whether the work performed at WDES by contractors or subcontractors of JLL involves the structure of the building such as construction, alterations, painting, plumbing, installations, or repairs.
  - The level of supervision, involvement, and control JLL exercised over the jobsite and labor relations of contractors and/or subcontractors performing work at WDES during Plaintiff's tenancy at 125 S. Wacker.
  - Any rules or procedures JLL imposed on contractors or subcontractors performing work at WDES during Plaintiff's tenancy at 125 S. Wacker.
  - Any communications between JLL and contractors or subcontractors performing work at WDES during Plaintiff's tenancy at 125 S. Wacker.
  - Any communications between WDES and contractors or subcontractors performing work at WDES during Plaintiff's tenancy at 125 S. Wacker.
- Extortion:
  - Whether JLL "extorted" WDES under the Hobbs Act.
    - Whether JLL directed WDES to use specific unions to perform construction work.
    - Whether JLL received any benefit by enforcing union-only rule.
    - Whether Landlord of 125 S. Wacker received any benefit from union-only rule.

9

- WDES's selection of certain union contractors and subcontractors to perform construction work at 125 S. Wacker.

- The nature of WDES's business.

- The genesis of WDES's economic fear.

- Labor Management Relations Act:
  - Whether the union labor rates charged to WDES were above the prevailing market rate for union labor.

- "Conducted" the affairs of a RICO enterprise:
  - JLL's role as building manager of 125 S. Wacker.

  - Whether JLL exercised control over the affairs of the alleged RICO enterprise at 125 S. Wacker.

  - Whether JLL was acting at the behest of Unions and conducting the affairs of the RICO enterprise, rather than its own affairs.

  - Whether JLL and the Unions were in regular communication regarding ceasing non-union workers from entering 125 S. Wacker.

  - Whether JLL and the Unions worked together to pursue actions in furtherance of RICO enterprise.

  - Whether JLL took specific actions to advance the union's interest beyond enforcing the Building's union-only rule.

  - Whether the Unions involved themselves in JLL's affairs.

    ii. **Phase II: Class Discovery**

- WDES' Standing as to Injunctive Relief:
  - Whether WDES can fairly and adequately represent putative injunctive class when WDES is no longer tenant of 125 S. Wacker.

- Hobbs Act as to Putative Class:

  o Hot Cargo Agreement:

    ▪ Whether union-only rule exists in the putative class members' buildings.

    ▪ Whether any written or oral agreement exists between JLL and the Unions that applies to all putative class members' buildings.

      • Whether JLL has communicated to the Unions have that it prohibits tenants from doing business with non-union-third parties at all putative class members' buildings.

      • Whether JLL has communicated to tenants, either through statements or actions, that they must cease doing business with non-union third parties at all putative class members' buildings.

      • Whether Unions threatened, coerced, harassed, or picketed JLL at putative class members' buildings if non-union contractors entered building.

    ▪ Whether construction proviso exception to Section 8(e) applies to JLL in the context of entire putative class.

      • Whether JLL exercises control over the jobsite and labor relations of contractors or subcontractors who perform work at all buildings in the putative class.

      • Whether the work performed at all buildings in putative class by contractors or subcontractors of JLL involves the structure of the building such as construction, alterations, painting, plumbing, installations, or repairs.

- ▪ Whether putative class members' buildings are signatories to BOMA agreements.

   o Extortion:

   - ▪ Whether JLL has a list of union contractors and subcontractors it requires putative class members to use.

   - ▪ The nature of the putative class members' businesses.

   - ▪ Whether putative class members experienced fear of economic loss because of the union-only rule.

- Labor Management Relations Act:

   o Whether putative class members in JLL buildings would hire union workers regardless of enforcement of union-only rule.

   o Whether the union labor rates charged to putative class members are above the prevailing market rate for union work.

- "Conducted" the affairs of a RICO enterprise:

   o Whether JLL exercised control over the affairs of the alleged RICO enterprise.

   **C.      The Parties' Proposed Discovery Plans.**

The parties propose similar deadlines for Phase I discovery and motions, but disagree as to the substance of those deadlines according to their competing proposals for the appropriate bifurcation approach here (*see* Sec. III.B, *supra*).  The parties further agree that deadlines for Phase II discovery and motions (if necessary) should be set after Phase I motions are decided:

*WDES's Proposal*:

| Event | WDES's Proposed Deadline |
|---|---|
| Deadline to propound all written discovery related to Phase I of discovery (including | February 28, 2020 |

12

| | |
|---|---|
| interrogatories, requests for production, and requests for admission) | |
| Deadline to complete all Phase I fact discovery | March 30, 2020 |
| Plaintiffs' deadline to disclose expert witness(es) for Phase I | April 15, 2020 |
| Defendant's deadline to disclose expert witness(es) on Phase I | May 15, 2020 |
| Deadline to complete all expert discovery related to Phase I | June 19, 2020 |
| Deadline for Plaintiff to file a class certification motion | July 20, 2020 |
| Deadline for Defendant to oppose a class certification motion | August 19, 2020 |
| Deadline for Plaintiff to file a reply in support of class certification motion | September 2, 2020 |

WDES requests that the Court schedule a status hearing to occur after the resolution of any motion for class certification to set deadlines for Phase II merits discovery and motion briefing.

