THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>JONES LANG LASALLE AMERICAS (ILLINOIS), LP,<br><br>     Defendant. | Case No. 1:18-cv-5492<br><br>Magistrate Judge Sunil R. Harjani<br><br>Jury Trial Demand |

**DEFENDANT'S ANSWER AND DEFENSES
TO PLAINTIFF'S CLASS ACTION FIRST AMENDED COMPLAINT**

Defendant Jones Lang LaSalle Americas (Illinois), LP ("Defendant" or "JLL"), by and through its attorneys, answers Plaintiff Wacker Drive Executive Suites, LLC's ("Plaintiff" or "WDES") Class Action First Amended Complaint as follows:

**Summary of the Case**[1]

**1.** **This is a RICO class action brought by the tenants in the Chicago Loop office buildings managed by JLL for conspiring with the labor unions representing its employees to force its tenants to hire union only contractors (particularly movers and the building trades such as electricians, painters and carpet installers).**

**ANSWER:** Defendant admits that Plaintiff purports to bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of itself and a purported class as described in Paragraph 1. Defendant denies that certification of a class action is appropriate and denies the remaining allegations in Paragraph 1 of the Complaint.

---

[1] Plaintiff's Complaint contains several headings and sub-headings. Defendant reproduces those headings and sub-headings herein for clarity only, and does not consider them to assert substantive allegations to which a response is required. However, to the extent a responsive pleading is required, Defendant denies any and all allegations within any such heading or sub-heading.

**2. The result is that JLL's tenants must pay for above-market price unionized labor. These tenants have suffered damages from this ongoing conspiracy.**

ANSWER: Defendant denies the allegations in Paragraph 2 of the Complaint.

**3. The conspiracy is an illegal "hot cargo" agreement carried out by JLL at all of its Chicago loop locations in response to union demands. And by requiring tenants of the buildings it manages to use unionized labor, JLL is compounding the hot cargo agreement with violations of the Hobbs Act, a type of racketeering activity.**

ANSWER: Defendant denies the allegations in Paragraph 3 of the Complaint.

## Parties, Jurisdiction and Venue

**4. Plaintiff Wacker Drive Executive Suites, LLC is an Illinois limited liability corporation.**

ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 of the Complaint.

**5. Defendant JLL is an Illinois limited partnership.**

ANSWER: Defendant admits the allegations in Paragraph 5 of the Complaint.

**6. The Court has federal question jurisdiction pursuant to 18 U.S.C. §1964(c), the civil RICO cause of action, and 28 U.S.C. §1332, as a federal question.**

ANSWER: Defendant admits that this Court has jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. Defendant denies the remaining allegations in Paragraph 6 of the Complaint.

**7. Venue is proper here as JLL conducts business in this district and the relevant transactions occurred here.**

ANSWER: Defendant admits that JLL conducts business in this District and, therefore, that venue is proper in this District. Defendant denies the remaining allegations in Paragraph 7 of the Complaint.

## The Chicago Loop Commercial Office Rental Market

**8. The Chicago Loop is the second largest urban downtown in the country with approximately 107 million square feet of competitive office space and home to 294,000**

2

**private sector jobs, 45% of the Chicago area total. It is one of the City's 77 designated community areas.**

**FN 1: http://loopchicago.com/_files/docs/economicprofile_2013.pdf[2]**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint.

**9. Geographically, it is bounded on the east by Michigan Avenue, on the north and west by the Chicago River and on the south by Congress Parkway. Its commercial real estate market is strong with a 94% occupancy rate.**

**ANSWER:** Defendant admits only that Plaintiff purports to define the "Chicago Loop" as an area bounded on the east by Michigan Avenue, on the north and west by the Chicago River, and on the south by Congress Parkway. Defendant lacks knowledge or information sufficient to form a belief as to the allegations regarding the Chicago Loop's commercial real estate market and occupancy rate. Defendant denies the remaining allegations in Paragraph 9 of the Complaint.

**10. JLL manages numerous large commercial office buildings in the Chicago Loop. Its management responsibility includes setting rules for building access by contractors.**

**ANSWER:** Defendant admits that it manages certain office buildings within the Chicago Loop on behalf of the owners and/or landlords of those buildings. Defendant denies the remaining allegations in Paragraph 10 of the Complaint.

