THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>JONES LANG LASALLE AMERICAS (ILLINOIS), LP,<br><br>      Defendant. | Case No. 1:18-cv-5492<br><br>Magistrate Judge Sunil R. Harjani<br><br>Jury Trial Demand |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PARTIAL MOTION TO DISMISS**

### I. INTRODUCTION

When confronted with the incongruity of its contention that Defendant Jones Lang LaSalle Americas (Illinois), L.P. ("JLL")—an employer—should be held liable for purported violations of a section of the National Labor Relations Act ("NLRA") directed only at the conduct of unions, Plaintiff concedes the impossibility of making JLL liable for conduct that is illegal only if engaged in by a union. Dkt. 84 at 2. However, in an attempt to shoehorn its theories into Hobbs Act violations, Plaintiff now insists JLL has *conspired* with non-party unions to commit these union violations of the NLRA. *Id.* at 1-2. The Response only further exposes the fundamental flaws in Plaintiff's argument and underscores why these additional theories should be dismissed. Specifically, Plaintiff's new "conspiracy" theories alleging violations of NLRA Section 8(b)(4)(ii)(A) and (B): (1) defy logic and common sense; (2) are plainly lacking in legal merit; and (3) they are directly contradicted by Plaintiff's Section 8(e) allegation. For these reasons, JLL's Partial Motion to Dismiss should be granted.

## II.   ARGUMENT

### A.   Plaintiff's Theories Are Illogical.

Plaintiff's theory that JLL "conspired" with unions to violate Section 8(b)(4)(ii)(A) and (B) defies logic and common sense. Section 8(b)(4)(ii)(A) makes it unlawful for a union to "threaten, coerce, or restrain any person" with an "object" of "forcing or requiring any employer . . . to enter into" a Section 8(e) agreement. *See, e.g.*, *Int'l Bhd. of Teamsters, Local 560 (Cnty. Concrete Corp.)*, 362 NLRB No. 183 (Aug. 26, 2015) (union violated Section 8(b)(4)(ii)(A) by sending a letter to signatory contractors threatening enforcement of a contractual provision requiring the use of union drivers for deliveries). Throughout the present litigation, Plaintiff has maintained that the unions and JLL have entered into an unlawful hot cargo agreement precluding tenants from using non-union labor. Dkt. 76 ¶¶ 13-14. By now alleging JLL "conspired" with the unions in violation of Section 8(b)(4)(ii)(A), Plaintiff makes the nonsensical argument that JLL attempted to "threaten, coerce, restrain" or "forc[e]" *itself* into entering into an unlawful hot cargo agreement. This claim is self-defeating: because Plaintiff alleges JLL conspired or agreed with unions to do something that (Plaintiff claims) *was desired by JLL*, it is impossible to conclude that JLL was "threaten[ed]," "coerce[d]," "restrain[ed]," "forc[ed]" or "requir[ed]" to take the action in question. In other words, Plaintiff's "conspiracy" argument—asserted in an effort to salvage Plaintiff's Section 8(b)(4)(A) and (B) claims—renders those claims meritless.

Plaintiff's argument that JLL "conspired" with the unions to violate Section 8(b)(4)(ii)(B) of the Act is similarly absurd. This section makes it unlawful for a union to "threaten, coerce, or restrain any person" (*i.e.*, under Plaintiff's theory, JLL) with an "object" of "forcing or requiring any person . . . to cease doing business with any *other* person" (*i.e.*, nonunion contractors and their clients). *Id.* (emphasis added). Under Section 8(b)(4)(ii)(B), when a union has a *primary* dispute

2

with nonunion contractors and their clients, it is unlawful for the union to "threaten, coerce or restrain" a neutral *secondary* party like JLL with the "object" of "forcing or requiring" JLL to pressure or boycott the *primary* parties (*i.e.*, nonunion contractors and their clients). As the Supreme Court has explained, in Section 8(b)(4)(ii)(B) "Congress intended to protect *secondary* parties from pressures that might *embroil them in the labor disputes of others*." *NLRB v. Retail Store Emps. Union Local 1001*, 447 U.S. 607, 612 (1980) (emphasis added).

Once again, Plaintiff's "conspiracy" theory rests on the nonsensical claim that JLL—a secondary party having no primary dispute with the unions—has conspired with the unions "to threaten, coerce, or restrain" *itself* with the object of "forcing or requiring" *itself* to boycott nonunion contractors and clients (with which the unions have their *primary* dispute). Not only does such a claim defy logic and common sense, it is directly contradicted by Plaintiff's claim under NLRA Section 8(e), which alleges JLL and the unions entered into an "agreement" prohibiting the use of nonunion contractors.[1] To the extent JLL agreed, conspired or otherwise coordinated *voluntarily* with unions to favor represented contractors and their employees, this precludes any finding that JLL was unlawfully "threaten[ed]," "coerce[d]," "restrain[ed]," "forc[ed]" and/or "requir[ed]" to take such action within the meaning of NLRA Section 8(b)(4)(B).

### B. Plaintiff's Theories Plainly Lack Legal Merit.

Not only do Plaintiff's Section 8(b)(4) claims fail the test of logic and common sense, the Supreme Court has specifically held the requirements of Section 8(b)(4) are not satisfied, as a matter of law, when an employer *voluntarily* agrees or coordinates with unions regarding the

---

[1] Section 8(e) of the NLRA makes it unlawful for a union and employer "to enter into any *contract or agreement*, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or cease doing business with any other person. . . ." 29 U.S.C. § 158(e) (emphasis added).

