UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>JONES LANG LASALLE AMERICAS (ILLINOIS), LP,<br><br>        Defendant. | Case No. 18-CV-5492<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wacker Drive Executive Suites ("WDES") filed a two-count amended class action complaint against Jones Lang LaSalle Americas (Illinois), L.P. ("JLL"), alleging that JLL conspired with labor unions representing its employees to force tenants in the commercial buildings it manages to hire union only contractors in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). JLL moves to dismiss WDES's new allegations in its amended complaint pertaining to Sections 8(b)(4)(ii)(A) and (B) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4)(ii)(A) and (B). For the following reasons, JLL's partial motion to dismiss [77] is granted.

## STATEMENT

WDES alleges that JLL and three unions entered into an unlawful hot cargo agreement precluding tenants from using non-union movers and contractors, such as electricians, painters, and carpet installers, to make renovations to their leased spaces. WDES alleges that the agreement between JLL and the unions to force tenants to use union only contractors is an illegal hot cargo policy which violates Section 8(e) as well as Sections 8(b)(4)(ii)(A) and (B) of the NLRA.[1]

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A

---

[1] The Court presumes familiarity with additional facts alleged by WDES as discussed in its May 28, 2019 Memorandum Opinion and Order denying JLL's motion to dismiss WDES's first complaint (doc. 55) and thus, does not restate them here.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss for failure to state a claim, courts "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

In its partial motion to dismiss, JLL argues that WDES's allegation that JLL violated Sections 8(b)(4)(ii)(A) and (B) of the NLRA should be dismissed because such claims are not facially plausible as a matter of law. Specifically, JLL argues that it is an *employer* and not a union, so Section 8(b) of the NLRA, which is directed at union unfair labor practices, does not apply. WDES responds that JLL's argument is flawed because it does not take into account the allegations that JLL conspired with the three unions to violate Sections 8(b)(4)(ii)(A) and (B). The amended complaint alleges that JLL conspired with the three unions to violate these subsections in violation of 18 U.S.C. § 1951 (Hobbs Act) and § 1962 (RICO). Doc. 76 at ¶¶ 13, 36. In its reply brief, JLL contends that WDES's conspiracy theory alleging violations of NLRA Sections 8(b)(4)(ii)(A) and (B) fails for three reasons: (1) it defies logic and common sense; (2) it lacks legal merit; and (3) it directly contradicts WDES's Section 8(e) allegation.

It is undisputed that JLL is an employer and not a labor organization or a union. The contested issue is thus whether WDES's amended complaint adequately alleges that JLL conspired to violate Sections 8(b)(4)(ii)(A) and (B) of the NLRA. The Court finds that the amended complaint fails to plausibly allege a conspiracy to violate Section 8(b)(4)(ii).

Section 8(b)(4) prescribes "secondary boycotts'—a practice aptly described as 'a combination to influence A by exerting some sort of economic or social pressure against persons who deal with A.'" *International Longshoremen's Ass'n, AFL-CIO v. N.L.R.B.*, 56 F.3d 205, 207 (D.C. Cir. 1995); *Mautz & Oren, Inc. v. Teamsters, Chauffeurs, & Helpers Union, Local No. 279*, 882 F.2d 1117, 1120-21 (7th Cir. 1989) (*quoting Int'l Bhd. of Elec. Workers v. NLRB*, 181 F.2d 34, 37 (2d Cir. 1950), *aff'd*, 341 U.S. 694 (1951)) ("The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employee's demands.").

Section 8(b)(4)(ii) makes it unlawful for a union to "threaten, coerce, or restrain any person" with an "object" of (A) "forcing or requiring any employer . . . to enter into any agreement which is prohibited by subsection (e)" or (B) "forcing or requiring any person . . . to cease doing business with any other person." 29 U.S.C. § 158(b)(4)(ii).[2] The "statutory language refers to threatening or coercing the secondary employer . . . ." *Boxhorn's Big Muskego Gun Clubs, Inc. v. Elec. Workers Local 494*, 798 F.2d 1016, 1020 (7th Cir. 1986). "Secondary employers" are "not directly involved in the labor dispute." *BE & K Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 761 (7th Cir. 1998); *Carpet, Linoleum, Soft Tile and Resilient Floor Covering Layers, Local Union NO. 419, AFL-CIO v. N.L.R.B.* 467 F.2d 392, 397 (D.C. Cir. 1972)

---

[2] Section 8(e) of the NLRA makes it unlawful for a union and employer "to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting, or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person . . . ." 29 U.S.C. § 158(e).

(Congress sought to protect "secondary employers from labor disputes with which they were not directly concerned."). "This was due in large part to the fact that '[m]ore often than not the [secondary] employers are powerless to comply with demands giving rise to the [secondary] activities, and many times they and their employees as well are the helpless victims of quarrels that do not concern them at all.'" *Carpet, Linoleum, Soft Tile and Resilient Floor Covering Layers, Local Union NO. 419*, 467 F.2d at 397.

