# Exhibit D

*Wacker Drive Executive Suites v. Jones Lang LaSalle American (Illinois), LP*

# EXPERT OPINION REPORT OF JAMES RAISHER
## Pursuant to Fed. R. Civ. P., Rule 26

Court: United States District Court – Northern District of Illinois
Case Number: 18-CV-05492
Case Name: *Wacker Drive Executive Suites v. Jones Lang LaSalle American (Illinois), LP*
Subject: Tenant Improvement Allowance ("TIA") Regarding Chicago Commercial Office Properties
Prepared By: James Raisher
Date: January 17, 2020

1. **Qualifications, Publications, Cases, and Compensation of Witness.**

I am James Raisher, founder and principal of Corporate Real Estate Solutions (CRES). For the past 30 years I have specialized in tenant representation services, structuring and negotiating commercial leases and developing comprehensive and strategic real estate plans. During this time, I have acquired an extensive knowledge of the Chicagoland office market.

I have mastered an analytical approach to the corporate real estate transactions and possess a broad range of skill sets in all aspects of the real estate process. My background is extensive in several areas of real estate, having represented major corporate clients in the leasing of their facility requirements.

I currently serve on the board of directors of the Alliance of Tenant Representatives (ATR).

I was requested by the attorneys for the plaintiffs to comment on how Tenant Improvement Allowances ("TIAs") are amortized over the lease term in office leases. I have never testified as an expert witness before in court and am being paid $300/hour by class counsel, and my fee is not contingent on the outcome of the case.

2. **Findings of Opinion and Fact.**

A TIA is the amount a landlord is willing to spend so that the tenant can retrofit or renovate the office space. It is usually expressed in a per-square-foot or total dollar sum. This amount is decided upon during lease negotiations.

Tenant's goals during the negotiations are typically to 1) get an allowance sufficient to cover planned improvements, and 2) maintain a high amount of control of the build-out.

How much the landlord is willing to contribute toward a TIA depends on the tightness of the market (a tenant market yields better TIA dollars), the value of the tenant, and the extent to which the build-out improves the property.

When the landlord takes complete control of the construction process and delivers the

completed space to the tenant, this is called a "turnkey build-out." Unless the specs are conveyed in the space plans in key form, with a turnkey build-out, tenants may worry that landlord incentives are not in line with their best interests. The landlord has no motivation to shop best quality for best price, as they will want to simply complete the task for the least amount of money. The landlord's contractor may or may not be the best fit for the tenant's build-out, and the tenant loses the option of seeking competitive bids. The major problem with turnkey build-outs or landlord-controlled tenant improvements is the economic incentive to cut corners.

A TIA is essentially a loan from the landlord for the additional allowance that the tenant is required to pay back over the life of their lease term. The landlord will typically give this money upfront to pay for the improvements. When it comes to amortizing tenant improvements, it simply means the tenant doesn't have to pay back the money all at once. The money is being added to the total rent due at an interest rate the landlord charges and divided by the number of months in the lease term. The interest rate will vary from landlord to landlord and dependent on the market. In most cases it ranges from 7% to 10% per annum.

Although not always stated, if there are TIAs as a component of the lease transaction, I recognize that the TIAs are amortized to the tenant as a component of the transaction.

In the Chicago Central Business District submarket, it is commonplace for landlords to require tenants to use union contractors and vendors (i.e., painting, carpentry, moving, telephone/data etc.). Traditionally union contractors and vendors command a higher wage than their nonunion counterparts. Some landlords insert the clause into their work letter that "Tenant must use union contractors".

Dated: January 31, 2020                                  Respectfully submitted,


                                                         */s/ James Raisher*
                                                         James Raisher