# EXHIBIT 1

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. 1:18-cv-5492** |
| **v.** | **Magistrate Judge Sunil R. Harjani** |
| **JONES LANG LASALLE AMERICAS (ILLINOIS), LP,** | |
| **Defendant.** | |

### PLAINTIFF WACKER DRIVE EXECUTIVE SUITES, LLC'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Wacker Drive Executive Suites, LLC (hereinafter "Plaintiff"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 33, hereby objects and responds to Defendant Jones Lang LaSalle Americas (Illinois), LP's (hereinafter "Defendant") First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

A.       Plaintiff's specific objections to each interrogatory are in addition to the general limitations and objections set forth in this section. These limitations and objections are incorporated into each and every interrogatory and are set forth here to avoid the duplication and repetition of restating them for each response. Thus, the absence of a reference to a general objection in response to a specific request is not and should not be construed as a waiver of the general objection to a specific request.

B.       The Instructions and Definitions contained in this request impose a greater burden on Plaintiff than imposed by the Federal Rules of Civil Procedure and/or the Local Rules of this

1

Court, including discovery of ESI. Similarly, the requests for documents/information impose a greater burden on Plaintiff than imposed by the Federal Rules of Civil Procedure and/or the Local Rules of this Court, including discovery of ESI.

C.      Plaintiff objects to these requests as duplicative and unduly burdensome to the extent that they seek the following: documents that have already been previously produced in this case, whether as part of initial disclosures or otherwise. Due to the volume of documents, some duplicate documents may be produced herein or produced in the future, but Plaintiff objects to reproducing all duplicate documents. Any production of duplicate documents/documents that have already been produced, is not intended as, and should not be construed to constitute, a waiver of this objection.

D.      These discovery responses are current as of the date below. Discovery has not completed yet. To the extent that Plaintiff obtains additional responsive documents and/or evidence in the future, Plaintiff will supplement/continue to supplement these responses, and will supplement/continue to supplement its production, as necessary and required, and reserves its right to do so, subject to/fully incorporating, and without waiving, these objections (above and below).

E.      Plaintiff objects to these requests to the extent they seek information and/or documents prepared by Plaintiff and/or its Counsel in preparation of this litigation and are therefore protected by the work product doctrine. For purposes of responding, Plaintiff will construe each definition/instruction/request as not seeking memoranda, drafts of pleadings/legal documents, attorneys' notes, correspondence, communications, and/or other documents that have been prepared by Plaintiff and/or its Counsel and have come into existence solely because of this litigation. Unless otherwise stated, documents subject to this objection will not be produced. Any

DocuSign Envelope ID: 4D1D76AF-AD5C-427B-8858-CGB9EC019F14

inadvertent disclosure of privileged material is not intended as, and should not be construed to constitute, a waiver of this privilege.

F.      Plaintiff objects to these requests to the extent they seek information and/or documents/communications between Plaintiff and its Counsel protected by the attorney-client privilege. For purposes of responding, Plaintiff will construe each definition/instruction/request as not seeking memoranda, drafts of pleadings/legal documents, attorneys' notes, correspondence, communications, and/or other documents that represent such privileged communicated and are protected by this privilege. Unless otherwise stated, documents/communications subject to this objection will not be produced. Any inadvertent disclosure of privileged material is not intended as, and should not be construed to constitute, a waiver of this privilege.

G.      Plaintiff objects to these requests on relevancy grounds to the extent that they exceed the scope of the Complaint and/or are not likely to lead to the discovery of relevant/admissible evidence/information.

H.      Plaintiff objects to these requests to the extent that they require Plaintiff to produce documents that are not in its possession, custody, and/or control.

I.      Plaintiff objects to these requests to the extent that they seek legal conclusions.

## NON-WAIVER

H.      Plaintiff's responses are made without waiving its rights to object (on the grounds of relevancy, hearsay, materiality, competency, or any other ground) to the use of the responses or documents in any subsequent stage or proceeding in this action or any other action.

I.      If Plaintiff, in response to any interrogatory, inadvertently produces or refers to documents that are or may be the subject of the objections stated herein, such production is not

intended to be, nor shall it be deemed to be, a waiver of objections with respect to such documents or any documents withheld.

