IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

WACKER DRIVE EXECUTIVE SUITES, LLC, on behalf of itself, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

JONES LANG LASALLE AMERICAS (ILLINOIS), LP,

    Defendant.

Case No. 1:18-cv-5492

Magistrate Judge Sunil R. Harjani

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF DR. ROBERT KAESTNER

**JONES LANG LASALLE AMERICAS (ILLINOIS), LP**

Philip A. Miscimarra
Scott T. Schutte
Stephanie L. Sweitzer
Kevin F. Gaffney
Heather J. Nelson
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Tel: 312.324.1000
Fax: 312.324.1001
philip.miscimarra@morganlewis.com
scott.schutte@morganlewis.com
stephanie.sweitzer@morganlewis.com
kevin.gaffney@morganlewis.com
heather.nelson@morganlewis.com

*Attorneys for Defendant*

In its Motion to Exclude, JLL established that Dr. Kaestner's report was unreliable in two material respects: (i) Dr. Kaestner blindly assumed that his estimated difference in union and non-union wages could be directly correlated to "labor" charges billed to class members, without any basis for doing so; and (ii) Dr. Kaestner assumed union and non-union workers are equally productive, even though he acknowledged that there is no "empirical" or "credible" evidence supporting that assumption, and that studies he relied on directly contradict the assumption.

At the very least, WDES's Opposition agrees that Dr. Kaestner made these two assumptions, and that they are integral to his damages methodology:

- Dr. Kaestner purports "to estimate the damages to WDES and demonstrate how damages can be calculated on a class-wide basis." Dkt. 132 ("Opp.") at 1; Dkt. 127 ("Mot.") at 4 (same).

- The alleged damages to WDES and the putative class are "the difference in cost for [union and non-union] work performed/charged to the tenants." Opp. at 8; Mot. at 1-2 (same).

- Dr. Kaestner does not provide any direct analysis of the differences between union and non-union labor costs charged to the tenants by contractors. *See* Mot. at 2-3, 7-9; *see generally* Opp. (not contending otherwise); Dkt. 105-1 ("Kaestner Report") (containing no such analysis).

- Instead, Dr. Kaestner analyzes only the difference between wages paid to union and non-union laborers by contractors, which is different from the labor costs charged by the contractor to class members. Opp. at 15 ("**All he does** is estimate the wage differential between union and non-union laborers") (emphasis added); Mot. at 5-9 (same).

- By using his wage analysis as the sole basis for determining the labor charge damages actually at issue in this case, Dr. Kaestner necessarily makes two key assumptions:

    o Differences in union and non-union wages track perfectly with differences in union and non-union labor charges billed to tenants. *See* Mot. at 7-9; Opp. at 8-9 (acknowledging this assumption and not contending otherwise); and

    o Non-union laborers and union laborers are equally productive. *See* Mot. at 9-10; Opp. at 5-8 (acknowledging this assumption and not contending otherwise).

Further, WDES's Opposition does not dispute that Dr. Kaestner supported these two critical assumptions with nothing at all—no analysis, no empirical evidence, no academic support, no

experience-based expertise, nothing. The inquiry on this Motion need go no further than this. It is fatally unreliable for an expert to premise a damages methodology on one key assumption (let alone two of them) that is entirely unsupported.

Everything else in WDES's Opposition is an extraneous diversion tactic. Most notably, WDES tries to miscast this Motion as a fight about the "weight of [Dr. Kaestner's] testimony, not its reliability." Opp. at 5. Specifically, WDES reframes JLL's arguments about Dr. Kaestner's two analytical gaps as mere "criticisms" about what he **does not** "account for" when devising his methodology. *See, e.g.,* Opp. at 5 ("The Motion contends that Dr. Kaestner's testimony should be stricken because he does not account for an assumption; namely . . . that union labor is more productive than non-union labor"); *id.* at 9 ("JLL believes the difference in labor costs must account for significant factors other than wage rates"). But that is not what JLL argued. At issue here are the two critical assumptions Dr. Kaestner's methodology **does** account for but never explains or supports with anything other than his *ipse dixit*.

Likewise, WDES attempts to wave away Dr. Kaestner's failure to explain why he assumes the difference in union and non-union **wages paid by contractors** is the exact same as the difference in union and non-union **labor costs paid by tenants** by (i) suggesting that Dr. Kaestner is subject to a "relaxed burden" since damages need only be estimated, and (ii) devising a half-baked formula for extracting union labor charges from tenant invoices, since those labor charges are otherwise unavailable. The former argument is a non-starter: Dr. Kaestner is subject to the high bar of *Daubert* and Federal Rule of Evidence 702. The reality that damages might not be able to be determined with "perfect precision," Opp. at 9, does not mean the Court is free to accept an unreliable methodology for generating an estimate.

