UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WACKER DRIVE EXECUTIVE SUITES,
LLC, on behalf of itself, individually, and
on behalf of all others similarly situated,

          Plaintiff,

          v.

JONES LANG LASALLE AMERICAS
(ILLINOIS), LP,

          Defendant.

Case No. 18-CV-5492

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Wacker Drive Executive Suites ("WDES") brings this proposed class action under

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968,

alleging that Defendant Jones Lang LaSalle Americas (Illinois), LLP ("JLL") conspired with three

labor unions to force commercial tenants of Chicago Loop office buildings managed by JLL to

hire union only contractors and movers. WDES alleges that the cost difference between union and

non-union labor in the Chicago Loop is substantial and the conspiracy caused it to overpay for

contractors and movers. WDES moves for class certification [105], and JLL moves to exclude the

expert testimony of Dr. Robert Kaestner as to damages [126]. For the following reasons, both

motions are denied without prejudice.

## BACKGROUND

JLL manages office buildings in the Chicago Loop, including 125 S. Wacker Drive.

WDES leased the third floor of that building between August 2005 and December 2017. WDES

alleges that it was required to use union contractors and movers when it performed renovations to

its leased space in 2014 and 2017 and moved office furnishings into its space in 2015 as the "result of an illegal conspiracy/agreement between JLL and three labor unions to force tenants into hiring union-only movers and union-only building trades contractors" in violation of RICO. Doc. 105 at 2. JLL allegedly conspired with the International Union of Operating Engineers Local 399 of the AFL-CIO, Service Employees International Union, Local 1, and Teamsters Local 705 (the "Unions"). The first two of these unions have collective bargaining agreements with JLL governing the terms of employment of its building engineers and janitors, respectively. The third union, Local 705, represents movers and does not have a collective bargaining agreement with JLL. WDES now moves to certify a class of tenants at 20 office buildings managed by JLL who were required to hire union contractors or movers.

## DISCUSSION

Rule 23 governs the certification of class actions. "As a threshold matter, a proposed class must always meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). WDES relies on Rule 23(b)(2) and (3). A class action may be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits class certification when "questions of law or fact common to the class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

At class certification, the court must engage in a "rigorous analysis . . . [into whether] . . . the prerequisites of Rule 23(a) have been satisfied," and "frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (*quoting General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). WDES "bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Chi. Teachers Union, Local No. 1 v. Board of Ed. of City of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015). WDES's "[f]ailure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Finally, the Court exercises broad discretion in determining whether class certification is appropriate. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

WDES seeks to certify a class of "[a]ll tenants in the class buildings who were subjected to JLL's requirement to hire union contractors exclusively and who incurred moving expenses and/or hired contractors to make improvements/renovations in their tenants space since August 14, 2014." Doc. 105 at 7. WDES also moves to certify two proposed subclasses. The First Subclass consists of tenants in the class buildings who were required to hire union contractors to make improvements/renovations in their tenant space and the Second Subclass consists of tenants in the class buildings who were required to hire union movers and who incurred moving expenses by hiring union movers. *Id*. at 6-7. JLL maintains that the proposed classes do not satisfy the commonality, typicality, or adequacy of representation requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and (3). JLL does not dispute that the numerosity requirement is met. Because WDES has failed to establish commonality at this time, the Court does not reach the typicality and adequacy of representation and Rule 23(b) requirements.

To satisfy the commonality requirement, WDES must show that there "are questions of law or fact common to" the classes. Fed. R. Civ. P. 23(a)(2). The commonality test considers whether WDES's RICO claims "depend upon a common contention . .. that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Ordinarily, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

The commonality analysis begins with the elements of WDES's RICO claims. *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 413 (N.D. Ill. 2012) (quoting *Messner*, 669 F.3d at 815) ("'Analysis of predominance under Rule 23(b)(3),' and thus of commonality under Rule 23(a)(2), 'begins … with the elements of the underlying cause of action.'"). WDES seeks to certify classes to pursue claims based on violations of 18 U.S.C. §§ 1962(c) and (d). To establish liability under § 1962(c), WDES must ultimately demonstrate: (1) JLL conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.[1] *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The existence of an enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the

---

[1]     18 U.S.C. § 1962(d) provides that it is "unlawful for any person to conspire to violate any of the provisions of [§ 1962(c)]." To establish its Section 1962(d) conspiracy claim, WDES must similarly show "that (1) [JLL] agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) [JLL] further agreed that someone would commit at least two predicate acts to accomplish these goals." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 734-35 (7th Cir. 2014).

various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). WDES asserts an association-in-fact enterprise consisting of JLL and the Unions which has the common purpose of forcing union-only labor on commercial tenants in buildings managed by JLL. Doc. 131 at 7 n.6.

