THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WACKER DRIVE EXECUTIVE SUITES, LLC**, on behalf of itself, individually, and on behalf of all others similarly situated, | |
| **Plaintiff,** | Case No. 1:18-cv-5492 |
| v. | Hon. Judge Sunil R. Harjani |
| **JONES LANG LASALLE AMERICAS (ILLINOIS), LP,** | |
| **Defendant.** | |

## JOINT STATUS REPORT

Pursuant to the Court's March 5, 2021 Order (Dkt. No. 163), Plaintiff Wacker Drive Executive Suites, LLC ("WDES") and Defendant Jones Lang LaSalle Americas (Illinois), LP ("JLL") (collectively, "the Parties") respectfully submit the following Joint Status Report:

**Plaintiff's Position**

1. On September 23, 2020, in denying Plaintiff's motion for class certification without prejudice, the Court gave Plaintiff leave to pursue discovery to prove the commonality factor for class certification as to the issue of whether "JLL imposed the union-only requirement pursuant to the agreement or conspiracy between JLL and the Unions." (Dkt. No. 135 at 9, 14).

2. On December 4, 2020, the Court set a discovery schedule and ordered that all outstanding discovery be completed by May 1, 2021. (Dkt. 145).

3. On January 29, 2021, the Court granted Plaintiff's Unopposed Motion to Set ESI Completion Deadline (Dkt. No. 160), which ordered JLL to produce all responsive, non-privileged documents from the "Initial Agreed Review Set" of ESI documents by

1

February 24, 2021. (Dkt. No. 161).

4. On February 24, 2021, JLL produced documents Bates labeled JLL_00006191 through JLL_00026645, which contained over 19,000 pages of documents.

5. Following the February 24, 2021 production, the Parties met and conferred several times to discuss the production and Plaintiff's additional discovery requests and Defendant's objections thereto. On March 24, 2021, after meeting and conferring to compromise regarding ESI discovery, Plaintiff submitted a final ESI discovery request to Defendant.

6. On April 13, 2021, JLL produced documents Bates labeled JLL_00026646 through JLL_41516 which contained over 14,500 pages.

7. By reviewing these two recent, voluminous ESI productions, Plaintiff has identified JLL management-level witnesses who have communicated about union involvement at JLL buildings when an issue of non-union labor arose. Plaintiff intends to issue notices of deposition for these recently-identified JLL witnesses so that Plaintiff may engage in meaningful discovery regarding the commonality that the Court gave Plaintiff leave to pursue – and thus, renew its motion for class certification. (Dkt. No. 135).

8. Plaintiff did not delay in identifying these individuals. Given the dates and volumes of the recent ESI productions from Defendant, it was impossible for Plaintiff to review all materials, identify all witnesses, notice depositions, and take depositions before May 1, 2021.

9. Defendant would preclude Plaintiff from taking any depositions of JLL witnesses other than Rule 30(b)(6) witnesses, citing the May 1, 2021 discovery cut-off date; previous joint status reports where Plaintiff (at the time still waiting for ESI discovery production) reserved its right to take 30(b)(6) witnesses; and the Court's September 23,

2020 ruling narrowing Plaintiff's discovery to proving the conspiracy between JLL and the labor unions. JLL's proposed restrictions are impractical and prejudicial for several reasons:

a. Defendant produced 19,000 pages of discovery on February 24, 2021 and 14,500 pages of documents on April 13, 2021. Plaintiff could not possibly meet a May 1, 2021 deadline to complete all discovery given the dates and volumes of these productions.

b. The joint status reports to date memorialized Plaintiff's best estimation of the discovery yet to occur, and Plaintiff stated its intent to take "ESI discovery regarding whether an agreement or conspiracy between JLL and the Unions exists to enforce the union-only rule pursuant to the Court's Order denying class certification without prejudice." (Dkt. No. 144, 1-2). Through that ESI discovery, Plaintiff has identified JLL witnesses with knowledge about the agreement or conspiracy.

c. Defendant's proposed May 20, 2021 deadline for Plaintiff to serve on JLL a single Rule 30(b)(6) notice of deposition is essentially a request that the Court bar Plaintiff from taking depositions of all witnesses it has identified with knowledge of the conspiracy between JLL and the Unions, but instead limits Plaintiff to take the deposition of a JLL employee hand-selected by Defendant. It also sets a deadline ensuring that, even if Plaintiff identifies individuals through depositions with knowledge about the JLL conspiracy, that Plaintiff is barred from taking the depositions of such individuals. This limitation on Plaintiff's ability to engage in discovery on the commonality issue, and thus Plaintiff's ability to renew its motion for class certification, is inordinately

       prejudicial to Plaintiff and beneficial to Defendant.

    d. Defendant's proposal to set a deadline to complete depositions by July 28, 2021 is likewise prejudicial to Plaintiff. At this time, Plaintiff is preparing deposition notices to JLL witnesses identified through ESI discovery and subpoenas to the Unions. Plaintiff does not know at this time when counsel and witnesses will be available for depositions and if additional names of witnesses with knowledge will arise during these depositions. Plaintiff thus cannot know at this time whether it is practicable and possible for all depositions to be completed by July 28, 2021.