*JLL's Proposal*:

| Event | JLL's Proposed Deadline |
|---|---|
| Deadline to propound all written discovery related to Phase I of discovery (including interrogatories, requests for production, and requests for admission) | February 28, 2020 |
| Deadline to complete all Phase I fact discovery | March 30, 2020 |
| Plaintiffs' deadline to disclose expert witness(es) for Phase I | April 15, 2020 |
| Defendant's deadline to disclose expert witness(es) on Phase I | May 15, 2020 |
| Deadline to complete all expert discovery related to Phase I | June 19, 2020 |
| Deadline for parties to file dispositive motions | July 20, 2020 |
| Deadline for parties to respond to dispositive motions | August 19, 2020 |
| Deadline for parties to file a reply in support of dispositive motions | September 2, 2020 |

The Court's ruling on a motion for summary judgment on the merits of Plaintiff's claims filed by either party will determine whether, and if so, how this lawsuit proceeds. An order granting

Defendant's anticipated motion for summary judgment will obviate the need for Phase II class discovery and briefing on class certification. Thus, JLL requests that the Court schedule a status hearing to occur after the resolution of any motion for summary judgment, if necessary, to set deadlines for Phase II class discovery and motion briefing.

4.  **Consideration of Issues Concerning ESI.**

The parties anticipate discovery of ESI. At this time, the parties are not aware of any disagreements regarding disclosure or discovery of ESI, but will meet and confer regarding any such issues as soon as practicable in accordance with the Seventh Circuit Electronic Discovery Committee's Principles Relating to the Discovery of Electronically Stored Information.

The parties intend to file a stipulation for entry of a proposed order governing the production of ESI and treatment of confidential information on or before August 13, 2019. The proposed order will address the parties' agreement on the procedure for addressing the inadvertent disclosure of any material that would be protected from disclosure pursuant to the attorney-client privilege, the work product doctrine, or any other relevant privilege or doctrine.

5.  **Settlement.**

A.  **Describe the status of settlement discussions.**

The parties have discussed the possibility of settlement, but do not believe further discussions would be productive at this time. The parties will continue to explore the possibility of settlement as discovery proceeds.

B.  **State whether the parties believe that a settlement conference would be productive at this time, and if not, briefly explain why.**

The parties do not believe that a settlement conference would be productive at this time, but may request one at a later date.

6.  **Magistrate Judge Consent.**

The parties consent to have Judge Harjani conduct all further proceedings in this case,

14

including trial and entry of final judgment, in accordance with 28 U.S.C. § 636(c) and Federal

Rule of Civil Procedure 73.

**7.**   **Pending Motions.**

No pending motions are before the Court.

**8.**   **Trial.**

Plaintiff and Defendant request a jury trial.  *See* Dkt. 1 ¶¶ 61, 70; Dkt. 56 at 21.  The date

when the parties expect to be ready for trial and the probable length of trial cannot be determined

until the Court rules on any motion(s) regarding class certification.

**9.**   **Other Matters.**

The parties are not aware of other matters that should be brought to the Court's attention

for scheduling purposes.


Dated:  July 19, 2019                                  Respectfully submitted,


WACKER DRIVE EXECUTIVE SUITES,        JONES LANG LASALLE AMERICAS
LLC                                                                (ILLINOIS), LP

*/s/ James B. Zouras*                                   */s/ Kevin F. Gaffney*
     One of Its Attorneys                                    One of Its Attorneys

Ryan F. Stephan                                          Philip A. Miscimarra
James B. Zouras                                          Scott T. Schutte
STEPHAN ZOURAS, LLP                             Stephanie L. Sweitzer
100 North Riverside Plaza, Suite 2150        Kevin F. Gaffney
Chicago, Illinois 60601                              Heather J. Nelson
Tel: 312.233.1550                                      MORGAN, LEWIS & BOCKIUS LLP
Fax: 312.233.1560                                     77 West Wacker Drive
rstephan@stephanzouras.com                   5th Floor
jzouras@stephanzouras.com                     Chicago, IL 60601
                                                               Tel: 312.324.1000
Howard W. Foster                                     Fax: 312.324.1001
Matthew A. Galin                                      philip.miscimarra@morganlewis.com
FOSTER PC                                               scott.schutte@morganlewis.com
150 N. Wacker Drive, Suite 2150               stephanie.sweitzer@morganlewis.com
Chicago, Illinois 60606                              kevin.gaffney@morganlewis.com
Tel: 1.312.726.1600                                   heather.nelson@morganlewis.com

hfoster@fosterpc.com
mgalin@fosterpc.com                                    *Attorneys for Defendant*

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: 1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 19th day of July 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Plaintiff:

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60601
Tel: 1.312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Howard W. Foster
Matthew A. Galin
FOSTER PC
150 N. Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.726.1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: +1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

*/s/ Kevin F. Gaffney*