**JLL's Violation of Labor Law:**

**11. Since at least 2014 JLL has allowed three labor unions to restrict access to its buildings by any non-union contractors: The International Union of Operating Engineers Local 399, AFL- CIO, Service Employees International Union, Local 1, and Teamsters Local 705 ("the three unions" collectively).**

**ANSWER:** Defendant denies the allegations in Paragraph 11 of the Complaint.

---

[2] Paragraph 8 contains a footnote. Defendant has responded to this footnote as part of the Answer to Paragraph 8. Defendant has likewise responded to the other footnotes in Plaintiff's Complaint as part of the Answer to the corresponding Paragraph for each footnote.

**12.** The first two of these unions have collective bargaining agreements (CBAs) with JLL governing the terms of employment of its engineers and janitors. But those CBA's do not, and cannot legally, prohibit JLL from denying its tenants the right to have non-union laborers access their office spaces. (Local 705 represents movers, which every tenant needs to move in and out of their suites, an expensive undertaking. It does not have a CBA with JLL but successfully pressures JLL to forbid non-union movers from accessing its buildings).

**ANSWER:** Defendant admits that it does not have a CBA with Local 705. Defendant denies the remaining allegations in Paragraph 12 of the Complaint.

**13.** The conspiracy between the three unions and JLL is unwritten, like all illegal agreements. It violates the National Labor Relations Act (NLRA), 29 U.S.C. §158(e) as a type of "unfair labor practice" commonly referred to as a "hot cargo agreement," a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized. It also similarly violates 29 U.S.C. §158(b)(4)(ii)(A) and (B).

**ANSWER:** The allegations in the last sentence of Paragraph 13 regarding Defendant's alleged violation of 29 U.S.C. §158(b)(4)(ii)(A) and (B) are the subject of Defendant's Partial Motion to Dismiss and, therefore, no response is required. Defendant admits only that this Paragraph purports to characterize 29 U.S.C. § 158(e) in part. Defendant denies that characterization is accurate, denies that it engaged in any wrongdoing, and further denies the remaining allegations in Paragraph 13 of the Complaint.

**14.** JLL has agreed to impose this restriction on its Loop tenants at the behest of the three unions. The purpose of the hot cargo agreement is to punish non-union contractors and reward union contractors.

**ANSWER:** Defendant denies the allegations in Paragraph 14 of the Complaint.

**15.** These three unions have exerted their power over JLL for years. Their business agents, who operate outside the buildings, and union stewards, who are employees inside, closely monitor all contracting in JLL buildings. If they see a truck near the loading docks without the familiar union decals they spring into action and immediately notify the property manager and demand the non-union contractor/firm be removed. If this is not done, the agents and/or stewards notify their union officials at its local office. They will then call the property manager, demand expulsion and, if necessary, threaten a work stoppage (strike), picketing outside the building which may include the display of a large inflatable rat (sometimes called a "union rat") on or immediately adjacent to JLL's managed property for public shaming.

4

**ANSWER:** Defendant denies the allegations in Paragraph 15 of the Complaint.

**16.** All of these actions are in violation of the CBA's, which forbid strikes, and as stated, the NLRA. Rather than oppose the union's demands, which can be accomplished by obtaining an injunction through the National Labor Relations Board, JLL agrees to their demands, at the considerable expense of its tenants.

**ANSWER:** Defendant denies the allegations in Paragraph 16 of the Complaint.

**17.** JLL zealously enforces this union-only policy through its tenant handbook/rules and the directions to its building managers to keep unapproved non-union contractors out. Before any JLL building employee will permit a contractor into their respective building, they require proof of union membership and must be approved. If the contractor is not approved, it is denied entry into the building.

**ANSWER:** Defendant denies the allegations in Paragraph 17 of the Complaint.

**Plaintiff's Experience With JLL's Restrictions**

**18.** JLL has managed 125 S. Wacker Drive since 2012. WDES was a tenant at the building from August 2005 through December 2017. It leased the entire rentable area of the third floor. In its leased office suite, WDES conducted its primary source of business, leasing shared-full-service-executive office space to people and businesses.

**ANSWER:** Defendant admits that it has managed the building located at 125 S. Wacker Drive since December 2012. Defendant further admits that Plaintiff was a tenant of 125 S. Wacker Drive from August 2005 through December 2017, leased the entire rentable area of the third floor of the building, and in turn leased that rentable area to others. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding Plaintiff's primary source of business. Defendant denies the remaining allegations in Paragraph 18 of the Complaint.