3

boycott of nonunion goods or services. In *Local 1976, United Brotherhood of Carpenters and Joiners of America v. NLRB*, 357 U.S. 93 (1958), the Supreme Court held that—in the absence of a strike or other union-induced employee refusal-to-work—an employer's *voluntary* agreement to boycott certain goods or services meant, as a matter of law, that the employer had *not* been unlawfully "forc[ed] or requir[ed]" to engage in a boycott within the meaning of Section 8(b)(4). The Supreme Court's reasoning has equal application in the instant case:

> [Section 8(b)(4)] describes and condemns specific union conduct directed to specific objectives. . . . *A boycott voluntarily engaged in by a secondary employer for his own business reasons, perhaps because the unionization of other employers will protect his competitive position or because he identifies his own interests with those of his employees and their union, is not covered by the statute*. Likewise, a union is free to approach an employer to persuade him to engage in a boycott so long as it refrains from the specifically prohibited means of coercion through inducement of employees.

*Id.* at 98-99 (emphasis added).[2]

Again, for the reasons set forth in JLL's Memorandum in Support of its Partial Motion to Dismiss and as explained above, Plaintiff's Section 8(b)(4)(ii)(A) and (B) theories fail as a matter of law because Plaintiff seeks to hold JLL liable for conduct that is illegal only if engaged in by a *union*. Just like a party cannot be found to have engaged in tortious interference with contractual

---

[2] In *Carpenters*, the only NLRA provision dealing with secondary boycotts was then-existing Section 8(b)(4)(A), which made it an unfair labor practice for a union "to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is . . . *forcing or requiring* . . . any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person." 357 U.S. at 98 (emphasis added).

As indicated in the text, the Supreme Court in *Carpenters* held that, to the extent that an employer *voluntarily* took action to boycott certain nonunion products or companies, this precluded finding that the employer had been unlawfully "forc[ed] or requir[ed]" to engage in such a boycott within the meaning of Section 8(b)(4). This same language ("forcing or requiring" an employer to cease doing business) remains a material part of *current* Sections 8(b)(4)(ii)(A) and (B), and renders meritless, as a matter of law, Plaintiff's Section 8(b)(4)(ii)(A) and (B) claims in the instant case.

4

relations with respect to its own contract, an employer in the instant case cannot be found to have conspired with unions to engage in "coercion" against itself for purposes of "forcing or requiring" itself to take certain action. *See, e.g., Douglas Theater Corp. v. Chicago Title & Trust Co.*, 681 N.E.2d 564, 567 (Ill. App. Ct. 1997) (a party cannot tortiously interfere with its own contract); *Bass v. SMG, Inc.,* 681 N.E.2d 564, 567 (Ill. App. Ct. 2002) (a party cannot tortiously interfere with the business expectancy created by that contract). This is so because the existence of such a "conspiracy" means that an employer wanted to take the allegedly "coercive" action.

### C. Plaintiff's Theories are Directly Contradicted by Its Section 8(e) Allegation.

Plaintiff's Section 8(b)(4)(ii)(A) and (B) theories that JLL "conspired" with the unions to enter into and enforce an unlawful hot cargo agreement are further contradicted by Plaintiff's Section 8(e) allegation. This is because Section 8(b)(4)(ii)(A) and (B) violations, by their very nature, involve an element of involuntariness whereby a union threatens, coerces, restrains, requires, or forces a neutral employer as a means to unlawfully pressure the primary employer. As the Supreme Court and the Board have stated, Section 8(b)(4)(ii)(B) protects neutral employers and others from "coerced participation in industrial strife." *Sheet Metal Workers Int'l Assoc.*, 356 NLRB 1290, 1296 (2011) (quoting *NLRB v. Retail Clerks Local 1001 (Safeco)*, 447 U.S. 607, 617-618 (1980) (Blackmun, J, concurring in part)). Despite the coerciveness element that is inherent in Section 8(b)(4)(ii)(B) violations, Plaintiff somehow claims that JLL is conspiring with the unions, to enforce an unlawful Section 8(e) hot cargo agreement. The contradictory nature of Plaintiff's arguments that JLL is coerced into enforcing a Section 8(e) agreement, while also being a willing or conspiring participant, illustrates the inconsistencies that pervade Plaintiff's entire theory of liability in this case.

### III. CONCLUSION

For the foregoing reasons and those outlined in its opening brief, JLL respectfully requests that the Court grant JLL's Partial Motion to Dismiss Plaintiff's Section 8(b) claims in Paragraphs 13 and 36 of the Plaintiff's Amended Class Action Complaint.

Dated: October 11, 2019

Respectfully submitted,

JONES LANG LASALLE AMERICAS (ILLINOIS), LP

By: */s/ Scott T. Schutte*
　　One of Its Attorneys

Scott T. Schutte
Philip A. Miscimarra
Stephanie L. Sweitzer
Kevin F. Gaffney
Heather J. Nelson
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
5th Floor
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
scott.schutte@morganlewis.com
philip.miscimarra@moganlewis.com
stephanie.sweitzer@morganlewis.com
kevin.gaffney@morganlewis.com
heather.nelson@morganlewis.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on the 11th of October, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Plaintiff:

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Howard W. Foster
Matthew A. Galin
FOSTER PC
150 N. Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.726.1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: +1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

*/s/ Scott T. Schutte*