Applying the statutory language to this case, JLL argues that WDES has essentially alleged that JLL conspired with the unions to "threaten, coerce, or restrain" *itself* with the object of "forcing or requiring" *itself* to take certain action. WDES asserts that JLL mischaracterizes its claims with respect to Section 8(b)(4)(ii)(A) and (B) "by framing the secondary party in these disputes as JLL (which it is not), instead of WDES and the other tenants (which [are] the proper secondary party)." Doc. 90 at 1. WDES continues by arguing that "JLL's reply wrongly assumes that JLL is not the primary employer, but is instead the neutral employer" *Id*. According to WDES, once properly framed, "there is nothing nonsensical" about its theory. *Id*. at 2.

WDES's theory, as stated in its sur-reply, is that Section 8(b)(4)(ii) was violated because JLL conspired with the unions to threaten, coerce, or restrain WDES with an "object" of forcing or requiring: (a) JLL to enter into an illegal hot cargo agreement (Section 8(b)(4)(ii)(A)), and (b) WDES to cease doing business with nonunion contractors (Section 8(b)(4)(ii)(B)).

WDES's theory is confusing and not supported by the allegations of the amended complaint. First, with respect to Section 8(4)(ii)(A), WDES does not explain why the unions would pressure WDES in order to force JLL to enter into an agreement to bar the nonunion contractors and movers when, according to the amended complaint, WDES allegedly wanted to use nonunion personnel in the first place. Second, another problem with WDES's explanation is that it is not based upon the actual allegations of the amended complaint. The amended complaint does not allege, for example, that that the unions used coercive tactics to pressure WDES to cease doing business with nonunion contractors. Rather, the amended complaint states that the "three unions have exerted their power over JLL for years." Doc. 76 at ¶ 15. Specifically, the amended complaint alleges that the unions used coercive tactics—including threats of a strike, picketing, and public shaming—to pressure *JLL* (not *WDES*) into boycotting nonunion contractors in its managed buildings. Doc. 76 at ¶¶ 15-17. Given these facts alleged in the amended complaint, WDES is the proper primary employer and JLL is the secondary employer in the labor dispute in this case.

Having established that, the next question is whether WDES's alleged conspiracy theory makes sense. The conduct at issue in the amended complaint is a hot cargo agreement between the unions and JLL – a conspiracy claim that they operated pursuant to an illegal agreement. WDES's current allegation in the amended complaint that JLL essentially conspired to have the unions "threaten," "coerce," "restrain," "force," or "require" *itself* to enter into an unlawful hot cargo agreement or regardless of any agreement, to boycott nonunion contractors, does not make sense. JLL could not agree to coerce itself for the purpose of forcing or requiring itself to enter into a hot cargo agreement or otherwise boycott nonunion contractors and movers in the buildings it manages. Further, WDES provides no legal support for its position. WDES's allegations do not

plausibly state a claim upon which relief can be granted — that JLL conspired to violate Section 8(B)(4)(ii).

In support of its contention that WDES's conspiracy theory lacks legal merit, JLL argues that "[j]ust like a party cannot be found to have engaged in tortious interference with contractual relations with respect to its own contract, an employer in the instant case cannot be found to have conspired with unions to engage in 'coercion' against itself for the purpose of 'forcing or requiring' itself to take certain action." Doc. 86 at 4-5. The tortious interference analogy buttresses the Court's conclusion that the amended complaint fails to state a claim for conspiracy to violate Section 8(b)(4)(ii). "A § 303 action arising from a secondary boycott is similar to a claim for tortious interference with a contract." *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 453 Fed. Appx 650, 653 (7th Cir. 2011); *Taylor Milk Co. v. Int'l Bhd. of Teamsters, AFL-CIO,* 248 F.3d 239, 247 (3d Cir. 2001) ("Violations of 29 U.S.C. § 158(b)(4)(ii) sound in tort, and are in the nature of interference with advantageous economic relations."); *Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 814 F.2d 32, 40 (1st Cir. 1987) ("A violation of § 303 is a tort, in the nature of interference with advantageous economic relations."). "'[A] party cannot tortiously interfere with its own contract,' nor can it tortiously interfere with any business expectancies created by that contract." *Heiman v. Bimbo Foods Bakeries Distribution Co.*, 902 F.3d 715, 720 (7th Cir. 2018) (applying Illinois law). Similarly here, JLL could not have conspired with the unions to pressure itself into taking certain action prohibiting the use of nonunion contractors.

For the reasons stated above, the Court finds that JLL could not have conspired to coerce itself into taking certain action. Thus, it follows that WDES's allegations fail to plausibly allege a claim for conspiracy to violate Section 8(b)(4)(ii) upon which relief could be granted. WDES's Section 8(b) claims in Paragraphs 13 and 36 of the Amended Complaint must be dismissed.[3]

## **CONCLUSION**

For the reasons discussed above, JLL's partial motion to dismiss [77] is granted.

**SO ORDERED.**

Dated: December 23, 2019

Sunil R. Harjani
United States Magistrate Judge

---

[3] Because the Court concludes that the amended complaint does not assert a plausible conspiracy to violate Section 8(b)(4)(ii) theory, it does not reach Defendants' alternative arguments that the "threaten[ed]," "coerce[d]," "restrain[ed]," "forc[ed]," or "requir[ed]" element of Section 8(b)(4) cannot be met when an employer voluntarily agrees to boycott certain goods or services and that WDES's theories are directly contradicted by its Section 8(e) allegation.