J.    Plaintiff's failure to object to a specific interrogatory on a particular ground or grounds shall not be construed as a waiver of his rights to object on any additional grounds.

K.    Plaintiff reserves the right to amend and/or supplement its objections and interrogatory responses consistent with further investigation and discovery.

L.    By agreeing to produce documents or information requested, Plaintiff does not in any way represent that any information or responsive documents exist.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all communications, whether written or oral, that Plaintiff has had with JLL regarding (i) the union-only rule; or (ii) allegations in the Complaint, including the date of the communication, all participants to the communication, the mode of communication (for example, phone, in-person, email, or text), and the content the communication. If Plaintiff alleges it spoke with JLL be telephone, identify the telephone number Plaintiff used to communicate with JLL along with the service provider for that telephone number.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 1 on the basis that it is compound, overly broad in its subject matter, unduly burdensome as it unreasonably purports to require Plaintiff to recall with specificity all verbal conversations it or its agents had with JLL over the course of several years, and to the extent it seeks information already within Defendant's possession, custody, or control. Plaintiff also objects that this interrogatory is ambiguous, vague or otherwise incomprehensible as to the time frame as defined in Defendant's First Set of Requests for**

4

DocuSign Envelope ID: 4D1D76AF-AD5C-417B-8058-CGB9EC049E14

Production of Documents is "any point during the time period(s) in which You claim JLL engaged in any allegedly improper content," calls for a legal conclusion and does not limit claims based on the applicable statute of limitations.

Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to the emails previously produced as part of its Mandatory Initial Disclosures ("MIDP responses") as well as those produced herein. Plaintiff further states that most verbal communications with JLL were telephonic, and while Plaintiff cannot state with specificity the exact number and date of all verbal communications with JLL, Plaintiff generally states that these telephonic communications would coincide with emails to JLL, usually with the email following the phone call to recap the discussions had. Finally, Plaintiff states that phone calls made by Plaintiff to JLL would be done from the following phone numbers:

(a) 847 922-8664 (carrier AT&T)

(b) (312) 893-5500 (carrier Level 3, Plaintiff believes)

(c) (847) 592-7000 (carrier Level 3)

(d) (847) 885-5600 (carrier Level 3)

(e) (847) 373-0330 (carrier AT&T)

## INTERROGATORY NO. 2:

Describe the nature and current state of WDES's business, including (but not limited to) WDES's business structure, whether WDES is in good standing and whether WDES has filed for bankruptcy, liquidation, receivership, or other proceeding and the reasons for such filings.

**ANSWER:** Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 2 on the grounds that it purports to require Plaintiff to disclose information not relevant to the claims or defenses of any party nor proportional to the needs

DocuSign Envelope ID: 4D1D76AF-AD5C-4A7B-8058-CGB9EC049F14

of the case and as it is ambiguous, vague, or otherwise in comprehensible as to the character of "other proceeding."

Subject to and without waiving the foregoing objections, Plaintiff states that WDES is an Illinois, LLC in good standing and that the nature of WDES's business is property management. WDES is held as a subsidiary of the parent company, My Office Suite, LLC, an Illinois LLC created in 2014 and in good standing. Along with WDES, Oakbrook Executive Suites, LLC and Chatham Executive Suites, LLC are also subsidiaries of My Office Suite, LLC. Larry Grossman owns 75% of My Office Suite, LLC and Amy Grossman owns 25% of My Office Suite, LLC. WDES has never filed for bankruptcy, liquidation, and/or receivership.

**INTERROGATORY NO. 3:**

Identify any other entities managed by Larry Grossman and/or Amy Grossman, describe the nature of those entities' operations, state whether those entities are active businesses, and state whether those entities have employed union workers or hired union-workers to perform Construction Work or Moving Work at any time from 2012 to present.

**ANSWER:** Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 3 on the grounds that it is compound, purports to require Plaintiff to disclose information not relevant to the claims or defenses of any party nor proportional to the needs of the case, and on the grounds that the information sought is more appropriately asked during a deposition. Plaintiff also objects to the terms "Construction Work" and "Moving Work" as defined in Defendant's First Set of Requests for Production of Documents, as the terms are defined in an overly broad and overly inclusive manner.