The latter argument is non-responsive to this Motion. Union labor charges are merely input

data points Dr. Kaestner presumes "will be available" to whomever uses his methodology. Kaestner Report at 9. This Motion *explicitly* presumes the same availability, *see* Mot. at 1, n.2, and does not argue Dr. Kaestner's methodology is unreliable because those inputs are missing.[1] So by focusing all of its effort on explaining why the unavailability of those data points does not matter, WDES misses the point of JLL's argument here. Even assuming those data points are available, it is unreliable for Dr. Kaestner to posit that dividing those data points by his union **wage** premiums yields estimated non-union **labor charges**, without explaining at all why those variables are related in that fashion (or even acknowledging that labor charges are the actual damages here, not wages).

The "fix" that WDES *does* propose—which is procedurally improper because it was raised for the first time in WDES's Reply in Support of its Motion for Class Certification—is nonsense. WDES suggests that discounting the bottom-line amount that each contractor invoiced each tenant for each project by 49% will eliminate every non-labor cost (like profit, materials, insurance, fees) and yield only the labor cost. Why does WDES think 49% is the magic number? Not because Dr. Kaestner says so (curiously, Dr. Kaestner does not sponsor this dramatic change to his model). And not because any other expert says so. Rather, WDES relies on speculation by one of WDES's owners during her deposition that the "majority" of the amounts invoiced to WDES constituted labor charges. Throwaway testimony from the deposition of a non-expert, interested party is the thinnest of reeds on which to propose a "fix" (and, again, that fix would not address any of the analytical gaps in Dr. Kaestner's methodology anyway).

---

[1] However, the Motion—and JLL's Opposition to Plaintiff's Motion for Class Certification—also make clear that the unavailability of these data points is one of many reasons to find that individual questions predominate and would overwhelm a class action in this matter. *See* Mot. at 1, n.2; Dkt. 125 ("Class Cert Opp.") at 15-16, 22-24. Indeed, Plaintiff attempted to respond to that argument in its Reply in Support of Class Certification. *See* Dkt. 131 at 17-22.

The remainder of WDES's arguments are irrelevant to this Motion, as WDES helpfully admits. *See, e.g.,* Opp. at 3-5 (defending Dr. Kaestner's qualifications and wage regression analysis while acknowledging "the Motion does not take issue with Dr. Kaestner's regression analysis"); *id.* at 5-8 (attacking JLL's expert, Mark Hosfield, while acknowledging "JLL's Motion does not rely upon any opinions, data, or other information offered by Hosfield").

## ARGUMENT

**I. Dr. Kaestner's Damages Model Should Be Excluded Because It Relies on a Blind Assumption That Wages Equal Labor Costs.**

**A. Dr. Kaestner's Blind Assumption that Wages Equal Labor Costs Is Not Reliable.**

Plaintiff makes no attempt to defend Dr. Kaestner's unsupported assumption that wage rates paid to laborers and labor costs charged to tenants are the same thing. Mot. at 7-9; 11-14. Plaintiff does not deny that Dr. Kaestner cited no basis for this assumption. Opp. at 8-14. Instead, Plaintiff tries to reframe JLL's argument as criticizing Dr. Kaestner for not considering "significant factors other than wages" that might also be charged to tenants. Opp. at 9. This is not JLL's argument. Dr. Kaestner's damages opinion is not reliable because he provides no explanation or methodology for a fundamental assumption in his damages formula: that wages paid by contractors equal labor costs charged to class members. Mot. at 7-9; 11-14.

It is not JLL's burden to "disprove" Dr. Kaestner's unsupported assumption, but it is worth noting that the factual record undermines it. If it were true that union and non-union wage difference entirely explains the difference between union and non-union labor charged to tenants, then a non-union contractor would necessarily "pass on" to its tenant-customers 100% of the wage savings created by hiring non-union laborers. *See* Mot. at 13. One of Plaintiff's owners, Amy Grossman, rejected this notion when talking about her own non-union contracting company, SES. As she put it, SES "like any other vendor, would have some sort of a markup" on labor because

-4-

"[t]hey are not in business to do things for free" and further admitted it would not be inappropriate for SES to charge a **33% markup on non-union labor**. *See* Dkt. 105-7 ("A. Grossman Dep.") 145:20-147:7. Dr. Kaestner's damages model does not account for non-union contractors "upcharging" non-union labor costs to "pocket" some of the wage savings itself.