To establish a pattern of racketeering activity, WDES must show at least two predicate acts. *Corley v. Rosewoods Care Ctrs., Inc. of Peoria*, 142 F.3d 1041, 1048 (7th Cir. 1998). WDES has identified extortion, prohibited by the Hobbs Act, 18 U.S.C. § 1951, and bribery, prohibited by the Labor Management Relations Act, 29 U.S.C. § 186, as predicates under RICO. To establish the "wrongful use of actual or threatened . . . fear" under the Hobbs Act, WDES seeks to demonstrate that JLL's alleged conspiracy with the Unions is an illegal (and therefore "wrongful") "hot cargo" agreement under Section 8(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(e). Section 8(e) of the NLRA makes it unlawful for a union and employer "to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling . . . or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person . . . ." 29 U.S.C. § 158(e).

With this framework in mind, the Court turns to the proposed common questions of law and fact in this case. WDES identifies six common questions: (1) whether JLL enforced the union-only requirement at the class buildings?; (2) whether JLL had an agreement with the three unions to enforce the union requirement at the class buildings?; (3) whether JLL's agreement with the three unions was an illegal hot cargo agreement violating 29 U.S.C. § 158(e)?; (4) whether JLL violated 18 U.S.C. § 1951 and 29 U.S.C. § 186?; (5) whether JLL violated 18 U.S.C. §§ 1962(c) and (d) in enforcing this requirement, including common legal questions of whether there is a pattern of racketeering and a RICO enterprise?; and (6) whether the class members were damaged

by this requirement/policy in the form of higher labor and moving costs, pursuant to 18 U.S.C. § 1964(c)? WDES asserts that "[t]hese material facts and issues of law are the same, or substantially similar, for all class members." Doc. 105 at 9.

In opposing commonality, JLL argues that a common answer to WDES's first proposed common question—whether JLL enforced the union-only requirement at class buildings—will not drive the resolution of this case as a whole "because that conduct, by itself, is not illegal." Doc.125 at 17. Whether JLL enforced the union-only rule at the class buildings is a common contention, but WDES has failed to show that it is central to the validity of its RICO claims. WDES does not explain how its first proposed common question or its answer relates to the elements of its RICO claims. Rather, the key issue with respect to WDES's RICO claims is whether JLL forced tenants to hire union-only contractors and movers "as a result of an illegal conspiracy/agreement between JLL and the three labor unions." Doc. 105 at 2. An enterprise that consists of JLL and the three unions is necessary to establish both of the RICO claims in the Amended Complaint, and a conspiracy/agreement among JLL and the three unions is necessary for both the RICO conspiracy claim (Section1962(d)) and the agreement to form a "hot cargo" policy to establish the wrongfulness element of the Hobbs Act predicate act.

As to the first common question posed by WDES, a determination of whether JLL enforced the union-only requirement at the class buildings will not resolve an issue central to the validity of WDES's RICO claims because the central question will remain whether JLL imposed the union-only requirement pursuant to an agreement or conspiracy between JLL and the Unions. Put another way, the validity of WDES's RICO claims hinge not just on JLL's enforcement of the union-only requirement but proof of an enterprise/conspiracy between JLL and the Unions to enforce the union-only rule. The existence of the enterprise/conspiracy is thus crucial to the illegality of JLL's

conduct. Mere enforcement of the union-only requirement at class buildings by JLL does not establish that JLL agreed and conspired with the Unions to enforce the union-only rule. Because WDES's first common question is not "central to the validity" of the RICO violations WDES alleges and will not produce an answer that is "apt to drive the resolution of the litigation," it does not satisfy the commonality requirement. *Wal-Mart*, 564 U.S. at 350; *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) ("The common question (or common questions) need not address every aspect of the plaintiffs' claims, but it must 'drive the resolution of the litigation.'").