10. For all of the reasons set forth above, Plaintiff asks that rather than setting a discovery cut-off date, that the Court set a discovery status report for 90 days after the May 11, 2021 status hearing (or August 9, 2021) to discuss any outstanding discovery and at that date to set a discovery cut-off date.

**JLL'S POSITION**

11. On September 23, 2020, the Court denied WDES's Motion for Class Certification without prejudice. (Dkt. 135). The Court determined that WDES did not meet its burden under the "commonality" prerequisite of Rule 23(a)(2) – specifically, its burden to establish by "significant proof" that "JLL imposed the union-only requirement **pursuant to an agreement or conspiracy between JLL and the Unions**." (*Id*. at 6, 9) (emphasis added); *see also id.* at 10 (noting that WDES identified "no proof" of such an agreement or conspiracy).

12. Accordingly, the Court based its denial without prejudice on "the potential for WDES to collect evidence supporting commonality during further discovery." (*Id.* at 14); *see also id.* (explaining its intent for WDES to thereafter utilize the "discovery schedule

4

set by the Court").

13. During the subsequent October 2, 2020 status conference, the Court made clear that it was not granting Plaintiff leave to pursue boundless discovery on that issue. *See* Dkt. 139-1 (Trans. of Proceedings on Oct. 2, 2020) at 3:8-15 ("I am going to permit discovery on that [commonality] issue. The question is how long and how much, **and I want to get some boundaries here with all of you**. My preference would be to set a time limit.") (emphasis added).

14. The Court further recognized that in the September 30, 2020 Joint Status Report, Plaintiff requested what it contemplated to be the broadest scope of discovery on the commonality issue. *Id.* at 13:18-14:2 (Counsel for Plaintiff: "[W]e're being asked to set forth sort of the grand scope, as we understand it today, on what might be necessary in the discovery world. So we didn't want anybody saying later, hey, you didn't even mention this, you know, at the time you were given a chance to do it as one possible area."); 15:17-19 (The Court: "I recognize that you didn't want to leave anything out and be accused of, you know, why didn't you put that in a status report.").[1] However, after the Parties and the Court "flushed the issues out" and "talk[ed] freely about what to do next" during the October 2, 2020 status conference, the Court directed the Parties to narrow the scope and "come up with a plan and a timeline and, you know, submit that to me in a status report." *Id.* at 15:19-24.

15. The Parties did just that, in two subsequent Joint Status Reports. In both Reports, Plaintiff informed the Court it would take only one more deposition of a JLL witness,

---

[1] Even in that September 30, 2020 Joint Status Report, Plaintiff requested only two depositions of JLL witnesses within the broad scope it envisioned: (1) "a 30(b)(6) deposition of an individual knowledgeable about the servers used by the company," and (2) a "deposition of the individual for JLL responsible for overseeing all building managers for JLL properties in the Chicago Loop." (Dkt. 136 at ¶ 8(a)(i), and (iv)). The Parties resolved the first issue regarding JLL's servers without the need for a deposition.

5

bringing the total number to three.[2] *See* Dkt. 139 (Oct. 20, 2020 Joint Status Report) at ¶ 7(c) ("WDES will take a Rule 30(b)(6) deposition of JLL limited to the subject matter identified by the Court in its September 23, 2020 ruling"); Dkt. 144 (Dec. 3, 2020 Joint Status Report) at ¶ 2(c) ("Plaintiff will take the 30(b)(6) deposition of the individual at JLL limited to the subject matter identified by the Court in its September 23, 2020 ruling"), 5(e) (same).[3]

16. The day after receiving the second of those reports, on December 4, 2020, the Court set the discovery schedule. (Dkt. 145). Specifically, the Court ordered that by May 1, 2021, "**all** outstanding discovery shall be complete." *Id.* (emphasis added).

17. The Court further noted that the Parties had by then "made progress on some of the outstanding discovery regarding the issues raised about class certification," but "that numerous discovery tasks remain," including "a Rule 30(b)(6) deposition" of a JLL witness. *Id.* The Court also set "interim deadlines" regarding ESI discovery "to keep the parties on track." *Id.*; *see also id.* (inviting Plaintiff to "submit a motion" by January 29, 2021 requiring JLL to produce responsive documents "after the ESI search term disputes are resolved").

18. Plaintiff had until April 16, 2021 to "file any [other] motions related to [JLL's] ESI production." (Dkt. 163). Plaintiff did not file any such motion.