**19.** WDES had a lease with the landlord, which ran through 2028. The lease provided WDES with a construction allowance, a sum of money paid by the landlord to improve its space. Construction allowances are common features in Loop commercial leases. The money is an advance on the rent the tenant will pay in rent. Thus, the allowance is simply the return of some of the money the tenant will be paying. The larger the allowance, the higher the rent.

**ANSWER:** Defendant admits that Plaintiff had a lease with the landlord, TS 125 South Wacker, L.P., the term of which was amended to run through May 31, 2028. Defendant further

5

admits that the lease, as amended, provides that the landlord shall provide the tenant with certain allowances for alterations to the leased area (hereinafter "construction allowances"). Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that construction allowances are a common feature in Chicago Loop commercial leases. Defendant denies the remaining allegations in Paragraph 19 of the Complaint.

20. **The construction allowance was to be disbursed in two phases 2014 and 2017.**

**ANSWER:** Defendant admits that Plaintiff's lease with the landlord, as amended, provides for a first installment construction allowance from the landlord to be disbursed to Plaintiff after August 1, 2013 and a second installment construction allowance from the landlord to be disbursed to Plaintiff after August 1, 2017. Defendant denies the remaining allegations in Paragraph 20 of the Complaint.

**WDES' 2014 Renovations at 125 S. Wacker**

21. **In 2014 WDES was provided a construction allowance of $355,520 to be used to improve the space. It spent $325,000 for construction costs, including improving the ceilings of the common area, new lighting, carpeting, tiling, reconfiguring the kitchen area, and installing cabling.**

**ANSWER:** Defendant admits that the maximum amount of Plaintiff's first installment construction allowance was $355,520, per Plaintiff's lease with the landlord, as amended. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 of the Complaint.

22. **JLL did not permit WDES to use the contractors it wanted to use, which were less expensive and non-union. JLL told WDES that if non-union contractors showed up at the building, they would not be allowed on the freight elevator.**

**ANSWER:** Defendant denies the allegations in Paragraph 22 of the Complaint.

23. **A**ccordingly, **WDES accepted a union- afflicted general contractor, which hired unionized sub-contractors.**

6

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the Complaint.

**24. The work was completed in late 2014, and WDES paid in November 2014 from the construction allowances, i.e. WDES actually paid for the union labor.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Complaint.

### WDES' 2017 Renovations

**25. In 2017 WDES received the second construction allowance from the landlord, $266,000, and of that, over $45,000 for construction costs. It used that money for modifying the office configurations, upgrading the electrical system, and re-carpeting.**

**ANSWER:** Defendant admits that the maximum amount of Plaintiff's second installment construction allowance was $266,640, per Plaintiff's lease with the landlord, as amended. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 of the Complaint.

**26. Again, JLL forbade WDES from using the cheaper, non-union contractors it wanted to use.**

**ANSWER:** Defendant denies the allegations in Paragraph 26 of the Complaint.

**27. The jobs were completed in September 2017. The invoices for these jobs were paid in September 2017 from WDES' construction allowance, i.e., WDES actually paid for the union labor.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 of the Complaint.

### WDES' Experience Using Movers at 125 S. Wacker

**28. In January 2015, WDES purchased office furnishings and JLL forced it to use union movers to transport them to its space. The cost was $975.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations that in January 2015, Plaintiff purchased office furnishings and that the

7

Case: 1:18-cv-05492 Document #: 80 Filed: 09/20/19 Page 8 of 20 PageID #:652

cost of transporting those furnishings to Plaintiff's space was $975. Defendant denies the remaining allegations in Paragraph 28 of the Complaint.

**The Cost of Union Contractors in the Loo**

**29.** **The difference in cost between union and non-union labor is significant, at least 20% higher for union workers and movers (if not more).**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint.