DocuSign Envelope ID: 4D1D76AF-AD5C-457B-8058-CGB9FC049F14

**Subject to and without waiving the foregoing objections, see Plaintiff's answer to Interrogatory No. 2. Further answering, Larry Grossman owns My Office Suite Management, Inc. (an active company in good standing), which provides managerial services and employees to the subsidiaries of My Office Suite, LLC, Schaumburg Executive Suites, LLC (an active company in good standing), which is a property management company, and both Larry Grossman and Amy Grossman own Like New Homes, LLC (an active company in good standing. Finally, Plaintiff states that the businesses described herein occasionally hire union workers if Larry Grossman has a positive relationship with a worker who happens to be a member of a union, but that Plaintiff's strong preference is to hire non-union labor, as it is offers comparable quality of work at a significantly lower price. Answering further, see Plaintiff's First Amended Complaint. [*See* D.E. 76].**

## INTERROGATORY NO. 4:

Identify each instance when WDES engaged in Construction Work or Moving Work at 125 S. Wacker that is the subject of your claims, and for each such instance describe the work performed, including the general contractors, contractors, and workers used by WDES for the work, the type of work, date(s) of work, amount paid for the work, the amount WDES claims it would have paid but for the union only rule, and each person affiliated with JLL and each person affiliated with WDES who communicated about the work.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 4 on the grounds that it is compound, overly broad in its subject matter, as that the information sought is more appropriately asked during a deposition, and because the phrase "the amount WDES claims it would have paid but for the union only rule" calls for a professional opinion from a lay corporate witness as to the market**

DocuSign Envelope ID: 4D1D76AF-AD50-457B-8858-CGB9EC049E14

differences between union and non-union work in the Chicago metropolitan area – this testimony is better suited for an expert witness, which WDES intends to call. Plaintiff also objects to the terms "Construction Work" and "Moving Work" as defined in Defendant's First Set of Requests for Production of Documents, as the terms are defined in an overly broad and overly inclusive manner.

Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to the documents previously produced as part of its MIDP responses and those produced herein, to the extent they detail the instances where Plaintiff hired labor for the types of work at issue in its claims, the contractors used, the type and approximate dates of the work, the invoiced payment amounts for said work, and the individuals from WDES and JLL who communicated about the work. Further answering, Plaintiff is aware of the following projects, based upon invoices and emails and produced in her MIDP responses and herein, and as part of Plaintiff's investigation:

| Invoice Date | Contractor | Type of Work | Cost |
|---|---|---|---|
| 8/12/2014 | Ostrander Construction, Inc. | Carpentry | $18,372.00 |
| 8/12/2014 | Break Thru Enterprises | Demolition | $7,020.00 |
| 8/12/2014 | Epic Building Group | Flooring | $119,900.00 |
| 8/12/2014 | Schneider Acoustics, Inc. | Ceiling | $31,100.00 |
| 8/12/2014 | Professional Decorating (Ostrander) | Painting | $11,510.00 |
| 8/12/2014 | Prairie Service Group | Ostrander Construction, Inc. | $4,125.00 |
| 8/12/2014 | Ostrander Construction, Inc. | General Contracting Fee | $24,877.00 |
| 8/12/2014 | Connor Electric | Electric | $15,200.00 |
| 9/5/2014 | Specialty Woodworking, Inc. | Mill Work | $24,942.10 |