In an attempt to sidestep the unreliability of Dr. Kaestner's opinion, Plaintiff also suggests it has a "relaxed burden" in calculating damages because this is a RICO case, which Plaintiff asserts allows Plaintiff to rely on an unreliable damages opinion so long as damages can be estimated. Opp. at 11-14. This is wrong. Whether damages may need to be estimated is not the question before the Court. The question is whether Plaintiff has carried its burden of demonstrating that Dr. Kaestner's methodology is a reliable way of providing that estimate. It did not.

Put another way, Dr. Kaestner's opinion is not subject to a "relaxed burden" just because this is a RICO case. Opp. at 9-13.[2] While damages do not need to be estimated "with perfect precision," Opp. at 9, they do need to be estimated in a way that satisfies Rule 702 and *Daubert*. As Plaintiff notes, "[e]ven in instances in which the defendant's records cannot lead to exact calculations, they often form a rubric or data point that a formula can use." Opp. at 9 (quoting William B. Rubenstein, 4 Newberg on Class Actions, §12:5 (5th ed. 2020)). Here, Dr. Kaestner

---

[2] Plaintiff relies on antitrust case law (even though this is not an antitrust case) and two RICO cases to support its contention that Plaintiff has a "relaxed burden." The two RICO cases Plaintiff cites to support its point that the burden for proving damages in RICO cases is "relaxed" are inapposite. Opp. at 12 (citing *BCS Servs., Inc. v. BG Inv., Inc.*, 728 F.3d 633, 639–40 (7th Cir. 2013) and *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011)). Both cases caveat this relaxed burden for calculating damages in circumstances "when the defendant's own conduct impedes quantification." *BCS Servs., Inc.*, 728 F.3d at 639–40; *see also BCS Servs., Inc.*, 637 F.3d at 759 ("On that phase of the case the plaintiff has a more relaxed burden of proof than on the issue of causation, especially if as in this case the defendants' conduct has made it difficult for the plaintiff to prove the precise extent of his damages.") (emphasis added). No such conduct is alleged here, as Plaintiff admits the difficulty in quantifying these damages "is attributable to the way the contractors issue invoices," which are "reasons beyond anyone's control." Opp. at 9.

has provided no such rubric or data point to estimate the labor costs to make his damages formula reliable. Instead, his formula relies on the unfounded assumption that wages equal labor costs.

> B. **Plaintiff's Last-Minute Attempt To Fix Dr. Kaestner's Damages Model Should Be Rejected.**

After several pages of dancing around the issue, WDES finally expressly acknowledges the severity of Dr. Kaestner's analytical oversight by offering for the first time[3] to dramatically change Dr. Kaestner's damages model by agreeing to "discount charges incurred by the Contracting Subclass by 49% before subjecting them to Dr. Kaestner's damages methodology." Opp. at 13. This revised methodology suggests WDES will "address any conceivable concerns regarding overstated damages caused by the absence of itemization on invoices for labor costs." *Id.* Inexplicably, WDES does not support this revision to the damages model with a supplemental report from Dr. Kaestner. Indeed, the fact that Dr. Kaestner did not offer a supplemental report suggests that either Dr. Kaestner does not support this crude effort to fix his model, or WDES's counsel has effectively abandoned Dr. Kaestner.

Rather, WDES builds its entire revised damages model on these two brief passages from Ms. Grossman's testimony (*see* Opp. at 9-10):

> Q. And we talked earlier specifically with reference to WDES's Answer to Interrogatory Number 4. This is a chart of the costs that WDES spent for the construction work. Those costs and the costs that WDES used the TIA for, would you say that most of those costs were for labor or for materials and equipment?
>
> A. There was some specific things that were for furniture, fixtures, and equipment, which those are delineated, but overall, the vast majority of it is labor costs, not material costs.

---

[3] Because Plaintiff raises this proposal for the first time in its Reply in Support of its Motion for Class Certification (Dkt. 131 at 17-22) and failed to raise it in its initial motion, it should be disregarded. *See generally* Dkt. 105; *see also Drabik v. Drabik*, No. 09 C 0028, 2013 WL 2285791, at *3 (N.D. Ill. May 23, 2013) ("A reply brief is for replying, not for raising new arguments that were not raised in the opening brief. The new arguments [raised] in [a] reply brief are deemed waived.") (internal quotations and citations omitted); *U.S. v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007) (finding defendant forfeited arguments he raised for the first time on reply).