JLL argues that WDES's five remaining proposed common questions fail to satisfy the commonality requirement because WDES offers no proof that JLL imposed the union-only restriction because of a conspiracy between JLL and the Unions. In fact, JLL contends that there is *no* conspiracy between JLL and the Unions to enforce the union-only restrictions. Rather, JLL presents evidence that the union-only requirement was a mandate directly from the building owners and JLL handled enforcement of the building owners' union-only requirement on a day-to-day basis. Doc. 125 at 5. JLL notes that WDES "identifies no evidence whatsoever" that its conspiracy contention could be common to the class. Doc. 125 at 2. According to JLL, without evidence of the alleged conspiracy on which WDES's alleged RICO violations depend, all WDES "has done is restate its allegations in the form of common questions." *Id.*

WDES makes no effort in its reply brief to provide any evidence demonstrating an enterprise/conspiracy between JLL and the Unions to implement the union-only rule. Instead, WDES argues that "whether the unions are part of the conspiracy is a factual, merits question which is not at issue now." Doc. 31 at 6. The Court disagrees with WDES's assertion that evidence of the existence of the alleged enterprise/conspiracy is not at issue when deciding whether to certify a class. Although a decision on class certification is not "a dress rehearsal for the trial on the

merits," the Court may not simply assume the truth of the matters asserted by WDES. *Messner*, 669 F.3d at 811. The Court instead must "make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *Kleen Products LLC v. International Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016) (the court must "take a careful look at the evidence that the [plaintiffs] submitted in support of class certification.").

The Supreme Court's analysis in *Wal-Mart* is instructive as to the showing sufficient to support a finding of commonality. On this point, *Wal-Mart* is clear: "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. A "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently . . . common questions of law or facts, etc." *Id*. (emphasis in original); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("The party must also satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b).") (emphasis added).

In *Wal-Mart*, the plaintiffs were "three current or former Wal-Mart employees who allege[d] that the company discriminated against them on the basis of their sex by denying them equal pay or promotions, in violation of Title VII." *Wal-Mart*, 564 U.S. at 343. They brought class claims on behalf of 1.5 million current and former female employees of Wal-Mart. The plaintiffs alleged that Wal-Mart had a "strong and uniform 'corporate culture'" permitting bias against women that influenced the discretionary decisionmaking of Wal-Mart's managers "thereby making every woman at the company the victim of one common discriminatory practice." *Id*. at 345. The Supreme Court recognized that a class certification analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id*. at 351. In that case, proof of

8

commonality "necessarily overlap[ped]" with plaintiffs' merits contention that Wal-Mart engaged in a pattern or practice of discrimination. *Id*. at 352. The Supreme Court explained that "[s]ignificant proof that a [defendant] operated under a general policy . . . conceivably could justify a class." *Id*. at 353. Because the *Wal-Mart* plaintiffs' statistical and anecdotal evidence failed to provide "convincing proof of a companywide discriminatory pay and promotion policy," the Supreme Court concluded that they had "not established the existence of any common questions" under Rule 23(a)(2). *Id*. at 359

Applying the standard announced in *Wal-Mart*, WDES must come forward with "significant proof" that its RICO claims can be proved on a class-wide basis. WDES seeks to establish commonality for RICO claims of a class of tenants who were required to hire union contractors and movers based on an alleged enterprise/conspiracy between JLL and the Unions. WDES's second through sixth common questions depend on its contention that JLL had an illegal agreement with the Unions to enforce the union-only requirement.[2] Proof of commonality thus overlaps with WDES's merits contention that JLL was in an illegal enterprise/conspiracy with the Unions. In other words, because the commonality element turns on WDES's contention that JLL and the Unions conspired to force tenants into hiring union-only building trade contractors and movers, WDES must provide "significant proof" that the enterprise/conspiracy alleged exists. *Wal-Mart*, 564 U.S. at 353; *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 498 (7th Cir. 2018)

---

[2] As to WDES's fourth question, JLL asserts that both alleged predicate acts depend on WDES proving in the first instance that JLL violated the "hot cargo" provision of the NLRA, 29 U.S.C. § 158(e), and WDES does not challenge that assertion in its class certification briefing. Doc.125 at 12. WDES previously argued that the alleged bribery predicate act is "free-standing" and "does not depend on a finding that the agreement between JLL and the [U]nions violates §8(e)." Doc. 39 at 1, 11. Even assuming the alleged bribery predicate act does not depend on a finding of an illegal hot cargo agreement, WDES's fifth proposed common question and Section 1962(c) itself requires the existence of an enterprise "where each individual entity acts in concert with the other to pursue a common interest." *Bible*, 799 F.3d at 656. At a minimum, WDES's bribery-based RICO claim will require proof that JLL and the Unions acted in concert to enforce the union-only rule.

(finding lack of any common questions because class failed to provide "significant proof" that Defendant operated under policies that violated the IDEA). Notably, WDES must do more than merely allege that JLL imposed the union-only requirement pursuant to an enterprise/conspiracy between JLL and Unions.