19. The Court has never extended or otherwise amended the May 1, 2021 discovery cut-off date. At no point prior to May 1, 2021 did either Party request that the Court extend

---

[2] Previously, during the discovery period prior to WDES's Motion for Class Certification, when WDES had a full and unfettered opportunity to take any discovery, WDES deposed two JLL employees, one of which in a 30(b)(6) corporate representative capacity. *See* Dkt. 136 at ¶¶ 7(f), 9(b), 9(d).

[3] In both of these Joint Reports, WDES signaled its intent to consider other depositions, but only as to third-party witnesses, not additional JLL witnesses beyond a 30(b)(6) representative. *See* Dkt. 139 at ¶¶ 7(b) (representatives of third-party Unions), 7(d) (third-party building owners); Dkt. 144 at ¶¶ 2(b) (Unions), 2(d) (building owners), 5(f) (building owners).

or otherwise amend the discovery cut-off date. Thus, under the December 4, 2020 Order, discovery is now closed.

20. As set forth in its discovery proposal below, *see infra* ¶ 27, JLL does not object to reopening discovery to give Plaintiff a modest extension to the now-passed discovery cut-off to complete the limited discovery that this Court has allowed on the "commonality" issue.

21. However, Plaintiff's request to postpone setting a discovery cut-off date indefinitely suggests that Plaintiff intends to continue to engage in the same fishing expedition that has required JLL to gather, review, and produce more than 30,000 **more** pages of documents since the Court allowed limited discovery to be taken – none of which evidences any agreement between JLL and the unions about the union-only rule. Plaintiff shares the obligation under Federal Rule of Civil Procedure 1 to litigate this case in a "just, speedy, and inexpensive" manner; any modest extension to discovery must reflect the fact that Plaintiff has already been given multiple, sufficient opportunities to take substantial discovery from JLL and third parties.

22. Moreover, Plaintiff's suggestion that it **now** intends to take **multiple** "depositions [of] JLL witnesses" is a non-starter, given that (i) discovery is closed, and (ii) WDES had not previously proposed—nor has the Court permitted—anything beyond a (second) 30(b)(6) deposition of a JLL witness. *See supra* ¶¶ 13-17.

23. Above, Plaintiff provides no genuine explanation for its failure to comply with the Court's order, despite being warned that the discovery cut-off would be a hard limit. *See supra* ¶ 13. Nor does Plaintiff provide a genuine explanation for waiting until after the close of discovery to inform JLL and the Court of its wish to depose multiple more JLL witnesses, when all along the Parties and the Court agreed Plaintiff would only

7

depose one 30(b)(6) witness, for a second time.[4] Instead, Plaintiff tries to deflect, blaming the productions of ESI that it requested and that JLL produced in accordance with the Court's schedule. For at least three reasons, this argument provides no excuse.

24. First, the volume of ESI Plaintiff now complains about—more than half of which Plaintiff received months ago—is entirely a function of Plaintiff's insistence on using very broad search terms. From the very beginning of this second, limited discovery period, JLL informed the Plaintiff and the Court that "many of WDES's proposed search terms are overly broad, unduly burdensome, and not proportional to the limited discovery this Court ordered." (Dkt. 144, December 3, 2020, Joint Status Report, at ¶ 4(a)). Still, JLL negotiated those terms in good faith, sharing with Plaintiff's counsel ESI hit reports demonstrating the tens of thousands of individual **documents** (not just pages) those search terms yielded. Still, Plaintiff insisted that JLL continue to review and produce a very broad set of documents—requesting as recently as March 9, 2020 that JLL review over **37,000** additional documents for potential production after JLL had already reviewed over 17,000 documents for the February 24, 2020 Initial Agreed Review Set. Plaintiff cannot now credibly claim to have been surprised by the volume or timing of the ESI it received. Nor can it point to any undue delay on JLL's part.

25. Second, Plaintiff's suggestion that the scope of individual depositions it wished to take could only be known upon receipt of the ESI does not hold water. *See supra* at ¶ 9(b) (asserting, in generic fashion, that Plaintiff has now "identified JLL witnesses" it thinks has "knowledge about the [alleged] agreement or conspiracy."). Plaintiff has been keenly aware since September 23, 2020 that the issue for discovery during the second

---

[4] Plaintiff's suggestion that it simply "reserved" in the Joint Status Reports an open-ended right to take as many depositions as it wishes, *see supra* at ¶ 9, has no support in the record, *see supra* at ¶¶ 14-15, and does not comport with the Court's direction to impose "boundaries" on Plaintiff's second round of discovery, *see supra* at ¶ 13.

    period was any evidence supporting the alleged "agreement or conspiracy between JLL and the Unions." (Dkt. No. 135 at 9, 14). That such evidence, if it existed, would involve individual correspondence was a given. *See*, *e.g.*, Dkt. 139-1 (Trans. of Proceedings on Oct. 2, 2020) at 11:3-8 (The Court: "a repeated number of emails across buildings to unions can be circumstantial evidence. I'm not saying it exists or that's what's happening. I'm just pointing out how, as a matter of proof, that's where a plaintiff may want to use the evidence."). Nevertheless, Plaintiff never proposed—nor did the Court ever permit—anything beyond a (second) 30(b)(6) deposition of a JLL witness.