**30.** **For example, a comparison of hourly wage rates from the U.S. Department of Labor, Bureau of Labor Statistics (BLS) for the Chicago metropolitan area (which includes both union and non-union workers) with the Illinois Department of Labor's prevailing wage rate for Cook County, which measures only union wages, indicates sizeable differences. With respect to the three most common categories of labor used in commercial renovation, the differences are as follows: for carpenters, $32.61 (BLS) versus $46.35 (Cook County prevailing) a 42.1% difference; for electricians, $38.29 versus $47.40—a 23.8% difference; and, for painters, $27.38 versus $51.24—an 87% difference.**

> **FN 2:** *See* **U.S. Dep't of Labor, Bureau of Labor Statistics, May 2016 Occupational Employment Statistics, Chicago- Naperville-Arlington Heights Metropolitan Div.,** *available at* **https://www.bls.gov/oes/current/ oes_16974.htm#47- 0000. The Illinois Prevailing Wage Act, 820 ILCS 130/3** *et seq.***, requires contractors to pay workers on "public works" projects "the general prevailing rate of hourly wages in the locality."** *Id.* **at § 9. The Illinois Department of Labor is required to annually ascertain and publish these prevailing rates for each county in the state.** *Id.* **The 2017 rates for Cook County can be found here: https://www.illinois.gov/idol/Laws-Rules/CONMED/Documents/2017%20Rates/Cook.pdf.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint.

**31.** **As a result, WDES and each putative Class member preferring to use non-union contract labor have been overcharged by a conservative estimate of at least 20% (and likely more). The actual amount will have to be determined by an economist. Those tenants preferring to use union labor have also been overcharged because the labor market for contracting services has been closed to effective competition, meaning union labor is supracompetitively priced, i.e., above the price it would be if the union-only rule were not in place.**

**ANSWER:** Defendant denies the allegations in Paragraph 31 of the Complaint and further denies that a class action is appropriate for Plaintiff's claims.

**The Restriction Violates the Hobbs Act**

32. The "Hot Cargo" conspiracy among the unions and JLL also violates 18 U.S.C. §1951(a), which states, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by...extortion or attempts or conspires so to do ... shall be fined under this title or imprisoned not more than twenty years, or both ....

**ANSWER:** Defendant admits that this Paragraph quotes 18 U.S.C. § 1951(a) in part. Defendant denies that it engaged in any wrongdoing and denies the remaining allegations in Paragraph 32 of the Complaint.

33. Pursuant to §1951(b), extortion means: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

**ANSWER:** Defendant admits only that this Paragraph quotes 18 U.S.C. § 1951(b)(2). Defendant denies the remaining allegations in Paragraph 33 of the Complaint.

34. The extorted property is the money that WDES was required to spend on more expensive union services. JLL's denial of access to non-union movers, tradesmen, and contractors preys on the tenants' fear of lost income that will result if they cannot get their offices spaces worked on by tradesmen. Or to put it another way, unless WDES (and the other tenants) accede to JLL's demands, they will not be able to start or complete their renovations and open for business.

**ANSWER:** Defendant denies the allegations in Paragraph 34 of the Complaint.

35. By refusing to allow tenants to conduct business unless they use union labor, JLL effectively holds hostage the tenants' ability to run their own businesses.

**ANSWER:** Defendant denies the allegations in Paragraph 35 of the Complaint.

36. The use of economic fear here is wrongful because the agreement between JLL and the unions to impose union-only terms on the tenants is an illegal hot cargo policy, violating 29 U.S.C. §158(e) and 29 U.S.C. §158(b)(4)(ii)(A) and (B).

**ANSWER:** The allegations in Paragraph 36 regarding Defendant's alleged violation of 29 U.S.C. §158(b)(4)(ii)(A) and (B) are the subject of Defendant's Partial Motion to Dismiss and, therefore, no response is required. Defendant denies the remaining allegations in Paragraph 36 of the Complaint.

37. **These violations of the Hobbs Act have been occurring continuously at all of JLL's Loop buildings for the past four years (and more). It is JLL's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.**

**ANSWER:** Defendant denies the allegations in Paragraph 37 of the Complaint.

### The Restriction Also Violates The Taft- Hartley Act

38. **JLL's union only restriction also violates 29 U.S.C. § 186(a), which makes it unlawful "for any employer...to pay, lend, or deliver...any money or other thing of value...to any labor organization, or any officer or employee thereof, which represents...any of the employees of such employer."**

**ANSWER:** Defendant admits that this Paragraph quotes 29 U.S.C. § 186(a)(2) in part. Defendant denies that it engaged in any wrongdoing and denies the remaining allegations in Paragraph 38 of the Complaint.