DocuSign Envelope ID: 4D1D784F-VD5C-45FB-8950-CCB95601CF11

| 9/5/2014 | Specialty Woodworking, Inc. | Painting | $4,315.00 |
|----------|------------------------------|----------|-----------|
| 2/2/2015 | Everything Division 12 | Moving | $300.00 |
| 4/12/2016 | Everything Division 12 | Moving | $350.00 |
| 8/1/2017 | Ostrander Construction, Inc. | Misc. Contracting | $9,717.00 |
| 8/1/2017 | Rex Electric And Technology | Electrical | $950.06 |
| 8/1/2017 | Professional Painters | Painting | $1,600.00 |
| 8/1/2017 | Professional Painters | Painting | $1,200.00 |
| 8/1/2017 | Professional Painters | Painting | $1,200.00 |
| 8/1/2017 | Professional Painters | Painting | $800.00 |
| 8/1/2017 | Professional Painters | Painting | $400.00 |
| 8/1/2017 | Professional Painters | Painting | $4.00.00 |
| 8/1/2017 | Professional Painters | Painting | $1,600.00 |
| 8/1/2017 | Professional Painters | Painting | $800.00 |
| 8/1/2017 | Professional Painters | Painting | $400.00 |
| 8/1/2017 | Professional Painters | Painting | $800.00 |
| 8/1/2017 | Professional Painters | Painting | $1,200.00 |
| 8/1/2017 | Professional Painters | Painting | $400.00 |
| 8/1/2017 | Professional Painters | Painting | $400.00 |
| 8/12/2017 | Connor Electric Services, Inc. | Electrical | $1,895.00 |
| 9/21/2017 | Bear Construction | Demolition, Carpentry, Drywall | $13,143.76 |

Plaintiff notes that these invoices were paid in the weeks or months following the date

listed for each invoice. Specifically, Plaintiff directs Defendant to Plaintiff's First Amended

9

DocuSign Envelope ID: 4D1D784E-0D5C-4E7B-89E8-CCB9E6919F11

Complaint, stating that the above-listed invoices for August 12, 2014 were paid by WDES in November, 2014. [D.E. 76, at ¶ 24]. Plaintiff will supplement the answer to this interrogatory as necessary/required

Answering further, Plaintiff states that Erika Pietrzak, Kate Charnon, Amy Grossman, and Larry Grossman were the individuals from WDES who primarily communicated about the work at issue in this litigation, and that the Mason Taylor, Steve Milenkov, and Allison Kritkos were the individuals from JLL.

As to the question about the amount Plaintiff would have paid but not for the "union only rule", see also Plaintiff's First Amended Complaint, which details that the difference in cost of labor is significant, at least 20% higher for union workers and movers (if not more) [D.E. 76, at ¶¶ 29-31] as well as Plaintiff's MIDP Responses.

**INTERROGATORY NO. 5:**

Excluding the Construction Work or Moving Work identified in response to interrogatory No. 4, identify all general contractors, contractors, and workers used by WDES from 2012 to 2017 to perform *any* Construction Work at 125 S. Wacker, whether such general contractors, contractors, and/or workers were unionized, and describe the work they performed, including the type of work, date(s) of work, and amount paid for the work.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 5 on the grounds that it is duplicative of Interrogatory No. 4, is compound, overly broad in its subject matter, purports to require Plaintiff to disclose information not relevant to the claims or defenses of any party nor proportional to the needs of the case, and on the grounds that the information sought is more appropriately asked during a deposition. Plaintiff also objects to the terms "Construction Work" and "Moving**

10

Work" as defined in Defendant's First Set of Requests for Production of Documents, as the terms are defined in an overly broad and overly inclusive manner.

Subject to and without waiving the foregoing objections, Plaintiff states that Amy Grossman kept paint in the 125 S. Wacker office and occasionally asked Mike Quinn, a non-union worker, to paint small areas of the office in the evenings rather than painting during the daytime hours. Quinn charged $75 for these painting services, which was significantly lower than the $300 charge for the same services which a union painter quoted her.

**INTERROGATORY NO. 6:**

Identify any instances where WDES did not seek permits or approval from JLL and/or the Landlord to perform Construction Work or Moving Work at 125 S. Wacker, or did not provide notices of such Construction Work or Moving Work to JLL and/or the Landlord.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 6 on the grounds that the information sought is more appropriately asked during a deposition and to the extent it is overly broad in its subject matter. Plaintiff also objects to the terms "Construction Work" and "Moving Work" as defined in Defendant's First Set of Requests for Production of Documents, as the terms are defined in an overly broad and overly inclusive manner.**

Subject to and without waiving the foregoing objections, Plaintiff states that it was not possible for WDES to avoid seeking permits and providing notice of moving work and construction work to JLL. However, some deliveries for WDES were made by non-union employees and contractors – the assembly and installation work, however, had to be completed by union employees. For example, Plaintiff states that, while cabinets ordered by

DocuSign Envelope ID: 4D1D784F-AD5C-457B-8959-CCB9E6019F11

WDES were made and delivered by a non-union company, Ostrander, a union contractor, had to install the cabinets.