A. Grossman Dep. 144:23-145:9.

> Q: [I]s it your understanding that some of those invoices from the subcontractors or for Ostrander would include materials?
>
> A: Yes, but I would say probably an overwhelming majority is labor. For example, painting that's probably majority of labor. Paint, yes, I am sure there's paint in there which is material.
>
> Q: What percentage is an overwhelming majority?
>
> A: I can't give you an exact percentage.

Dkt. 125-9 ("A. Grossman Dep. Vol. 2") 167:9-20.

There are two massive problems with using Ms. Grossman's testimony to revise Dr. Kaestner's damages model. First, WDES has not identified Ms. Grossman as an expert, much less identified the qualifications that would allow her to offer an expert opinion on damages. For this reason alone, Plaintiff's "fix" should be rejected.

Second, Ms. Grossman's testimony was not about remedying the problem that JLL identified in Dr. Kaestner's report (*i.e.* his failure to acknowledge that the labor costs charged to class members do not correlate with union vs. non-union wage differences) but rather about another significant flaw in WDES's efforts to certify a class: that "with respect to WDES' two build-outs …the evidence establishes that the contractors quoted, billed and received a single, all-inclusive amount for their work" such that labor charges are not identified. Opp. at 10.[4] WDES tries to achieve a "two-for-one" by using this 49% revision to the damages model to address both

---

[4] Plaintiff spends seven pages of the Opposition arguing that the lack of records demonstrating isolated labor costs—something Dr. Kaestner's methodology requires—does not matter because those labor costs can be estimated. Opp. at 8-14. But that is an argument about Plaintiff's failure to demonstrate predominance under Rule 23(b)(3), not an argument relevant to this Motion. Indeed, the Motion makes this crystal-clear at the outset. *See* Mot. at 1, n.2 (flagging that Dr. Kaestner's methodology is practically "unusable" given that it calls for information not known to any party, but clarifying "[h]ere, the focus is on the inadmissibility of Dr. Kaestner's opinion—assuming, as he does, that isolated union labor charges 'will be available,' even though they are not.") (citing Kaestner Report at 9).

the shortcomings in Dr. Kaestner's damages model and the issue JLL raised in its Opposition to Class Certification that documentation does not exist that isolates labor charges (which are at issue) from material costs (which are not). *See* Class Cert Opp. at 15-16. Even if Ms. Grossman is qualified to offer an expert opinion at all (which she is not), her testimony—and the resulting 49% reduction in the class damages claim—only addresses JLL's argument that Dr. Kaestner's model cannot be applied on a class-wide basis because the invoices issued by contractors to WDES (and absent class members) do not differentiate between labor charges and materials charges. Ms. Grossman's cited testimony does not address whether, for example, a contractor passed its labor costs along to WDES on a pass-through basis, or (more likely) added in a profit component (as Ms. Grossman suggests that they would (*see* supra 4-5)). Nor does it address how the relationship between wages paid by the contractor correlates to labor costs charged to class members on a class-wide basis.

To be clear, WDES's last-minute desperate effort to radically modify Dr. Kaestner's damages model has no reliable basis and should be rejected, and as a consequence Dr. Kaestner's damages model should be excluded. But if the Court is inclined to allow Ms. Grossman's testimony to support a revision to Dr. Kaestner's methodology, JLL requests an evidentiary hearing so that JLL can make a record of its *Daubert* objections and arguments under Rule 702 of the Federal Rules of Evidence regarding Plaintiff's effort to modify Dr. Kaestner's damages model with Ms. Grossman's opinion. Specifically, at minimum, JLL would call: (i) Ms. Grossman to testify about her qualifications and the bases of her opinion; and (ii) Dr. Kaestner to determine if he approves of the radical revision to his damages model.[5]

---

[5] WDES's last-minute effort to modify its damages model (if allowed) also impacts JLL's arguments in opposition to class certification. For example, JLL has argued that the amounts at issue for each class member (at least according to WDES's theory) support a finding by this Court that individual lawsuits by

**II.     Dr. Kaestner's Unsupported Assumption That Union and Non-Union Workers Are Equally Productive Renders His Damages Formula For Labor Costs Unreliable.**