The Court finds that WDES does not support its enterprise/conspiracy allegation with evidence. Because WDES provides no proof that the union-only restriction is imposed as a result of an agreement between JLL and the Unions to potentially tie all the claims together, it has failed to sufficiently demonstrate commonality as to its RICO claims. Most notably, WDES summarily asserts that "discovery in this case confirms" that a "long-standing conspiracy exists between management companies of Chicago Loop buildings and labor unions to force tenants to use union labor exclusively." Doc. 105 at 4. But WDES has not submitted any direct or circumstantial proof of a promise between JLL and the Unions to impose the union-only rule or any evidence from which a reasonable inference could be made that the such an agreement existed. Furthermore, as to its enterprise allegation, there are no facts suggesting that JLL and the Unions operated together as a single unit in implementing the union-only rule.

WDES only offers evidence that JLL requires all tenants to hire union contractors and movers at the class buildings. In support, WDES cites to the deposition of JLL's Managing Director, Stephen Zsigray's. Doc. 105 at 5. Zsigray testified that JLL enforces the union-only requirement in class buildings pursuant to mandates from the building owners. Doc. 105-3 at 27:1—23, 28:10-29:23. Zsigray explained that in larger buildings, it is JLL's practice for security officers to supervise the checking of contractors at the docks to confirm they are approved to enter the building. *Id*. at 41:22-43:14. JLL will not place a nonunion contractor on the approved list. *Id*. at 44:10-13. Other buildings rely on trade members working in the building to check union cards

10

and then notify JLL. *Id*. at 26:16-24. For example, a "carpenter trade will check on another plumber." *Id*. at 26:18-19. But the fact that Zsigray, on behalf of JLL, enforces the building owners' policies does not automatically mean that JLL and the Unions are in an enterprise/conspiracy. Indeed, it appears that Zsigray primarily hires security guards to enforce the policy. Moreover, in smaller buildings, it is not known from the record why or how often union members report non-union contractors. Together, this does not translate into proof that JLL and the Unions are working in a conspiracy to exclude non-union members.

WDES additionally cites to the deposition testimony of Frank Falzone, chief engineer at the 180 North LaSalle, to support its claim that class certification is appropriate. Doc. 131 at 7. Falzone confirmed that it is JLL's practice to have security guards at the docks to check contractors for union identification at 180 North LaSalle. Doc. 125-3 at 42:21-43:20. He testified that building engineers do not try to prevent nonunion contractors from entering their buildings. *Id*. at 11:8-11, 15:9-18. Sometimes it is brought to Falzone's attention by another trade member or a security guard that a contractor without union credentials is in the building. Falzone explained that he will then ask the nonunion contractor to leave the building. *Id*. at 29:22-30:12, 44:15-49:3. If the nonunion contractor fails to leave the building, the tradesperson who brought the matter to Falzone's attention will contact their own union's local business agent. *Id*. at 46:23-47:14. WDES points to no evidence showing that Falzone agreed or conspired with JLL to take on these responsibilities. Falzone's written job description does not provide him with responsibility for excluding nonunion tradespersons. *Id*. at 45:4-8, 49:1-23. Falzone testified that it is a "responsibility that [he] take[s] upon [him]self" to "make sure that the work is being done by a professional skilled person" and to look out for fellow union members. *Id*. at 45:9-15, 48:12-15. Put another way, this evidence does not demonstrate that Falzone took on this responsibility as a

11

result of his role in a JLL/Unions enterprise or conspiracy, but rather for the protection of fellow

union members.

These two pieces of evidence do not sufficiently demonstrate an agreement between JLL

and the Unions to enforce the union-only rule to warrant class certification.  Nor are they sufficient

to conclude that JLL and the Unions were acting together for the common purpose of banning

nonunion contractors from class buildings as required for the existence of an enterprise under

RICO. *Rao v. BP Products North America, Inc.*, 589 F.3d 389, 400 (7th Cir. 2009).  Completely

lacking are any facts setting forth how JLL and the Unions worked *together* as a single unit to

implement the union-only restriction. *See Bible*, 799 F.3d at 655-56 (finding plaintiff pled an

enterprise where she "allege[d] a number of facts permitting the reasonable inference that

[defendant and other entities] work[ed] as a single enterprise.").  For example, WDES does not

point to evidence of any agreements, communications, or coordinated activity between JLL and

the Unions regarding the union-only restriction.  In sum, there is a lack of evidence of any JLL

dealings with the Unions regarding the union-only requirement. *Compare Kleen*, 831 F.3d at 927

(defendants conceded that commonality had been satisfied and as to predominance, plaintiffs

"tendered extensive evidence that, if believed, would be enough to prove the existence of the

alleged conspiracy.").  Without evidence that the class members were subject to the union-only

requirement pursuant to an illegal enterprise/conspiracy, there is no question common to the class.