26. Third, Plaintiff does not explain why its failure to issue deposition subpoenas to non-JLL witnesses (e.g., witnesses for the Unions) within the Court-ordered discovery period was in any way impacted by the more recent productions of ESI from JLL. Indeed, Plaintiff issued document subpoenas to the Unions **years** ago, during the first discovery period, seeking, among other things, correspondence with JLL regarding labor relations. *See* Dkt. 136, September 30, 2020, Joint Status Report, at ¶ 9(c). It appears Plaintiff simply dragged its feet and expected the Court-ordered deadline would be moved at its whim.

27. Against this backdrop, JLL proposes the following schedule:[5]

    a. By May 20, 2021, Plaintiff must serve on JLL a Rule 30(b)(6) notice of deposition so that the Parties can meet and confer about its scope and bring any issues to the attention of the Court.

    b. By May 20, 2021, Plaintiff must issue any third-party deposition subpoenas it

---

[5] Plaintiff calls this proposal "impractical" and "inordinately prejudicial." *See supra* at ¶ 9. Yet, this would provide Plaintiff an opportunity to take far more discovery than it is entitled to after the close of discovery, which is none.

      intends to take on the limited issues set out in this Court's order denying class certification.

   c. All depositions relevant to class certification must be completed by July 28, 2021.

   d. The parties should appear before this Court on August 11, 2021 (or on a date convenient to the Court) to discuss a briefing schedule on the commonality issue so this Court can rule on class certification.

28. At this time, the Parties have not discussed settlement and do not believe settlement discussions are practicable at this time.

Dated: May 6, 2021                  Respectfully submitted,

| WACKER DRIVE EXECUTIVE SUITES, LLC | JONES LANG LASALLE AMERICAS (ILLINOIS), LP |
|---|---|
| */s/ Anna M. Ceragioli* <br>    One of Its Attorneys | */s/ Scott T. Schutte* <br>    One of Its Attorneys |
| Ryan F. Stephan <br> James B. Zouras <br> Anna M. Ceragioli <br> STEPHAN ZOURAS, LLP <br> 100 North Riverside Plaza, Suite 2150 <br> Chicago, Illinois 60601 <br> Tel: 312.233.1550 <br> Fax: 312.233.1560 <br> rstephan@stephanzouras.com <br> jzouras@stephanzouras.com <br> aceragioli@stephanzouras.com <br><br> Howard W. Foster <br> Matthew A. Galin <br> FOSTER PC <br> 150 N. Wacker Drive, Suite 2150 <br> Chicago, Illinois 60606 <br> Tel: 1.312.726.1600 <br> hfoster@fosterpc.com <br> mgalin@fosterpc.com | Philip A. Miscimarra <br> Scott T. Schutte <br> Stephanie L. Sweitzer <br> Kevin F. Gaffney <br> Heather J. Nelson <br> Elizabeth K. Philipp <br> MORGAN, LEWIS & BOCKIUS LLP <br> 77 West Wacker Drive <br> 5th Floor <br> Chicago, IL 60601 <br> Tel: 312.324.1000 <br> Fax: 312.324.1001 <br> philip.miscimarra@morganlewis.com <br> scott.schutte@morganlewis.com <br> stephanie.sweitzer@morganlewis.com <br> kevin.gaffney@morganlewis.com <br> heather.nelson@morganlewis.com <br> elizabeth.philipp@morganlewis.com |

*Attorneys for Defendant*

Aaron R. Walner
THE WALNER LAW FIRM LLC
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: 1.312.371.2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the 6th day of May, 2021, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record for Defendant:

>Philip A. Miscimarra
>Scott T. Schutte
>Stephanie L. Sweitzer
>Kevin F. Gaffney
>Heather J. Nelson
>Elizabeth K. Philipp
>MORGAN, LEWIS & BOCKIUS LLP
>77 West Wacker Drive
>5th Floor
>Chicago, IL 60601
>Tel: 312.324.1000
>Fax: 312.324.1001
>philip.miscimarra@morganlewis.com
>scott.schutte@morganlewis.com
>stephanie.sweitzer@morganlewis.com
>kevin.gaffney@morganlewis.com
>heather.nelson@morganlewis.com
>elizabeth.philipp@morganlewis.com
>
>*Attorneys for Defendant*

>/s/ Anna M. Ceragioli