39. **As described above, JLL violates this provision by forcing tenants into signing valuable contracts with union members. This is effectively a kickback by JLL to the unionized contractors who would otherwise not get hired by the tenants.**

**ANSWER:** Defendant denies the allegations in Paragraph 39 of the Complaint.

40. **These violations of the Taft-Hartley Act have been occurring continuously at all of JLL's Loop buildings for the past four years (and more). It is JLL's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.**

**ANSWER:** Defendant denies the allegations in Paragraph 40 of the Complaint.

### Class Allegations

41. **The preceding paragraphs are incorporated herein as though fully set forth below.**

**ANSWER:** Defendant restates and incorporates by reference its answers to Paragraphs 1 through 40 of the Complaint as if fully set forth herein.

**42.    WDES brings this action both on behalf of itself, and as a class action, pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2) and (b)(3), on behalf of a Class defined as:**

> **All individuals and entities who were tenants and subtenants in JLL's Chicago Loop commercial buildings who incurred moving expenses or hired contractors to make improvements in their properties in the past four years.**

**ANSWER:** Defendant admits only that Plaintiff purports to bring this action on behalf of itself and a putative class as described in this Paragraph. Defendant denies that certification of a class action is appropriate and further denies the remaining allegations in Paragraph 42 of the Complaint.

**43.    Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, parent corporations and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.**

**ANSWER:** Defendant admits that Plaintiff purports to reserve the right to amend the definition of the putative class. Defendant further admits that Plaintiff purports to exclude from the putative class all of the following: Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, parent corporations and assigns; governmental entities; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff. Defendant denies that certification of a class action is appropriate and further denies the remaining allegations in Paragraph 43 of the Complaint.

11

**44.** **The Class is so numerous that joinder of all class members is impractical. While the exact number of Class members is unknown to WDES at this time, it believes that there are, at least, thousands their identities and relevant information can be ascertained from JLL's records.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff does not know the exact number of the members of the putative class. Defendant denies the remaining allegations in Paragraph 44 of the Complaint.

**45.** **Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:**

    a.    **Whether JLL engaged in a conspiracy with any and/or all of the three unions to require only approved union contractors/movers be permitted in its loop buildings;**

    b.    **Whether tenants were obliged to use union contractors/movers as a result of the conspiracy;**

    c.    **Whether JLL committed a pattern of violations of 18 U.S.C. §1951 and 18 U.S.C. §186;**

    d.    **Whether JLL's conduct caused injury to the members of the Class and, if so, the amount of damages;**

    e.    **Whether WDES and the other members of the Class are entitled to injunctive relief.**

**ANSWER:** Defendant denies the allegations in Paragraph 45, including subparagraphs (a) through (e), of the Complaint.

**46.** **WDES' claims are typical of the absent Class members. It seeks no relief that is adverse to the absent Class members.**

**ANSWER:** Defendant denies the allegations in Paragraph 46 of the Complaint.

**47.** **WDES will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and RICO litigation. Class counsel will fairly and adequately represent the interests of the class.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that WDES has retained counsel competent and experienced in class action and RICO litigation. Defendant denies the remaining allegations in Paragraph 47 of the Complaint.

**48.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impractical. The prosecution of separate actions by many individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons or entities similarly situated without sacrificing procedural fairness.**

**ANSWER:** Defendant denies the allegations in Paragraph 48 of the Complaint.

**49.  Counsel anticipates no difficulty in the management of this case because the evidence proving the conspiracy is obtainable through discovery. Damages can be determined on a Class- wide basis by an economist from publicly available data and records of the class members, contractors and other third parties.**

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff's counsel anticipates no difficulty in the management of this case. Defendant denies that Plaintiff or a putative class is entitled to any damages, and further denies the remaining allegations in Paragraph 49 of the Complaint.

<u>**COUNT 1:**</u>
<u>**CLAIM AGAINST JLL FOR VIOLATING 18 U.S.C. §1962(c)**</u>

**50.  The preceding paragraphs are incorporated herein as though fully set forth below.**

**ANSWER:** Defendant restates and incorporates by reference its answers to Paragraphs 1 through 49 of the Complaint as if fully set forth herein.