**INTERROGATORY NO. 7:**

Identify when and how WDES became aware that a union-only rule existed at 125 S. Wacker and whether a union-only rule existed before 2012 during WDES's tenancy in the building.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 7 on the basis that it seeks information already within Defendant's possession, custody, or control and on the grounds that the information sought is more appropriately asked during a deposition and to the extent it is overly broad in its subject matter.**

**Subject to and without waiving the foregoing objections, Plaintiff cannot state with specificity when it learned about the union-only rule at 125 S. Wacker, but Plaintiff directs Defendant to the documents previously produced as part of its MIDP responses and those produced herein, as they contain correspondences which repeat the union-only rule at 125 S. Wacker. Answering further, Plaintiff was aware that Tishman Speyer had a similar union-only rule at 125 S. Wacker Dr.**

**INTERROGATORY NO. 8:**

Identify each fact that supports Plaintiff's allegation in Paragraph 22 of the Complaint that "JLL did not permit WDES to use the contractors it wanted to use, which were less expensive and non-union," including but not limited to each person who was involved in the alleged communication that JLL would "not permit WDES to use the contractors it wanted to use."

DocuSign Envelope ID: 4D1D784F-0D5C-4573-8959-CCB95C018F11

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 8 on the grounds that it is overly broad in its subject matter, seeks information already within Defendant's possession, custody, or control, and on the grounds that the information sought is more appropriately asked during a deposition.**

**Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to the documents previously produced as part of its MIDP responses and those produced herein to the extent they contain the requested information. Further answering, see Plaintiff's First Amended Complaint [D.E. 76, at ¶¶ 29-31] as well as Plaintiff's MIDP Responses**

**INTERROGATORY NO. 9:**

Identify each fact that supports Plaintiff's allegation in Paragraph 26 of the Complaint that "JLL . . . forbade WDES from using the cheaper, non-union contractors it wanted to use" for WDES' 2017 renovations, including but not limited to each person who was involved in the alleged communication that JLL "forbade" WDES from using the contractors it wanted to use.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 9 on the grounds that it is overly broad in its subject matter and to the extent it seeks information already within Defendant's possession, custody, or control.**

**Subject to and without waiving the forgoing objections, see Plaintiff's answer to Interrogatory No. 8.**

**INTERROGATORY NO. 10:**

Identify all facts relating to Plaintiff's allegation in Paragraph 28 of the Complaint that "JLL forced" WDES to use union movers in connection with a January 2015 move, including but

not limited to each person who was involved in the alleged communication that WDES was required to use union labor for the move.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 10 on the basis that it is overly broad in its subject matter, unduly burdensome, and on the grounds that the information sought is more appropriately asked during a deposition.**

**Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to the documents previously produced as part of its MIDP responses and those produced herein to the extent they contain the requested information. Further answering, Plaintiff states that JLL's firm practice was to confirm at the loading dock that workers or contractors seeking entry into the building were a member of a union, lest they be denied entry. Accordingly, Plaintiff understood that attempts to use non-union movers would be thwarted if non-union workers or contractors attempted to enter the loading dock. Finally, see document Bates stamped WACKER DRIVE_000005-06, where Matthew Combs and Daniel Pessah instructed 125 S. Wacker about the dock entrance requirements and containing the boldened, underlined statement in its own paragraph: "All contractors working in 125 South Wacker must be Union members."**

**INTERROGATORY NO. 11:**

Identify each fact that supports Plaintiff's allegations in Paragraphs 34 and 35 of the Complaint that "unless WDES (and the other tenants) accede to JLL's demands, they will not be able to start or complete their renovations and open for business," and "JLL forces its Loop tenants to use union contractors/movers through the use of economic fear."