Plaintiff ignores Dr. Kaestner's dispositive admission that he assumed equal productivity between union and non-union workers to calculate labor costs even though (i) his reliance materials say the exact opposite, and (ii) there is no "empirical" or "credible" evidence supporting that assumption. Mot. at 6, 9-10; Dkt. 125-13 ("Kaestner Dep.") 126:8-127:24. Instead, Plaintiff tries to flip the burden, by suggesting that JLL has not "substantiate[d] its belief" that union workers are more productive than non-union workers. Opp. at 6. This is wrong. Plaintiff is the proponent of Dr. Kaestner's testimony and bears the burden of proving it is reliable. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017) (citing *Krik v. Exxon Mobil Corp*, 870 F.3d 669, 673 (7th Cir. 2017) and noting the party seeking to introduce the expert witness testimony bears the burden of demonstrating that the testimony satisfies the mandatory requirements of Rule 702 and *Daubert*.) It is not Defendant's burden to prove the opposite of what Dr. Kaestner assumed.

The key question is whether Dr. Kaestner's assumption is reliable. Dr. Kaestner has already answered that question in the negative himself. (Mot. at 9-10, 14-15). This is not about faulting Dr. Kaestner for failing to consider some far-afield variable. Productivity is embedded within Dr. Kaestner's damages formula, which seeks to calculate the difference in labor costs between union and non-union workers. The total wages paid to workers to complete a project are a function of two factors: (i) the wage rate multiplied by (ii) the total amount of time it takes to complete the project. *Cf.* Kaestner Dep. 194:1:7 (acknowledging the total amount of time is "reflected in the cost of labor").

---

class members would be superior to class treatment. *See* Class Cert. Opp. at 24. WDES's willingness to jettison 49% of each class member's claim makes this superiority argument even stronger.

Dr. Kaestner blindly assumes without any basis in his damages formula that the total amount of time it takes a union versus a non-union worker to complete a project is the same. *See* Kaestner Dep. 190:16-23 (admitting his damages formula does not account for any productivity differences between the groups); 187:7-188:12 (same). Even more, Dr. Kaestner ignored the findings of the studies he relied upon in his report which state there *is* variance in productivity between union and non-union workers (in favor of union productivity). *Id.* 136:19-139:24, 145:7-147:11. That Plaintiff's attorneys now dug up one study buttressing this assumption is irrelevant. Opp. at 7.[6] *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2013 WL 3147349, at *1 (N.D. Ill. June 19, 2013) (Even in reply expert reports (which is not the case here), "[s]imilar to reply briefs, advocates cannot advance new arguments for the first time in a reply expert report."). Moreover, Dr. Kaestner does not claim he relied upon this study in creating his methodology, but rather he relied on at least two peer-reviewed journal articles that state the opposite: that union laborers are more productive than non-union laborers. Kaestner Report at 10; Kaestner Dep. 136:19-139:24; 145:7-147:11.

Plaintiff cannot escape scrutiny here by pointing to the other productivity variables Dr. Kaestner *did* control for (even though Dr. Kaestner ultimately recommends not to use the union wage premiums adjusted for these variables in his damages formula because it is only a hypothesis). *See* Kaestner Dep. 132:14-133:5 (despite apparently accounting for productivity through race, gender, age, and education in Table 1, Dr. Kaestner proposes we use the union wage premium column that is not adjusted for these factors because "[t]hat's more a hypothesis that [sic] there's no concrete evidence."). Dr. Kaestner's decision to consider race, gender, age, and education as proxies for productivity based on an unspecified hypothesis, but not control for

---

[6] Plaintiff also says "many economists" agree with Dr. Kaestner's assumption that there is no difference in productivity of union and non-union workers, but can only cite to a single study. Opp. at 7.

productivity differences based on union affiliation, despite an existing hypothesis and at least two peer-reviewed articles that he relied upon in his report, only underscores his bizarre decision-making. Kaestner Dep. 123:7-125:6; 126:8-19; 136:19-139:24, 145:7-147:11.

Dr. Kaestner's unsupported assumption embedded within his damages formula that union and non-union workers are equally productive renders his opinion unreliable.

### III. Plaintiff's Remaining Arguments Are Irrelevant.

Rather than devoting its Opposition to addressing Dr. Kaestner's unsupported assumptions (hurdles Plaintiff knows it cannot overcome), Plaintiff dedicates the vast majority of its Opposition to irrelevant arguments or misrepresentations of Defendant's Motion.[7]

For example, Plaintiff spends the first five pages of the Opposition defending the regression analysis Dr. Kaestner used to calculate wage differences—even while acknowledging that analysis is not what is challenged here. Opp. at 1-5. If the damages in this case were wages, then the Court's inquiry might not need to go further than Dr. Kaestner's wage regression. However, both parties agree that the damages are labor charges assessed to class members, not wages. Opp. at 8; Mot. at 1-2 (same). What matters is Dr. Kaestner's complete failure to offer any reliable methodology for going from Point A (his "union wage premiums") to Point B (damages in this case). He just presumes, without explanation, that Point A and Point B are the same.