Given WDES's unsupported allegation regarding an enterprise/agreement between JLL and the

Unions to enforce the union-only requirement together with JLL's specific evidence showing that

JLL enforced the union-only rule pursuant to a mandate from the building owners, WDES has

failed to satisfy its burden of offering "significant proof" of a RICO enterprise and conspiracy that

12

violates RICO. WDES has thus not met is burden of establishing commonality, and WDES's motion for class certification is denied on this basis at the present time.

Finally, Rule 23(c)(1)(A) instructs the Court to determine at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). On the issue of the timing of class certification, the 2003 Amendments to Rule 23 changed the language in subdivision (c)(1)(A) from "as soon as practicable" to "at an early practicable time" because the previous language "neither reflect[ed] prevailing practice nor capture[d] the many valid reasons that may justify deferring the initial certification decision." Fed. R. Civ. P. 23(c)(1)(A) Advisory Committee Note to 2003 Amendment. For example, "[t]ime may be needed to gather information necessary to make the certification decision." *Id.*

Based on the evidence currently before the Court, it is not yet "practicable" to conclusively resolve the commonality issue. WDES has not presented supporting evidence of a JLL-Unions conspiracy, and the Court cannot conduct the "rigorous analysis" required to determine whether WDES has satisfied the commonality requirement of Rule 23. Whether class certification is appropriate in this case is better explored on a more developed factual record. While not bifurcating discovery in this case, it is the Court that set the schedule for filing of class certification motions in the midst of discovery on the belief that the factual record would be sufficiently developed to satisfy the standards identified in *Walmart*. (Doc. 61). However, "[a]rbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes." Manual For Complex Litigation (Fourth), § 21.14. WDES has conducted some discovery but discovery is still ongoing. To date, WDES has served requests for production and interrogatories on JLL, deposed two JLL witnesses (Stephen Zsigray and Frank Falzone) and served document subpoenas on the Unions and three

building owners. Doc. 125 at 5 n.3. According to recent status reports filed by the parties, ESI

discovery, including discovery of JLL's correspondence and emails with the Unions, has not yet

occurred. Docs. 109 at 4, 128 at 3. Discovery of communications between JLL and the Unions

may be useful in making the commonality determination. In light of the potential for WDES to

collect evidence supporting commonality during further discovery, which has not yet closed, the

Court denies the motion for class certification without prejudice. *Kasalo v. Harris & Harris, Ltd.*,

656 F.3d 557, 563 (7th Cir. 2011) (a court "need not delay a ruling on certification if it thinks that

additional discovery would not be useful in resolving the class determination."); *Van v. Ford*

*Motor Co.*, 2018 WL 4635649, at *13 (N.D. Ill. Sept. 27, 2018) (a class certification "denial

without prejudice is not uncommon, especially after one try.").

In situations such as this, where the decision on class certification turns primarily on the

overlap between the requirements of Rule 23 and the merits on the case, it is more prudent to allow

the plaintiff to further develop its factual record before conclusively deciding a class certification

motion. *See e.g. Molinari v. Financial Asset Mgmt. Syst., Inc.,* 2020 WL 4345418 (N.D. Ill. Jul.

29, 2020). It is entirely possible, given the ability to utilize the full discovery schedule set by the

Court, that WDES can overcome the current deficit and allow the Court to conduct a more

substantive analysis of the commonality requirement. Whether that is possible, however, will not

be known until both parties have had the opportunity to complete further discovery. *See Rolan v.*

*E.I. Du Pont De Nemours*, 2019 WL 811972 (N.D. Ind., Nov. 5, 2019) (recognizing that further

discovery is necessary before deciding merit issues that impact class certification motion). In

addition, in light of the present ruling, the Court defers consideration of whether WDES has

satisfied the remaining requirements of Rule 23 as well as JLL's motion to exclude the expert

testimony of Dr. Robert Kaestner. If the class certification motion is refiled, WDES must address

the evidence that supports each element of Rule 23 in order to satisfy the Supreme Court's admonition in *Walmart*.

## CONCLUSION

On the existing record, WDES has not met its burden to show commonality under Federal Rule of Civil Procedure 23. WDES's motion for class certification [105] is denied without prejudice, and JLL's motion to exclude expert testimony of Dr. Robert Kaestner [126] is denied without prejudice. By September 30, 2020, the parties shall file a joint status report identifying what discovery remains and providing a proposed schedule for the completion of that discovery. The parties are given leave to refile the present motions once further discovery has been completed.

**SO ORDERED.**

Dated: 9/23/2020

Sunil R. Harjani
United States Magistrate Judge