**51.  Defendant JLL is a RICO person pursuant to §1961(3).**

13

**ANSWER:** Defendant admits that it is a "person" as that term is defined under RICO, 18 U.S.C. § 1961(3). Defendant denies that it violated RICO and further denies the remaining allegations in Paragraph 51 of the Complaint.

52. **JLL has committed a pattern of repeated violations of §§1951 and 186 for the past four years (and longer), which are "acts of racketeering" pursuant to 18 U.S.C. §§1961(1)(B) and (C), respectively.**

**ANSWER:** Defendant denies the allegations in Paragraph 52 of the Complaint.

53. **Each instance in which JLL forces its Loop tenants to use union contractors/movers through the economic fear described above is a violation of §1951. Additionally, this is a violation of §186 by virtue of the business it hands to union members.**

**ANSWER:** Defendant denies the allegations in Paragraph 53 of the Complaint.

54. **The RICO enterprise is an association-in-fact enterprise, pursuant to 18 U.S.C. §1961(4), consisting of the three unions and JLL.**

**ANSWER:** Defendant denies the allegations in Paragraph 54 of the Complaint.

55. **This enterprise has a common purpose: to force union-only labor on commercial tenants in buildings managed by JLL in the Chicago Loop. It has been ongoing for years and depends upon the regular communications among the members to carry out its illegal purpose.**

**ANSWER:** Defendant denies the allegations in Paragraph 55 of the Complaint.

56. **To accomplish this goal, as detailed above, the union agents constantly patrol all of JLL buildings and report any non-union contractors to JLL building managers. Additionally, to carry out the objectives of the enterprise, JLL building managers instruct their subordinates in each of its Loop buildings to report any instance of a violation to JLL's building managers.**

**ANSWER:** Defendant denies the allegations in Paragraph 56 of the Complaint.

57. **This relationship has been ongoing for many years.**

**ANSWER:** Defendant denies the allegations in Paragraph 57 of the Complaint.

58. **Therefore, JLL has violated 18 U.S.C §1962(c), which states, in pertinent part:**

> **It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect,**

14

> interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...

**ANSWER:** Defendant admits only that this Paragraph quotes 18 U.S.C. § 1962(c) in part. Defendant denies the remaining allegations in Paragraph 58 of the Complaint.

**59. As a direct and proximate cause of JLL's pattern of racketeering, WDES has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), in the following ways:**

> a. **The 2014 contracting: by payment of an estimated overcharge of $38,761(20% of the total, excluding materials); and**
>
> b. **The 2017 contracting: by payment of an estimated overcharge of $7,144.12 (20% of the total excluding materials); and**
>
> c. **The 2015 move: by payment of an estimated overcharge of $162.53 (20% of the total moving cost incurred).**

**ANSWER:** Defendant denies the allegations in Paragraph 59, including subparagraphs (a) through (c), of the Complaint.

**60. Accordingly, WDES demands judgment be entered against JLL, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. WDES also asks for preliminary and permanent injunctions prohibiting JLL from continuing to enforce the union-only policy.**

**ANSWER:** Defendant admits only that Plaintiff seeks judgment against JLL pursuant to 18 U.S.C. § 1964(c), damages, attorney's fees, costs, interest, and injunctive relief. Defendant denies that it is liable under 18 U.S.C. § 1964(c); denies that Plaintiff is entitled to judgment against JLL, damages, attorney's fees, costs, interests, or injunctive relief; and further denies the remaining allegations in Paragraph 60 of the Complaint.

**61. WDES requests a jury trial.**

**ANSWER:** Defendant admits that Plaintiff requests a jury trial.

**62. WDES requests certification of the case as a class action.**

15

**ANSWER:** Defendant admits only that Plaintiff seeks certification of this case as a class action. Defendant denies that such certification is appropriate.

**<u>COUNT 2:</u>**
**<u>CLAIM AGAINST JLL FOR VIOLATING 18 U.S.C.</u>**
**<u>§1962(d)</u>**

**63.** The preceding paragraphs are incorporated herein as though fully set forth below.

**ANSWER:** Defendant restates and incorporates by reference its answers to Paragraphs 1 through 62 of the Complaint as if fully set forth herein.

**64.** In carrying out the RICO violations, JLL formed an agreement with the three unions to carry out the objectives described above.