14

DocuSign Envelope ID: 4D1D784E-D55C-4573-8959-CCB95C018F11

**ANSWER**: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 11 on the grounds that the information sought is more appropriately asked during a deposition.

Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to the documents previously produced as part of its MIDP responses and those produced herein to the extent they contain the requested information, particularly as to emails sent by JLL staff enforcing the buildings rules and requiring tenants to sign and acknowledge the building rules, which required assent to the use of only union labor. Further answering, Plaintiff states that because of its understanding of JLL's union only rule, its understanding of JLL's lack of flexibility and strictness on the union only rule, and its understanding that the loading dock at 125 S. Wacker were frequently checked to ensure only union workers or contractors could enter the building (and, accordingly, that only union workers or contractors could use the freight elevator), Plaintiff understood that it could not undertake necessary moving and construction projects, and thus go about the normal course of its business/operate its business, unelss it complied with JLL's union-only rule. Finally, see Bates stamped document WACKER DRIVE_000200, explicitly stating JLL's union-only rule, and WACKER DRIVE_000217, requiring that Plaintiff signed that it has read and understood JLL's rules and regulations. *See also* Response to Interrogatory 12 below, incorporated herein.

**INTERROGATORY NO. 12:**

Describe that [sic] nature and extent of economic fear that WDES purportedly experienced from 2012 to 2017 as a result of the alleged conduct of JLL in the Complaint.

DocuSign Envelope ID: 4D1D781F-0D5C-4573-8959-CCB95C018F11

**ANSWER**: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 12 on the grounds that the information sought is more appropriately asked during a deposition.

Subject to and without waiving the foregoing objections, Plaintiff states that WDES could not operate its business unless it agreed to the union-only rule of JLL, as described in Plaintiff's Answer to Interrogatory No. 11. Plaintiff could not operate its business without furniture, office equipment, and the ability to move locations when needed – as all of these necessary business elements were subjected to JLL's union-only rule, Plaintiff experienced economic fear that it either would be unable to successfully budget the significantly higher cost of union-only labor or that it would be unable to operate its business at all.

**INTERROGATORY NO. 13:**

Identify the total amount and type of damages WDES claims in this lawsuit against Defendant. For each item of damages, please state the basis for WDES's claim, including the methods and manner by which such damages were calculated; identify all individual(s) who have or claim to have knowledge of WDES's alleged damages; and identify all documents that refer, relate or pertain to WDES's alleged damages claim. WDES's answer should include, but is not limited to the alleged damages described in Paragraph 59 of the Complaint that "WDES has been injured in its business and property . . . by payment of an estimated overcharge of $38,761 (20% of the total, excluding materials); and . . . by payment of an estimated overcharge of $7,144.12 (20% of the total excluding materials); and . . . by payment of an estimated overcharge of $162.53 (20% of the total moving cost incurred)."

**ANSWER**: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 13 on the basis that it is compound and premature at this stage

of litigation, as discovery regarding damages is ongoing and beyond the scope of Plaintiff's knowledge at this time.

Subject to and without waiving the foregoing objections, Plaintiff directs Defendant to its MIDP responses at Response No. 5, it's First Amended Complaint, and the documents previously produced as part of its MIDP responses and those produced herein.

**INTERROGATORY NO. 14:**

Identify each fact that supports Plaintiff's allegation in Paragraph 31 of the Complaint that "[t]hose tenants preferring to use union labor have also been overcharged because the labor market for contracting services has been closed to effective competition, meaning union labor is supracompetitively priced, ie., above the price it would be if the union-only rule were not in place."

**ANSWER:** Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 14 on the basis that it is compound, overly broad in its subject matter, unduly burdensome, and to the extent that it calls for a professional opinion from a lay corporate witness as to the market differences between union and non-union work in the Chicago metropolitan area – this testimony is better suited for an expert witness, which WDES intends to call.

Subject to and without waiving the foregoing objections, Plaintiff states that the price of union labor in urban areas, such as the Chicago Loop, is much higher than the price of comparable non-union labor. *See* Amended Complaint, p. 8, footnote 2. Further answering, Plaintiff directs Defendant to see the documents produced herewith at Bates stamp WACKER DRIVE_365-380 describing the cost of non-union labor in New York, as a basis of comparison. Plaintiff will be submitting an export report on this issue and will supplement

DocuSign Envelope ID: 4D1D784E-AD5C-4573-8058-CCB9E6018F11

its answer to this interrogatory as necessary/required. Answering further, see Plaintiff's answer to Interrogatory No. 5.