Plaintiff also repeatedly suggests Defendant's arguments have "no bearing" on its Moving

---

[7] In an attempt to avoid addressing problematic arguments, Plaintiff repeatedly suggests that Defendant's Motion "does not take issue" with certain points that are, in fact, raised directly in Defendant's Motion. *Compare* Opp. at 2 ("The Motion does not take issue with Dr. Kaestner's qualifications to opine on damages the class members allegedly suffered") *with* Mot. at 8-9, 13-14 (stating directly that Dr. Kaestner is not "qualified to opine on this issue" of damages because he "admits he has no basis to know how and to what extent contractors factor in their laborers' wage rates when determining how much to charge tenants for labor") (collecting Dr. Kaestner's admissions); *compare* Opp. at 5 (after discussing the productivity variables in Dr. Kaestner's analysis, claiming "[t]he Motion does not take issue with any aspect of Dr. Kaestner's choice of variables") *with* Mot. at 6-7, 9-10, 14-15 (discussing Dr. Kaestner's inexplicable decision to control for certain variables he acknowledged have no established connection to productivity and ignore the variable his own reliance materials demonstrate has a significant effect on productivity).

Subclass. *See* Opp. at 5, n.9, n.11. Plaintiff identifies no basis for drawing this distinction, and none exists. Dr. Kaestner proposes just one damages approach, which Plaintiff claims can calculate the alleged damages across both Subclasses. Thus, the analytical gaps in Dr. Kaestner's methodology infect both Subclasses all the same. *See also* Dkt. 131 ("Reply in Support of Class Certification), at 2-3 (wrongly claiming that Defendant does not "put forth any serious challenge" to certification of the Moving Subclass, even though Defendant's arguments against certification apply equally across both Subclasses, and trying to draw a distinction between moving and contracting work with a series of factual assertions entirely unsupported by the record before the Court).

Lastly, Plaintiff spends three pages of the Opposition attacking Defendant's expert, Mark Hosfield. Opp. at 6-8. At the same time, Plaintiff acknowledges "JLL's Motion does not rely upon any opinions, data, or other information offered by Hosfield." Opp. at 5, n.5; *see also id.* (appearing to fault Defendant for referring to Hosfield's Report in only footnotes and "in the most general/passing [sic] terms."). Defendant's Motion did not rely on Hosfield's opinion by design. The Court does not need Hosfield's expert testimony to recognize or understand the import of the analytical gaps in Dr. Kaestner's opinion. The Court should accordingly disregard Plaintiff's attempt to frame this Motion as a battle of dueling experts. It is about the threshold admissibility of Dr. Kaestner's opinion, not the weight it deserves.

## CONCLUSION

For these reasons, Defendant respectfully requests the Court exclude the proposed expert testimony of Dr. Kaestner under Federal Rule of Evidence 702 and *Daubert*.

| | |
|---|---|
| Dated: August 28, 2020 | Respectfully submitted,<br><br>JONES LANG LASALLE AMERICAS (ILLINOIS), LP<br><br>*/s/ Scott T. Schutte*<br>　　　　One of Its Attorneys<br><br>Philip A. Miscimarra<br>Scott T. Schutte<br>Stephanie L. Sweitzer<br>Kevin F. Gaffney<br>Heather J. Nelson<br>MORGAN, LEWIS & BOCKIUS LLP<br>77 West Wacker Drive, 5th Floor<br>Chicago, IL 60601<br>Tel: 312.324.1000<br>Fax: 312.324.1001<br>philip.miscimarra@morganlewis.com<br>scott.schutte@morganlewis.com<br>stephanie.sweitzer@morganlewis.com<br>kevin.gaffney@morganlewis.com<br>heather.nelson@morganlewis.com<br><br>*Attorneys for Defendant* |

## **CERTIFICATE OF SERVICE**

I certify that on the 28th day of August 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Plaintiff:

Ryan F. Stephan
James B. Zouras
Anna Ceragioli
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aceragioli@stephanzouras.com

Howard W. Foster
Matthew A. Galin
FOSTER PC
150 N. Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel: +1.312.726.1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: +1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

                                                     */s/ Scott T. Schutte*
                                                     Scott T. Schutte