**ANSWER:** Defendant denies the allegations in Paragraph 64 of the Complaint.

**65.** This agreement has been ongoing between these entities for at least the last four years, and likely, longer.

**ANSWER:** Defendant denies the allegations in Paragraph 65 of the Complaint.

**66.** 18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection(c) of this section." (internal punctuation omitted).

**ANSWER:** Defendant admits only that this Paragraph purports to quote 18 U.S.C. § 1962(d). Defendant denies that the quotation is accurate and further denies the remaining allegations in Paragraph 66 of the Complaint.

**67.** Therefore, this is an agreement to violate §1962(c), which violates 18 U.S.C. §1962(d).

**ANSWER:** Defendant denies the allegations in Paragraph 67 of the Complaint.

**68.** As a direct and proximate cause of JLL's conspiracy to violate §1962(c), Plaintiff has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), as detailed above.

**ANSWER:** Defendant denies the allegations in Paragraph 68 of the Complaint.

**69. Accordingly, WDES demands judgment be entered against JLL, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. WDES also seeks preliminary and permanent injunctions against JLL from continuing to enforce the union-only policy.**

**ANSWER:** Defendant admits only that Plaintiff seeks judgment against JLL pursuant to 18 U.S.C. § 1964(d), damages, attorney's fees, costs, interest, and injunctive relief. Defendant denies that it is liable under 18 U.S.C. § 1964(d); denies that Plaintiff is entitled to judgment against JLL, damages, attorney's fees, costs, interests, or injunctive relief; and further denies the remaining allegations in Paragraph 69 of the Complaint.

**70. WDES requests a jury trial.**

**ANSWER:** Defendant admits that Plaintiff requests a jury trial.

**71. WDES requests certification of the case as a class action.**

**ANSWER:** Defendant admits only that Plaintiff seeks certification of the case as a class action. Defendant denies that this case is appropriate for a class action.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant JLL, by its attorneys, hereby asserts the following affirmative and other defenses:

1. The Complaint and causes of action alleged therein fail to state claims upon which relief can be granted.

2. Plaintiff is not entitled to certification of this action as a class action because the purported class is not so numerous that joinder of its members is impracticable, questions of law or fact are not common to the class, the claims of Plaintiff are not typical of the claims or defenses of the purported class, the purported representative Plaintiff will not fairly and adequately protect the interest of the class, and the requirements of Fed. R. Civ. P. 23(b) are not met in this case.

3. The claims of and/or relief sought by Plaintiff and/or other members of the putative class are barred, in whole or in part, by their lack of standing.

4. The claims of Plaintiff and/or any other members of the putative class who have executed a waiver or release of claims against Defendant may be barred by that waiver or release of claims.

5. Some or all of Plaintiff's claims and those of the putative class members are barred to the extent they arose outside the applicable statute of limitations and/or by the doctrines of laches, waiver, and/or estoppel.

6. Plaintiff and the putative class members are barred from seeking relief to the extent they have proximately caused, contributed to, or failed to mitigate damages, entitlement to which is expressly denied.

7. Plaintiff's claims for damages are duplicative, and to the extent damages for such claims are duplicative, such claims should be disregarded.

8. The claims of and/or relief sought by Plaintiff and/or other members of the putative class are within the primary jurisdiction vested in the National Labor Relations Board ("NLRB").

9. Defendant reserves the right to assert additional defenses that become known through the course of litigation.

WHEREFORE, Defendant respectfully requests that this Court dismiss the Complaint with prejudice, award Defendant its costs and reasonable attorneys' fees, and award Defendant such other relief as this Court may deem just and appropriate.

## **JURY DEMAND**

JLL respectfully requests a trial by jury.

Dated: September 20, 2019

Respectfully submitted,

JONES LANG LASALLE AMERICAS (ILLINOIS), LP

By: */s/ Scott T. Schutte*
　　One of Its Attorneys

Scott T. Schutte
Philip A. Miscimarra
Stephanie L. Sweitzer
Kevin F. Gaffney
Heather J. Nelson
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
5th Floor
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
scott.schutte@morganlewis.com
philip.miscimarra@moganlewis.com
stephanie.sweitzer@morganlewis.com
kevin.gaffney@morganlewis.com
heather.nelson@morganlewis.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on the 20th of September, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Plaintiff:

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Howard W. Foster
Matthew A. Galin
FOSTER PC
150 N. Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.726.1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: +1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

*/s/ Scott T. Schutte*