**INTERROGATORY NO. 15:**

Describe in detail how JLL's alleged actions harmed Plaintiff, including what specific harm Plaintiff experienced, who caused the harm, when the harm occurred, and how Plaintiff experienced the harm.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 15 on the basis that it is duplicative of Interrogatory No. 13.**

**Subject to and without waiving the foregoing objections, see Plaintiff's answer to Interrogatory No. 13.**

**INTERROGATORY NO. 16:**

Identify each fact that supports Plaintiff's allegation in Paragraphs 11, 14, 55, and 64 of the Complaint that:

    a) "Since 2014 JLL has allowed three labor unions to restrict access to its buildings by any non-union contractors: The International Union of Operating Engineers Local 399, AFL-CIO, Service Employees International Union, Local 1, and Teamsters Local 705."

    b) "JLL formed an agreement with the three unions" with the objective "to force union-only labor on commercial tenants in buildings managed by JLL in the Chicago Loop;" and

    c) "JLL has agreed to impose this [union-only] restriction at the behest of the three unions."

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 16 on the basis that it is compound, unduly burdensome, overly**

18

DocuSign Envelope ID: 4D1D781F-AD5C-4572-8959-CCB95C018F11

broad in its subject matter, and on the grounds that the information sought is more appropriately asked during a deposition.

Subject to and without waiving the foregoing objections, Plaintiff states that in the Spring of 2017, Plaintiff's counsel conducted an investigation into these issues which formed the basis for the allegations referenced in these paragraphs.

Plaintiff's counsel spoke to Beth Halet of the Building Owners and Managers Association of Chicago ("BOMA"). She informed Plaintiff's counsel that the union representatives from SEIU Local 1 and AFL Local 399, as well as the movers union, continuously drive around the Chicago Loop looking for non-union workers. They also cooperate with each other in bringing out large inflatable rats when they discover that non-union workers are working in any Loop building. She also said that the building managers in the Chicago Loop are afraid that these unions will disrupt/picket the buildings, even though the buildings' CBAs have "no strike" provisions, and therefore agree to impose restrictions on non-union workers. BOMA knows that the buildings will not allow non-union contractors inside and tolerates the threat of wildcat picketing/strikes.

Plaintiff's counsel also spoke to Lenny Sciascia, the senior director of asset/property management with Tishman Speyer in the Loop, who confirmed what Ms. Halet said. Mr. Sciascia said that all the buildings in the Chicago Loop require union contractors because the buildings' employees are all members of either SEIU Local 1 or AFL Local 399, and if there were any non-union contractors/workers in the building, the buildings' employees would walk out/picket/inform the unions of such, leading to large inflatable rats outside. A transcript of a voicemail left by Mr. Sciascia on approximately February 23, 2017 has been

produced at Bates stamp WACKER DRIVE_000007, detailing his statements about the union requirement of Chicago Loop buildings.

Additionally, Mr. Sciascia said the most aggressive union is the movers, Teamsters Local 705, headed by Richard DeVries. He said Mr. DeVries personally sends out a list of "approved movers" to the major landlords in the Chicago Loop and calls them when he gets a report of a non-union mover in their buildings. Mr. DeVries will say he has heard a certain tenant is going to use a non-union mover and will threaten to picket, use a loud speaker in front of the building, and go on a sympathetic radio program to air grievances. The tenants then "end up switching to the approved mover." Mr. Sciascia indicated that as a result, there is a lot of pressure on building managers to only allow the approved union contractors into the buildings.

**INTERROGATORY NO. 17:**

Identify each fact that supports Plaintiff's allegation in Paragraph 15 of the Complaint that the "three unions have exerted their power over JLL for years [and] closely monitor all contracting in JLL buildings" and any instance during your tenancy at 125 S. Wacker where the unions have "call[ed] the property manager [of 125 S. Wacker], demand[ed] expulsion, and if necessary, threaten[ed] a work stoppage (strike), picket[ed] outside the building which may include the display of a large inflatable rate (sometimes called a 'union rat') on or immediately adjacent to JLL's managed property for public shaming."

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 17 on the basis that it is duplicative of Interrogatory No. 16 and is compound.**

Subject to and without waiving the foregoing objections, see Plaintiff's answer to Interrogatory No. 16.

**INTERROGATORY NO. 18:**

Has Plaintiff, or Plaintiff's attorneys, communicated with persons who may be members of the purported class? If so, describe each communication, including (but not limited to) the identity of the person with whom Plaintiff communicated, the date of the communication, and the nature of the communication.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 18 on the basis that it is overly broad in its subject matter, as it purports to require Plaintiff and Plaintiff's counsel to describe and recount every communication had with "persons who may be members of the purported class", which is defined in Plaintiff's First Amended Complaint as "All individuals and entities who were tenants and subtenants in JLL's Chicago Loop commercial buildings who incurred moving expenses or hired contractors to make improvements in their properties in the past four years." (*See* Dkt. 76, ¶ 42). Plaintiff specifically objects that a request to describe every communication had with tenants and subtenants at JLL's Chicago Loop buildings on the grounds that it unreasonably purports to require Plaintiff to recount any and all conversations with tenants and subtenants of all JLL Chicago Loop locations, seeks information that is beyond the scope of Plaintiff's knowledge as to the identity of all of JLL's tenants and subtenants, is overly broad in its subject matter as it does not specify the subject**

of the correspondences JLL seeks information about, purports to require Plaintiff to disclose information not relevant to the claims or defenses of any party nor proportional to the needs of the case, and to the extent that it seeks information that is subject to the attorney-client work privilege or attorney work-product doctrine.

**INTERROGATORY NO. 19:**

For any response to JLL's First Set of Requests for Admission where the answer is not an unqualified admission, identify each fact that supports Plaintiff's response.

**ANSWER: Plaintiff incorporates the General Objections as if set forth fully herein. Plaintiff objects to Interrogatory No. 19 on the basis that it goes beyond the scope of Rule 36 of the Federal Rules of Civil Procedure: "Because Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or obtain production of documents, requests for admission should not be used as a method of discovery for those purposes." *Stallings-Daniel v. The Northern Trust Co.*, 01 C 2290, 2002 WL 424629, at \*1 (N.D. Ill. 2002); *see also Katzman v. U.S.*, 11 C 1411, 2012 WL 601771, at 1 (N.D. Ill. Feb. 23, 2012). Plaintiff further objects to the extent that this Interrogatory attempts to circumvent the 25 Interrogatory limit set by the Federal Rules of Civil Procedure by purporting to require Plaintiff to answer 18 Interrogatories, and then provide an additional 12 Interrogatory answers for each Request to Admit propounded by Defendant.**

Dated: September 27, 2019                    Respectfully Submitted,


                                             /s/ James B. Zouras
                                             James B. Zouras
                                             Ryan F. Stephan
                                             Anna M. Ceragioli
                                             Stephan Zouras, LLP
                                             100 N. Riverside Plaza, Suite 2150
                                             Chicago, Illinois 60606

312-233-1550
312-233-1560 f
jzouras@stephanzouras.com
rstephan@stephanzouras.com
aceragioli@stephanzouras.com

Howard Foster
Matthew Galin
FOSTER PC
150 N. Wacker Dr.
Suite 2150
Chicago, IL 60606
(312) 726-1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: (312) 371-2308
awalner@walnerlawfirm.com

**ATTORNEYS FOR PLAINTIFF WDES**

DocuSign Envelope ID: 4D1D784E-AD5C-457B-85E0-CCB9E6016F11

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I hereby declare under the penalty of perjury that the facts set forth in my responses to Defendant's Interrogatories are true and correct to the best of my knowledge, information and belief.

NAME (printed):     Amy Grossman
_____

SIGNATURE:
DocuSigned by:
*Amy Grossman*   _____
8EAEB9A932824F2...

DATE:     9/27/2019
_____